DAVID D. LIN (DL-3666)
JUSTIN MERCER (JM-1954)
**LEWIS & LIN, LLC**
45 Main Street, Suite 608
Brooklyn, NY 11201
David@iLawco.com
Justin@iLawco.com
Telephone: (718) 243-9323
Facsimile: (718) 243-9326

*Attorneys for Plaintiffs*
BAIQIAO TANG, JING GENG, and
DEMOCRACY ACADEMY OF CHINA

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BAIQIAO TANG a/k/a TANG BAIQIAO, JING GENG, and DEMOCRACY ACADEMY OF CHINA, <br><br> *Plaintiffs*, <br><br> v. <br><br> WENGUI GUO, a/k/a MILES KWOK, a/k/a GUO WENGUI, <br><br> *Defendant*. | Case No: 17-CV-9031 <br><br><br> **COMPLAINT** |

   Plaintiffs Biaqiao Tang a/k/a Tang Biaqiao ("Mr. Tang"), Jing Geng ("Jing") and

Democracy Academy of China ("DAC," collectively with Mr. Tang and Jing, "Plaintiffs") by their

attorneys Lewis & Lin LLC, for their complaint against Defendant Wengui Guo a/k/a Miles Kwok

a/k/a Guo Wengui a/k/a Haoyun Guo a/k/a Ho Wan Kwok a/k/a Ho Kwok a/k/a Wen Gui Gwo

a/k/a Wan Gue Haoyun a/k/a Guo Haoyun ("Kwok" or "Defendant"), allege as follows:

**STATEMENT OF CASE**

   1.  Plaintiffs bring this action pursuant to the federal Lanham Act and common law

1

for unfair competition, tortious interference and the malicious, willful and unlawful publication in this District of false, misleading, disparaging and defamatory statements by Defendant regarding Plaintiffs.

2.      Plaintiff Mr. Tang is an activist and author who has been one of the leading Chinese political dissidents for the past 28 years, and who has dedicated his life's work and reputation to promoting democracy in China.  Mr. Tang was a leader in the student uprising that led to the Tiananmen Square massacre in 1989, escaped from communist China in the early 1990s, and now permanently resides in exile in the United States as a political refugee—where he continues to promote democracy. Plaintiff Jing is Mr. Tang's wife. Plaintiff Democracy Academy of China is Mr. Tang's nonprofit corporation, whose purpose is to support and promote Mr. Tang's activism through humanitarian aid and educating Chinese democracy leaders.

3.      Defendant Kwok is a Chinese multi-billionaire who, in the wake of pressure from criminal charges related to his business activities in China, used his platform and personal wealth to perpetrate an attack campaign against Mr. Tang and DAC by publishing and communicating false, defamatory and completely fabricated statements on YouTube videos and his Twitter account, @KwokMiles—where he includes links to and advertisements of his commercial businesses.

4.      Specifically, in or around August 2017 to the present, via public comments to third parties and via Kwok's personal Twitter account, published to his over 417,000 Twitter followers online, via email and social media, and accessible across the Internet, Kwok accused Mr. Tang and DAC of cheating, swindling and/or defrauding donation monies for personal gain.

5.      Defendant's fallacious Twitter posts and YouTube videos of his public statements remain active and, upon information and belief, viewed by hundreds of thousands of visitors

each day, and Defendant continues to defame and injure Plaintiffs with same. Kwok's false accusations threaten to destroy Plaintiffs' entire reputations and Mr. Tang's livelihood. As a result of Defendant's misconduct, Plaintiffs have been and continue to be substantially and irreparably harmed.

## PARTIES

6.     Plaintiff Tang Baiqiao ("Mr. Tang") is an individual and Chinese political refugee, granted permanent resident status in the United States, domiciled in the State of California.

7.     Plaintiff Jing Geng ("Jing") is a private individual and U.S. citizen, domiciled in the State of California.

8.     Plaintiff Democracy Academy of China a/k/a "民主大学" or "Democracy University" ("DAC," collectively with Mr. Tang, "Plaintiffs") is a nonprofit corporation organized and existing under the laws of the State of California.

9.     Upon information and belief, Defendant Kwok a/k/a Guo Wengui ("郭文贵") is an individual and Chinese national who is residing and domiciled in New York at 781 Fifth Avenue, 18th Floor, New York, New York 10022.  Kwok uses aliases, including but not limited to, Miles Kwok, Guo Wengui, Haoyun Guo, Ho Wan Kwok, Ho Kwok, Wen Gui Gwo, Wan Gue Haoyun, and Guo Haoyun.  Defendant Kwok maintains the active, verified Twitter account "@KwokMiles" and YouTube account "郭文贵".

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq.  This Court has also subject matter jurisdiction, *inter alia*, pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

11.     This Court has pendent jurisdiction of the related state law claims asserted in this

action pursuant to 28 U.S.C. § 1367 because they involve the same parties, they arise from the same operative facts common to the causes of action arising under the federal claims, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

12. This Court has personal jurisdiction over Defendant Kwok because he is a resident of the State of New York.

13. This Court also has personal jurisdiction over Defendant pursuant to CPLR § 302 because he (i) transacts business within the State of New York and (ii) committed a tortious act within the State of New York, while regularly doing and soliciting business and deriving substantial revenue from services rendered in the State of New York.

14. Defendant further subjected himself to this Court's jurisdiction by invoking the benefits and protections of this State in an attempt to cause harm from the State of New York. Defendant orchestrated false and defamatory posts, made between August 2017 and the present, all from his residence in New York, while Defendant engages in substantial competition with Plaintiffs Tang and DAC.

15. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c), since some, or all, of the conduct that is the subject of this action occurred in this district.

## BACKGROUND COMMON TO ALL CLAIMS

16. Plaintiff Mr. Tang is a political activist and author who has been one of the leading Chinese political dissidents for the past 28 years, and who has dedicated his life's work and reputation to promoting democracy in China.

17. Mr. Tang was a leader in the student uprising that led to the Tiananmen Square massacre in 1989, escaped from communist China in the early 1990s, and now permanently

resides in exile in the United States as a political refugee—where he continues to promote democracy.

18.    Prior to his arrival in the United States, while in exile in Hong Kong, Mr. Tang contributed to and co-authored "Anthems of Defeat: Crackdown in Hunan Province 1989-1992" through Human Rights Watch—which book details some of the harshest punishments and human rights atrocities by the Communist Party of China ("CCP") during the Tiananmen Square protests and 1989 democracy movement.

19.    Since his escape from China, Mr. Tang has remained active in the pro-democracy movement, including bringing international attention to China's human rights policies and calling for review of the CCP's persecution of Falun Gong practitioners.  Mr. Tang is a frequent on-air commentator for New York-based television broadcaster New Tang Dynasty Television— which frequently covers topics that are censored in mainland China, such as human rights.  He also is a spokesman and officer for the China Interim Government—which was founded with the goal of disintegrating the tyranny of the CCP.

20.    In 2011, Mr. Tang co-authored the book "My Two Chinas: The Memoir of a Chinese Counterrevolutionary," detailing his life's work and history of pro-democracy activism. Mr. Tang's written work has also appeared in numerous national and international journals and publications, including the Journal of International Affairs—a publication edited by graduate students at the School of International and Public Affairs at Columbia University, where Mr. Tang earned his Masters in 2003.

21.    Mr. Tang has been invited to speak at human rights and international affairs conferences across the United States, some of which he receives modest honorariums. He has also been known for his pro-democracy nonprofit organizations including the China Peace and

Democracy Federation–formerly called "China Peace"–and the All China People's Autonomous Federation.  Mr. Tang's organizations were and are funded via public and private donations.

22.    Jing Geng Tang is Mr. Tang's wife and is a private individual.

23.    Democracy Academy of China ("DAC") is a nonprofit organization founded by Mr. Tang in 2012 and incorporated in the State of California as of 2015.  Mr. Tang founded DAC to promote the concept of human rights and democracy, promote the democratic revolution in China, China youth leaders training for the democratic revolution and future democracy China.

24.    Through his own efforts and reputation, Mr. Tang receives donations, speaking fees and contributions to support his life's work: the pro-democracy movement in China.

25.    In addition, Mr. Tang and DAC conduct and host conferences and fund raising events, entitled the "Democratic Revolutionary Conference," in various states, including New York.

26.    In short, Plaintiffs Tang and DAC derive income from donations, contributions, and public and private gifts buttressed on Mr. Tang's personal and professional reputations—which are held in high regard.

**Defendant and his Wrongful Conduct**

27.    In early 2017, Mr. Tang was introduced to Defendant Kwok, a Chinese multi-billionaire and real estate mogul. Before Kwok moved to the United States, he had connections with senior officials in the Chinese government and amassed his fortune via an extensive portfolio of hotels, office buildings, condominiums and investment firms.

28.    Kwok, in the wake of pressure from criminal charges related to his business activities in China in 2015, relocated to a $68 million apartment in New York City (where he resides today), to cultivate an image of resistance to corruption in the Chinese government,

ostensibly as a political dissident in the vein of Mr. Tang.

29.    Based on this portrayal of common interests, Mr. Tang and Kwok developed a personal and professional relationship that Mr. Tang hoped would promote democracy in China—his life's mission.

30.    Unaware that Kwok intended to leverage Mr. Tang's reputation and following for his personal and professional gain, Mr. Tang became one of Kwok's most public and ardent supporters in Kwok's purported resistance to corruption in the CCP.

31.    Upon information and belief, few in the United States knew of Kwok before his rousing endorsement from Mr. Tang in 2017—which endorsement, along with Kwok's flamboyant personality, catapulted him into the spotlight.

32.    Then, instead of supporting Mr. Tang's human rights efforts, Kwok used his platform and personal wealth to perpetrate an attack campaign against Mr. Tang and DAC by publishing and communicating false, defamatory and completely fabricated statements on YouTube videos and his Twitter account, @KwokMiles—where he includes links to and advertisements of his commercial businesses: www.panguplaza.com.

33.    Upon information and belief, Pangu Plaza is an Olympic torch-shaped complex of hotel, office, and condominium residence buildings owned by Kwok and built prior to the 2008 Olympic games in Beijing.

34.    In reality, Kwok's public persona and political dissident narrative, co-opted from Mr. Tang's actual life history, is a ruse to garner political, public, and financial support for political asylum in the United States and to supplant himself as the most-worthy and/or primary recipient of donations for the social causes Mr. Tang has spent his life advancing (to wit: democracy in China)—all to escape his criminal charges in China and to continue adding value

to his multi-billion-dollar empire.

35.     Beginning in or around August 2017 and continuing to the present, in an intentional effort to divert business and contributions away from Plaintiffs Tang and DAC and toward Defendant, and to cause injury to Plaintiffs, Defendant Kwok began to contact Tang and DAC's potential donors in an effort to dissuade Plaintiffs Tang and DAC's potential donors from doing business with or contributing to Plaintiffs Tang and DAC.

36.     In particular, Defendant Kwok has posted taunting material and defamatory statements, authored, espoused, concurred in and/or endorsed by Kwok, about Plaintiffs Mr. Tang, Jing and DAC and Plaintiffs Tang and DAC's services on various websites and social media outlets across the Internet—including on his YouTube and Twitter accounts.

37.     Specifically, Kwok has attempted to attack the personal and professional reputation of Mr. Tang and Jing to undermine Mr. Tang's credibility as the leading Chinese political dissident by falsely accusing and directly endorsing others' false statements accusing Mr. Tang and Jing of being a spies for the Chinese government, accusing Mr. Tang of defrauding and swindling monies for donations sent to Mr. Tang and his pro-democracy organizations, and calling Mr. Tang all types of heinous things, including a convicted rapist.

38.     On or about September 8, 2017, Mr. Tang and DAC publicly announced a fundraising campaign for DAC's Democratic Revolution Conference to be held in New York from September 30 to October 1, 2017.  The goals of the conference were to meet and discuss how to effectively promote democracy in China.

39.     After the conference was announced, upon information and belief, the CCP attempted to sabotage every aspect of the conference, including discrediting and intimidating the preparatory team members of the Conference, including Mr. Tang. One the participating guests

was harassed and threatened to obstruct the open and legitimate fundraising activities in the preparatory process for the Conference.

40.     At that time, upon information and belief, no other similar pro-Chinese-democracy conference was being promoted and was fundraising in New York, or in the United States.

41.     On or about September 10, 2017, speaking from his New York apartment, Kwok live-streamed and subsequently published on YouTube a 1 hour 20 minute and 11 second long Chinese language video to an audience of supporters (the "September 10th Video"). The September 10th Video is available and can be viewed on Kwok's YouTube account at www.youtube.com/watch?v=EOk2QpE4aAU.

42.     To date, the September 10th Video on Kwok's YouTube channel, in which he defames Mr. Tang and DAC, has been viewed more than 255,000 times.  A condensed 13-minute version of the September 10th Video, is available and can be viewed at www.youtube.com/watch?v=fWvJ7UPsZAI. To date, that version of the September 10th Video has more than 292,000 views on YouTube.

43.     In both versions of the September 10th Video, Kwok defames and makes false statements of fact about Plaintiffs Tang and DAC and the planned Conference. A Chinese language transcript and English language translation of the condensed version of the Video is annexed hereto as **Exhibit A**.

44.     Specifically, in the September 10th Video, Defendant Kwok states, in relevant part as follows:

      a.  "**There are many conferences**, such as **TANG** . . . **democratic meeting**, . . . .However, if anyone wants to fundraise in society, I will cut off the relationship

with you immediately. We need to be very clear. If anyone makes a fundraising activity, I will cut off the relationship with you immediately, because **we cannot fundraise at this time**. . . .”

b. “They don’t have money to eat, so **they just swindle donations for the party**, and they beg for money for the party, and they just know how to ask for money.”

c. “[N]ow we have become a party that begs for food or money, or a party that **swindles for donations, and then the donations become unclear**, so this is a huge damage to us, a huge damage, so I tell everyone that I am firmly against it. Anything related to donations or fundraising, I will immediately draw a clear line with you. If you have democracy, you have the heart and motivation to pursue democratic freedom and governance by law, you can devote your own time and work, including some money, **but you cannot fundraise**.”

*See* Exhibit A (emphasis added).

45.    The above statements are knowingly and materially false, and were made to defame Plaintiffs.

46.    Within the same September 10th Video, Defendant likewise made unseemly comparisons between Plaintiffs and “swindling for donations,” i.e. serious crimes of fraud, in an effort to promote his false persona of being a political dissident. Thus, by linking Mr. Tang and the DAC’s conference to these forms of “swindl[ing]” and fraud, Defendant Kwok intentionally attempts to bring Plaintiffs’ reputation, credibility and good will in ill repute.

47.    Defendant made the above statements in such a fashion that no reasonable person would believe that the statements made therein were opinion, but rather statements of fact about Plaintiffs Mr. Tang and DAC.

48.     Furthermore, because of Defendant Kwok's stature in the community and Tang's previous public endorsement of Kwok, viewers understood the above statements to be factual.

49.      Upon further information and belief, from August 2017 to the present, Defendant has communicated these same false and defamatory statements to other individuals, via email, social media, orally and elsewhere in writing.

50.     The September 10th Video has remained active and accessible through the Internet since its creation.

51.     Upon information and belief, hundreds, if not thousands, of people each day view the September 10th Video, which has a significant influence on viewers' perception of Plaintiffs.

52.     Moreover, more than twenty scheduled attendees at DAC's Democratic Revolution Conference cancelled their trips and withdrew their donations to Plaintiffs after the Video was published and stated to Mr. Tang that the false statements in the September 10th Video motivated their decisions to withdraw.

53.     Upon information and belief, numerous other potential and prospective attendees refused to attend and/or withdrew their support for DAC's Democratic Revolution Conference after viewing Kwok's September 10th Video.

**Kwok's Campaign of Disparaging Statements and Unfair Competition**

54.     Upon information and belief, Kwok also posted a link to the September 10th Video on his Twitter account, @KwokMiles, where he has made and/or endorsed other disparaging statements regarding Plaintiffs in an effort to continue his organized campaign to compete with Plaintiffs and supplant himself as the most noteworthy political dissident, in the vein of Mr. Tang.

55.     On September 11, 2017, Kwok sent Mr. Tang two voice messages wherein Kwok

falsely claimed to have evidence that (i) Mr. Tang was sentenced to jail for the crime of rape and (ii) Mr. Tang received millions of dollars from the Chinese government through Plaintiff Jing, his wife—insinuating that Mr. Tang's decades-long claims of dissidence to the Chinese government were false and that Mr. Tang and Jing were "special agents" or spies for the Chinese government.  In those voice messages, Kwok said he sent dozens of pages of documents to at least seven individuals, including two scheduled attendees at DAC's Democratic Revolution Conference, Mr. Hongbin Yuan and Mr. Guo Baosheng (unrelated to Defendant).

56.     Upon information and belief, Kwok also repeated these false claims of rape by Mr. Tang to the seven individuals.

57.     Thereafter, Mr. Hongbin Yuan and Mr. Guo Baosheng cancelled their trips and attendance at DAC's Democratic Revolution Conference.

58.     On or about October 10, 2017, Kwok posted a tweet to his Twitter account stating: "对唐柏桥一些事情的说明包括8月16日唐柏桥对郭文贵先生的留言节选（经相关人士许可发布），" which translates to "Explanations of the things related to Tang Boqiao and selected messages of Tang Boqiao to Mr. Guo Wengui on August 16 (permitted to be published by applicable people)." (the "October 10th Tweet"). The October 10th Tweet is available and can be viewed on Kwok's Twitter account at www.twitter.com/KwokMiles/status/917727740329160704.  An English language translation of the October 10th Tweet is annexed hereto as **Exhibit B**.

59.     Kwok's October 10th Tweet also published a YouTube video of Mr. Guo Baosheng, wherein Mr. Guo Baosheng (i) published a 20 minute long voice recording between Mr. Tang and Defendant Kwok, that Mr. Guo Baosheng said he received from Defendant Kwok, (ii) published disparaging statements that Mr. Tang was wrongfully using monies from DAC's

bank account to steal same for Mr. Tang's personal gain. A visitor to Kwok's Twitter account can view the entire Guo Baosheng video within Kwok's October 12th Tweet, without leaving the tweet or webpage.

60. All of the statements concerning Mr. Tang and DAC within the video appended to the October 10th Tweet are false and completely fabricated. They have been published by Kwok on his Twitter account for the overt purpose of destroying the reputations and business of Mr. Tang and DAC by misleading the public to believe that Mr. Tang can and does swindle donation money for personal gain.

61. Specifically, because of Kwok's additional commentary on the October 10th Tweet, coupled with the act of retweeting the disparaging video within, and his reputation and experience (including his professed and well-known relationship with Mr. Tang), people understood that Kwok adopted the factual content of the Tweet and video within as true—as if he were speaking the words within the video himself, in addition to republishing those same words on his Twitter account.

62. The October 10th Tweet has been "retweeted" more than 400 times and "liked" more than 1,400 times.

63. Upon information and belief, the video appended to the October 10th Tweet has been viewed more that 63,000 times.

64. On or about October 12, 2017, Kwok posted a tweet to his Twitter account stating: "(20)郭文贵保卫战：女侠大战唐骗子系列之三（决胜篇）10/11/17," which translates to "(20) Guo Wengui Defense War: Female Warrior Fighting Against Liar Tang Series Three Final Battle 10-11-17." (the "October 12th Tweet"). The October 12th Tweet is available and can be viewed on Kwok's Twitter account at

www.twitter.com/KwokMiles/status/918624512983388160.  An English language translation of the October 12th Tweet is annexed hereto as **Exhibit C**.

65.      Kwok's October 12th Tweet also published a YouTube video of Xinping Zhang originally posted YouTube on October 11, 2017 (the "October 11th Video"). A visitor to Kwok's Twitter account can view the entire October 11th Video within Kwok's October 12th Tweet, without leaving the tweet or webpage. A Chinese language transcript and English language translation of the October 11th Video is annexed hereto as **Exhibit D.** The title of the October 11th Video (appended to the October 12th Tweet) translates to "(20) Guo Wengui Defense War: Female Warrior Fighting Against Liar Tang Series Three Final Battle 10-11-17 Eliminate completely Tang Boqiao [*sic*] is the biggest contribution to our Guo Wengui Defense War." *See* Exhibit C.

66.      In the October 11th Video, appended to Kwok's October 12th Tweet, Kwok and Ms. Zhang published false and disparaging statements concerning Mr. Tang, Jing and Plaintiffs Mr. Tang and DAC's services, including, but not limited to, (i) that Mr. Tang and Jing were a "special agent[s]" or spies for the Chinese government, (ii) Mr. Tang is a "liar," (iii) Mr. Tang "swindles" for donations via DAC, and (iv) that Defendant Kwok has documentary evidence that Mr. Tang cooperated with Chinese authorities by identifying and turning in other political dissidents who have since mysteriously disappeared.

67.      In the October 11th Video, published by Defendant Kwok, it states in relevant part as follows:

   a.   "YUAN Jianjun exposed materials about **GENG Jing being a secret agent**."

   b.   "Then, yesterday there was an announcement, and yesterday the formal cutting off of the relationship with **TANG Baiqiao** was made public, and a long

recording was played. People also learned the truth about many things. Then, for **Liar TANG Baiqiao, he swindles for donations, he swindles for money, always swindling and lying, doing sneaky things**, I think everyone has understood it now."

c. "Today, I want to emphasize that **TANG Baiqiao is not just a liar, he is really a secret agent**. We will keep exposing him continuously, but the thing about exposing **his secret agent identity**, **we need to pay attention to Mr. GUO's exposed materials**, so that we will not have any conflict with his exposed materials. To reveal **this liar, the secret agent** thing is very important, but if Mr. GUO has anything new, we will withdraw and wait until Mr. GUO settles down. We will not let the Internet be very quiet, and we will expose **this big liar**. Today, I want to talk about **TANG Baiqiao, this secret agent**. **I not only have evidence about his political background, there are indeed a lot of signs indicating that he has the background of Chinese Communist Party**."

d. Mr. Tang "is just a dog raised by the Chinese Communist Party. He uses the Chinese consulate in Los Angeles as his own house."

e. "Why did **TANG Baiqiao** visit the younger brother of Bruno WU in Tangbao the first thing when he arrived in New York? This indicates that **he came with the mission from the Communist Party**, to get in touch with Mr. GUO, and after contacting Mr. GUO, **to find opportunities to kill Mr. GUO**."

f. "I tell you, no wonder that **GENG Jing** worked so hard, waiting in Central Park during such a heavy rain. **What are you if you are not a secret agent**?"

g. "Also, a few days ago, Mr. YUAN played a recording of Mr. GUO, questioning

you TANG Baiqiao, and we listened to the content of his questions to you. Mr. **GUO asked you about the documents. Mr. GUO said that he donated money to you for the democratic movement, but it was not for you TANG Baiqiao.** But please explain it to me, **what are the files about? TANG Baiqiao, please hurry up and explain to us what the files are about. These files are about the internet friends in China who supported you for the democratic revolution, the internet friends who donated money to you. You submitted the list to the Ministry of National Security of the Chinese Communist Party, and now these internet friends have all disappeared**. Why did they disappear? TANG Baiqiao, please explain. If you are not a **secret agent,** then what are you? **Mr. GUO has the evidence, but we don't**."

h. "In the evening of the day before yesterday, when YUAN Jianbin was disclosing **the secret agent identity of GENG Jing**, he was constantly attacked by hackers."

i. "**GENG Jing is a current secret agent of the Ministry of National Security, and has funds for being a secret agent**. TANG Baiqiao is a target for which GENG Jing has tried to develop and is under GENG Jing. **Therefore, although TANG Baiqiao is not a current secret agent of the Ministry of National Security, he is absolutely a target of being recruited to be a secret agent and is a small secret agent**."

j. "**We must completely expose the secret agent identity of TANG Baiqiao** because [f]or the defense of GUO Wengui, he can cause more damaging effect than a cold stone knife in a summer night, greater damaging effect than any person. **He still swindled many internet friends**, and if we don't expose him

now, he will still keep dividing our internal defense force. In his heart, **Liar**

**TANG** has enormous hatred towards GUO Wengui."

*See* Exhibit D (emphasis added).

68. The October 11th Video calls Mr. Tang a "liar" more than 28 times and Mr. Tang and/or Jing a "secret agent" more that 15 times.

69. All of the statements concerning Mr. Tang, Jing and DAC within the October 11th Video, appended to Kwok's October 12th Tweet are false and completely fabricated. They have been published by Kwok on his Twitter account for the overt purpose of destroying the personal reputations and business of Mr. Tang, Jing and/or DAC.

70. Neither Mr. Tang nor Jing are "secret agents" or spies for the Chinese Communist Party. Mr. Tang does not "swindle for donations" or "swindle for money." Mr. Tang did not try to "kill Mr. Guo [a/k/a Kwok]."

71. Specifically, because of Kwok's additional commentary on the October 12th Tweet, coupled with the act of retweeting the disparaging October 11th Video within, and his reputation and experience (including his professed and well-known relationship with Mr. Tang), people understood that Kwok adopted the factual content of the October 12th Tweet and October 11th Video within as true—as if he were speaking the words within the October 11th Video himself, in addition to republishing those same words on his Twitter account.

72. Indeed, Kwok's earlier published videos similarly accused Mr. Tang of being, *inter alia*, a "swindler" before and referenced documentary "evidence" that Kwok claims to have (*see* ¶ 68(g)) above), such that Kwok's republication of the October 11th Video was understood (by viewers of the video and his October 12th Tweet) to be a continuation of the false set of facts that Kwok had asserted about Plaintiffs in the recent past.

73.     The October 12th Tweet has been "retweeted" more than 300 times and "liked" more than 1,200 times.

74.     Upon information and belief, the October 11th Video (published within Kwok's October 12th Tweet) has been viewed more than 30,000 times.

75.     On or about October 23, 2017, Kwok, speaking from his New York apartment via video to approximately, upon information and belief, twenty to thirty individuals, defamed and made false statements of fact about Plaintiffs Tang and DAC and the planned Conference. (the "October 23rd Video"). A condensed version of the October 23rd Video, is available and can be viewed at www.twitter.com/GO_GO_60/status/922680968728776704. A Chinese language transcript and English language translation of a condensed version of the October 23rd Video is annexed hereto as **Exhibit E**.

76.     In the October 23rd Video, Defendant Kwok states, in relevant part as follows:

   a.  "In addition, I always try to be thankful for and unite with Mr. *TANG Baiqiao*. You may not know what my relationship with Mr. *TANG Baiqiao* has inflicted on me. I have to endure attacks, resentment and so many negative things from overseas and his enemies. However, our feelings and moral integrity ultimately failed to overcome the power of truth. *Mr. TANG Baiqiao* is unable to withstand the test. Later I will forward you an audio file of 20+ minutes he sent to me. . . .But you need to know that Mr. *TANG Baiqiao* made a big mistake in that audio recording. I, Wengui, used to be a grassroots farmer. I have seen many things. Nobody dared to talk to and treat me like that. That shows some problems with Mr. *TANG Baiqiao*. First, as you can hear from the audio recording, **he stressed I'm affluent as I easily made a donation of USD 500,000 while a meeting costs**

**only USD 20,000 to 30,000 US**. Such notion astounded me very much. **It proved what others said about him. What exactly? He regarded democratic movement as democratic donation. He regarded democratic movement as a business**. This has been absolutely corroborated in [the recording]. Second, he brings up his wife for everything. He always favors personal relationship over our ideals and fighting goals. **He can't make a clear distinction between public and private interests**. Third, much to my astonishment, he is so conceited that he said my whistle blowing and the results of our fight against traitors would be impossible without him. Undoubtedly he overestimated himself. In conclusion, **his purpose to attend the democratic congress is impure** and his political quality and morality are substandard."

*See* Exhibit E (emphasis added).

77.    The above statements are knowingly and materially false, and were made to defame Plaintiffs.

78.    Within the same October 23rd Video, Defendant Kwok again makes unseemly comparisons between Plaintiffs Tang and DAC and swindling for donations, i.e. serious crimes of fraud, in an effort to promote his false persona of being a political dissident. Thus, by linking Mr. Tang and the DAC's conference to these forms of swindling and fraud, Defendant Kwok intentionally attempts to bring those Plaintiffs' reputations, credibility and good will in ill repute.

79.    Defendant Kwok made the above statements in such a fashion that no reasonable person would believe that the statements made therein were opinion, but rather statements of fact about Plaintiffs Mr. Tang and DAC.  Indeed, in the October 23rd Video, Kwok claims to have documentary evidence supporting his statements regarding Plaintiffs' donation improprieties that

he received from "intelligence agents in which [he] ha[s] 28 years of experience," to give the false impression that his statements are supported by facts only known to him.

80. On or about November 12, 2017, speaking from his New York apartment, Kwok live-streamed and subsequently published on YouTube a 38 minute and 43 second long Chinese language video to an audience of supporters (the "November 12th Video"). The November 12th Video is available and can be viewed on Kwok's YouTube account at www.youtube.com/watch?v=HPeOcd437y8. To date, the November 12th Video on Kwok's YouTube channel, in which he defames Mr. Tang and DAC, has been viewed nearly 146,000 times.

81. A condensed 2-minute version of the November 12th Video, is available and can be viewed at twitter.com/GO_GO_60/status/929904474751152128. To date, that version of the November 12th Video has more than 170 retweets and more than 340 likes.

82. In both versions of the November 12th Video, Kwok defames and makes false statements of fact about Plaintiffs Tang and DAC.

83. Specifically, in the November 12th Video, Defendant Kwok begins by ridiculing the exiled political refugees from the Tiananmen Massacre—including Mr. Tang. Then Defendant Kwok praises Ms. Zhang and her statements in the October 11th Video, and states, translated in relevant part as follows:

    a. "Fundraising every day. After 28 years, how much money have you raised? Did you do anything like a human? Where did the donation money go? Who implemented after the meeting? Fundraising after fundraising, meeting after every fundraising, everyone is gone after eating and drinking in the meeting and did nothing. You are more despicable than Chinese Communist Party and the Thefts

of the National Wealth."

84.    By linking Mr. Tang and the DAC's efforts to the CCP and using the words "theft" in association with Plaintiffs' fundraising efforts, Defendant Kwok intentionally attempts to bring those Plaintiffs' reputations, credibility and good will in ill repute.

85.    On or about November 16, 2017, Kwok live-streamed and subsequently published on YouTube a 13 minute long Chinese language video to an audience of supporters (the "November 16th Video"). The November 16th Video is available and can be viewed on YouTube at https://www.youtube.com/watch?v=AYa5anpj0hY.

86.    In the November 16th Video, Kwok defames and makes false statements of fact about Plaintiffs Tang and DAC. Specifically, Kwok accuses Mr. Tang of "fraud" and "lying" and stated Tang (i) "looks like his artifice of swindles and fraud and the way he succeeds with every fraud never changes. This is why he is a big swindler, a professional swindler;" and (ii) "You see him [Tang], for only twenty or thirty thousand dollars, he swindles one person after another. Lots of people gave me a lot of information about him but I never said anything about him. These few days he is out of his mind."

87.    The above statements are knowingly and materially false, and were made to defame Plaintiffs.

88.    By publishing the September 10th Video, October 11th Video, October 23rd Video, November 12th Video and November 16th Video, Kwok acted with constitutional malice because he knew he was lying when he made these allegations about Mr. Tang. At a minimum, Kwok published those videos with reckless disregard as to whether the statements therein concerning Mr. Tang, Jing and DAC were true or false.

89.    When Kwok published the Videos above to his hundreds of thousands of Twitter

followers, he knew and/or reasonably anticipated that republication of the defamatory and disparaging statements contained therein by his Twitter followers, news outlets and other media was the natural and probable consequence.

90. Indeed, Kwok actively seeks such attention in order to promote his personal and professional brands.

91. The September 10th Video, October 11th Video, October 23rd Video, November 12th Video and November 16th Video (collectively the "Videos"), along with the October 10th Tweet and October 12th Tweet (collectively the "Tweets") have had their intended effect: on information and belief, hundreds of thousands of viewers and readers have been misled about Mr. Tang, Jing and DAC.

92. Plaintiffs have received numerous inquiries about the truthfulness of the statements on the Videos and Tweets. Many of these inquirers have expressed anger, frustration, confusion or dismay to Plaintiffs based on the content of those Videos and Tweets.

93. Upon information and belief, Defendant Kwok published the Videos and posted the Tweets for the sole purpose of harming Plaintiffs' reputations and causing them to lose revenue as the statements within bear directly on Plaintiffs' services, professional capabilities, and business practices—all key aspects of Plaintiffs' business and factors that any person considers before donating to a person or cause.

94. In particular, the statement that Mr. Tang "swindles for donations" is and has been devastating to his reputation and business interests. No one wants to donate to a person who "swindles" and defrauds.

95. Defendant posted the Videos and Tweets (and videos contained therein) on his high-profile YouTube and Twitter accounts precisely because he knows that persons interested in

the topics of political dissidence against China, like Plaintiffs' own conference attendees, review his YouTube and Twitter accounts regularly.

96.     Indeed, Plaintiffs Tang and Defendant Kwok both compete in the public speaking market on the topics of political dissidence against China.

97.     Plaintiff Mr. Tang has authored books on the subject.

98.     Thus, upon information and belief, Defendant knew that the Videos and Tweets (and videos contained therein) would stifle competition with and cause economic harm to Plaintiffs Tang and DAC, especially considering Defendant was a relatively unknown figure until Mr. Tang supported him, and for decades the public had come to trust the political reputations and motivations of dissidents like Mr. Tang and DAC.

99.     In short, when Kwok disparages Plaintiffs, in the manner stated above, Plaintiffs' reputations suffered and donations waned.

100.    Plaintiffs Tang and DAC had and continues to have contractual relationships with their donors and contributors.

101.    Defendant scripted and caused to be disseminated the above statements as part of an intentional, malicious and systematic campaign to interfere with Plaintiffs Tang and DAC's contractual relationships with their donors and contributors, and upon information and belief, to wreak havoc on those Plaintiffs' business by inducing those Plaintiffs' donors, contributors, and prospective donors to cease doing business with Plaintiffs.

102.    As a direct and proximate result of Defendant's defamatory conduct described herein, a number of Plaintiffs Tang and DAC's donors and contributors have been confused, refused to start and/or continue business with those Plaintiffs.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE LANHAM ACT**

103.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 102 as though fully set forth here.

104.    Defendant's publication and direct endorsement of false and misleading statements about Plaintiffs Tang and DAC, and those Plaintiffs' services, constitutes false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

105.    Defendant's publication and direct endorsement of false and misleading statements about Plaintiffs Tang and DAC, and those Plaintiffs' services, is likely to deceive people and consumers as to the nature and quality of those Plaintiffs' services.

106.    As a direct and proximate result of Defendant's unlawful acts, Plaintiffs have suffered irreparable damage to their reputations and will continue to suffer significant and irreparable reputational injury, in addition to significant monetary damages in amounts to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**SLANDER, LIBEL *PER SE*, AND COMMERICAL DISPARAGEMENT**
**(as to all Plaintiffs)**

107.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 102 as though fully set forth here.

108.    Defendant has intentionally made knowingly false statements of fact about Plaintiffs and Plaintiffs' services in the Videos and Tweets.

109.    Additionally, and/or alternatively, Defendant has espoused and/or concurred in the charges made by others to launch an unwarranted personal attack of his own against Plaintiffs and upon Plaintiffs' honor, dignity and standing in the community.

110.    These statements were made maliciously and willfully, and were intended to

cause harm to Plaintiffs' business integrity and personal reputations.

111. The aforementioned statements were false when made and Defendant knew or should have known that the statements were false when made.

112. The statements were made with reckless disregard for their truth or falsity or with knowledge of their falsity and with wanton and willful disregard of the reputation and rights of Plaintiffs.

113. The aforementioned statements where made of and concerning Plaintiffs, and were so understood by those who read Defendant's publication of them.

114. Among other statements, on Kwok's personal YouTube account, published to hundreds of thousands of people online, via email and social media, and accessible across the Internet, Kwok accused Plaintiffs Tang and DAC of being donation "swindle[rs]" and defrauding legitimate donations for personal gain. Similarly, Kwok published statements that Plaintiffs Mr. Tang and Jing were "special agents" and spies.

115. These statements were false, and were published to third parties in this district and across the Internet.

116. Defendant has no privilege to assert the false and disparaging statements.

117. Defendant asserted the above statements with actual malice, in that through Kwok's personal and professional relationship with Mr. Tang as stated above, he knew that the above statements were false. Alternatively, Kwok's statements were published with reckless disregard for the truth or falsity of same, and were made to solely to injure Plaintiffs.

118. As a result of Defendant's acts, Plaintiffs have suffered irreparable damage to their reputations and further damages in an amount to be determined at trial.

119. As a result of the willful and malicious nature of the defamation, Plaintiffs are

entitled to punitive damages.

**THIRD CLAIM FOR RELIEF**
**UNFAIR COMPETITION**
**(as to Mr. Tang and DAC)**

120.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 94 as though fully set forth here.

121.    Defendant authored and are using the Videos and Tweets to divert users searching for Plaintiff Mr. Tang to Defendant's competing business and services.

122.    Defendants posted false and defamatory statements about Plaintiffs online.

123.    Upon information and belief, Defendant knew that Google displays search results to users searching for the people and companies named in those titles and addresses, which results are highly ranked, and that such a false statement would harm Plaintiffs' reputations and business in this district and elsewhere.

124.    Upon information and belief, by posting the disparaging Tweets with the statements "Liar Tang" and "Tang Biaqaio" therein, Defendant intended to use his defamatory and false statements as a means to generate business by turning donors and interest away from Plaintiffs, and redirecting them to Defendant.

125.    These acts and others stated above constitute a pattern of common law unfair competition, entitling Plaintiffs to recovery of compensatory and punitive damages, in an amount to be proved at trial, including compensation for Plaintiffs' time, effort and attorney's fees.

**FOURTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(as to Mr. Tang and Jing)**

126.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 102 as though fully set forth here.

127. Defendants statements that Mr. Tang is, *inter alia*, a "swindler", a "liar" and a rapist occurred intentionally with a desire to harm Mr. Tang.

128. The manner by which Defendant sought to harm Plaintiffs, including the steps described herein via the dissemination of the Videos to communicate with the public at large and oral statements to Plaintiffs' friends and supporters, was extreme and outrageous.

129. As a result of Defendant's past and continued wrongful acts, including, *inter alia*, besmirching Mr. Tang's and Jing's reputation, Plaintiffs have experienced extreme emotional distress.

130. As a result of Defendant's past and continued wrongful acts, the character and reputations of Plaintiffs Mr. Tang and Jing were harmed and they suffered mental anguish and personal humiliation.

131. As a direct and proximate result of Defendant's past and continued wrongful acts, Plaintiffs Mr. Tang and Jing has been materially and substantially damaged in an amount to be proved at trial, including compensation for Plaintiffs Mr. Tang and Jing's time, effort and attorney's fees.

**FIFTH CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND**
**PROSPECTIVE CONTRACTUAL RELATIONS**
**(as to Mr. Tang and DAC)**

132. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 102 as though fully set forth here.

133. Plaintiffs had existing contracts with its donors and contributors and reasonably expected that its contractual relationships with its donors and contributors would continue into the future.

134. Defendant knew of Plaintiffs' contracts. Indeed, Defendant was well aware that Plaintiffs had an upcoming conference because he referred to same in his Videos.

135. By the wrongful conduct described above, Defendant intentionally and improperly interfered with Plaintiffs' contracts with its donors and contributors and did so with the intent and purpose of damaging Plaintiffs' business and reputation.

136. Defendant's interference caused Plaintiffs' donors and contributors confusion, to withdraw their scheduled attendance and to cease doing business with Plaintiffs.

137. At least two of Plaintiff's scheduled attendees who viewed the Videos and received defamatory oral communications from Defendant cancelled their attendance at Plaintiffs' conference.

138. Potentially hundreds of thousands more prospective donors will never inquire with Plaintiffs due to the Videos and Tweets—which was Defendant's precise intention— warning that, "you cannot fundraise" with people and entities like Plaintiffs who "swindle for donations."

139. As a result of Defendant's actions, Plaintiffs have been and continue to be damaged in an amount to be determined at trial.

140. Plaintiffs have also suffered and will continue to suffer irreparable harm in the form of damage to their reputation as a result of Defendant's conduct described herein.

141. While an award of damages may be adequate to compensate Plaintiffs for the loss of donors or contributors, an award of damages will not be adequate to compensate Plaintiffs for the damage to their reputation caused by Defendant. Plaintiffs have suffered and will continue to suffer irreparable harm unless injunctive relief is granted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant awarding Plaintiffs:

1.  Enter a judgment declaring that Defendant's conduct violates 15 U.S.C. §1125(a);

2.  Enter a judgment declaring that Defendant's conduct constitutes slander, libel and/or commercial disparagement;

3.  Enter a judgment declaring that Defendant's conduct constitutes unfair competition;

4.  Enter a judgment declaring that Defendant's conduct constitutes intentional infliction of emotional distress;

5.  Enter a judgment declaring that Defendant's conduct constitutes tortious interference;

6.  Award Plaintiffs compensatory damages according to proof at trial but in an amount not less than $5,000,000.00;

7.  Award Plaintiffs punitive damages pursuant to the Lanham Act and the common law, due to Defendants' willful and wanton behavior;

8.  Enter a temporary and permanent order, enjoining Defendant from publishing the false advertising statements identified above in relation to Plaintiffs, or any false statements similar thereto, and directing Defendant and his respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, to remove, delete, or otherwise disable such videos, links and posts;

9.  Enter a temporary and permanent order, enjoining Defendant from publishing the statements constituting libel and/or commercial disparagement identified above in

relation to Plaintiffs, or any false statements similar thereto, and directing

Defendant and his respective agents, servants, employees, successors and assigns,

and all other persons acting in concert with or in conspiracy with or affiliated with

Defendant, to remove, delete, or otherwise disable such videos, links and posts;

10.     Award Plaintiffs reasonable attorney's fees, costs and disbursements in this civil

action; and

11.     Enter such other and further relief to which Plaintiffs may be entitled as a matter

of law or equity, or which the Court determines to be just and proper.

Dated:   Brooklyn, New York
       November 17, 2017

                              LEWIS & LIN, LLC

                        By:  */s/ David D. Lin*
                            David D. Lin, Esq. (DL-3666)
                            Justin Mercer, Esq. (JM-1954)
                        45 Main Street, Suite 608
                        Brooklyn, NY 11201
                        Tel: (718) 243-9323
                        Fax: (718) 243-9326
                        Email: david@iLawco.com
                                justin@iLawco.com

                        *Counsel for Plaintiffs*

**EXHIBIT LIST**

**Exhibit A** – **September 10th Video (Chinese Transcription and English Translation)**

**Exhibit B** – **October 10th Tweet (English Translation)**

**Exhibit C** – **October 12th Tweet (English Translation)**

**Exhibit D** – **October 11th Video (Chinese Transcription and English Translation)**

**Exhibit E** – **October 23rd Video (Chinese Transcription and English Translation)**