**Cohen& Howard LLP**
Aaron Mitchell, Esquire
766 Shrewsbury Avenue, Suite 301
Tinton Falls, New Jersey 07724
Telephone: (732) 747-5202
Facsimile: (732) 347-5259
*Attorney for Defendant,*
*Wengui Guo.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BAIQIAO TANG a/k/a TANG BAIQIAO, JING GENG, and DEMOCRACY ACADEMY OF CHINA, | : : : : |
| Plaintiffs, | : : |
| v. | : : Case No: 17-CV-9031-JFK |
| WENGUI GUO, a/k/a MILES KWOK, a/k/a GUO WENGUI, | : : : : |
| Defendants | : : |

## MEMORANDUM OF LAW IN SUPPORT

## OF DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

Table of Authorities...............................................................................................................ii

I.  Introduction.................................................................................................................1

II.  Fed. R. Civ. P. 12(b)(6) Standard............................................................................1

III.  This Dispute is not About Commercial Speech.  As such, Plaintiff's Lanham Act
Claim Fails as a Matter of Law and Must be Dismissed...........................................2

A.      Defendant's Social-Media Posts are not "Commercial Advertising or
Promotion..................................................................................................3

1.  Defendant's Web Postings are not "Commercial Speech."...................4

2.  Defendant is not in Commercial Competition with Plaintiffs...........5

3.  Defendant was not Trying to Influence Consumers to Buy
Defendant's Good or Services.............................................................5

4.  Defendant's Web Postings were not Disseminated Sufficiently to the
Relevant Purchasing Public and Therefore cannot be Considered
"Advertising" or "Promotion" within the Chinese Real Estate Industry.............5

B.      Defendant's Social-Media Postings are Protected Free Speech and not
Susceptible to Claims under 15 U.S.C. 1125(a)(1)(B)...............................6

IV.  Many of Plaintiffs' Defamation Claims Fail as a Matter of Law
and Must Be Dismissed.............................................................................................6

A.      Defendant's Opinions of Plaintiff are not Actionable.  Plaintiff's
Defamation Claims Based on Defendant's Statements of Opinion must be
Dismissed..................................................................................................8

B.      Defendant's Alleged Voicemail to Defendant Tang is not a "Publication"
and thus is not Actionable.......................................................................10

C.      Defendant's Statements that Plaintiff Tang is a "Liar" or "Thief" are True
or Substantially True.  Plaintiffs' Claims based on these Statements Fail
as a Matter of Law and must be Dismissed.............................................11

V.  Defendant's Common Law Unfair Competition Claim Fails as a Matter of Law
and must be Dismissed.............................................................................................12

A.      Plaintiffs  Fail to Allege Actual Confusion.............................................13

B.      Plaintiffs Fail to Allege Bad Faith..........................................................15

VI.  Plaintiffs' Claims for Intentional Infliction of Emotional Distress Fail as a
     Matter of Law and must be Dismissed..................................................................16

VII. Plaintiffs' Claims for Tortious Interference with Contractual Relations Fail as a
     Matter of law and must be Dismissed..................................................................20

     A.    Plaintiffs Fail to Identify the Specific Contracts with Third Parties
           with which Defendant Allegedly Interfered....................................................21

     B.    Plaintiffs Fail to Establish the Validity and/or Enforceability of the
           Alleged Contracts with which Defendant allegedly Interfered............................21

     C.    Plaintiffs Fail to Allege that such Alleged Interference was Improper................23

VIII. Plaintiffs' Claims for Tortious Interference with Prospective Contractual Relations
      Fail as a Matter of Law and must be Dismissed...............................................23

IX.  Conclusion.......................................................................................................25

## TABLE OF AUTHORITIES

## CASES

*Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974)................3

*Agugliaro v. Brooks Brothers, Inc.*, 802 F. Supp. 956, 963 (S.D.N.Y.1992).................24

*Anderson v. Treadwell*, 294 F.3d 453, 460 (2d Cir. 2002) ...........................................4

*Angio Medical Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 272 (S.D.N.Y.1989)..............6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)....................................................1,11,18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)......................................1,11

*Berman v. Sugo LLC*, 580 F.Supp.2d 191, 208 (S.D.N.Y.2008)................................21

*Biro v. Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012).............................8,9

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F.Supp.2d 474, 485 (S.D.N.Y.2010)........22

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–67, 103 S. Ct. 2875, 77 L.Ed.2d 469 (1983)...............4

*Bose v. Interclick, Inc.*, No. 10–CV–9183, 2011 WL 4343517, at *10–11 (S.D.N.Y. Aug. 17, 2011)............21

*Butler v. Delaware Otsego Corp.*, 203 A.D.2d 783, 785, 610 N.Y.S.2d 664, 666 (3d Dept.1994)...............18

*Cassini v. Advance Publications, Inc.*, 125 A.D.3d 467, 4 N.Y.S.3d 4 (1st Dep't 2015)
for leave to appeal denied, 26 N.Y.3d 902, 17 N.Y.S.3d 83, 38 N.E.3d 829 (2015)...................18

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) .............................2

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340, 130 S. Ct. 876, 898, 175 L. Ed. 2d 753 (2010)........3

*Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.*, 678 F. Supp. 424, 429 (S.D.N.Y.1987)............13

*Cooper v. Hodge*, 28 A.D.3d 1149, 814 N.Y.S.2d 447 (4th Dep't 2006)........................24

*Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*, 981 F. Supp. 112, 118 (E.D.N.Y. 1997)........7

*D'Lima v. Cuba Mem. Hosp., Inc.*, 833 F. Supp. 2d 383, 392 (W.D.N.Y. June 15, 2011)............18

*Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223, 109 S. Ct. 1013, 103 L.Ed.2d 271 (1989)........3

*Fantaco Enterprises, Inc. v. Iavarone*, 161 A.D.2d 875, 555 N.Y.S.2d 921 (3d Dep't 1990)........24

iv

*Farah v. Esquire Magazine,* 736 F.3d 528, 541 (D.C. Cir. 2013)................................................6

*Fiesta v. Local 3 Int'l. Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir. 1990).........16

*Guard-Life Corp. v. S. Parker Hardware Mfg. Co.,* 50 N.Y.2d 183, 428
N.Y.S.2d 628, 631–633, 406 N.E.2d 445 1980)......................................................20,21,23

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344, 94 S. Ct. 2997, 3009, 41 L. Ed. 2d 789 (1974)....................7

*G.L. v. Markowitz*, 101 A.D.3d 821, 955 N.Y.S.2d 643 (2d Dep't 2012).....................................18

*Gonzalez v. Gray*, 69 F.Supp.2d 561 (S.D.N.Y. 1999), *aff'd* 216 F.3d 1072 (2d Cir. 2000) ..........10

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics,* 859 F. Supp. 1521, 1536 (S.D.N.Y.
1994)..............................................................................................................................3

*Green v. Leibowitz*, 118 A.D.2d 756, 500 N.Y.S.2d 146 (2d Dep't 1986).................................19

*Gross v. New York Times Co.*, 82 N.Y.2d 146, 603 N.Y.S.2d 813, 623 N.E.2d 1166 (1993)..........8

*Holliswood Owners Corp. v. Rivera*, 145 A.D.3d 968, 44 N.Y.S.3d 159 (2d Dep't 2016)...............9

*Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 612 N.E.2d 699 (1993)........................16,17,18

*House v. Wackenhut Servs., Inc.,* 2011 WL 6326100, at *5 (S.D.N.Y. Dec. 16, 2011) .................19

*Ingber v. Lagarenne*, 299 A.D.2d 608, 609, 750 N.Y.S.2d 172 ..............................................12

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34–35 (2d Cir. 1995)........13,14,16

*John R. Loftus, Inc. v. White*, 150 A.D.2d 857, 540 N.Y.S.2d 610 (3d Dep't 1989).......................24

*Kg2, LLC v. Weller*, 105 A.D.3d 1414, 1415, 966 N.Y.S.2d 298 (2013)...................................14

*Klapper v. Graziano*, 129 A.D.3d 674, 10 N.Y.S.3d 560 (2d Dep't 2015), *leave to appeal dismissed*
26 N.Y.3d 1078, 23 N.Y.S.3d 154, 44 N.E.3d 230 (2015)......................................21,25

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003) .................................................2

*Levin v. McPhee*, 917 F. Supp. 230 (S.D.N.Y.1996)........................................................9,19

*Lane's Floor Coverings, Inc. v. Ardex, Inc.*, 1996 WL 19182 (E.D.N.Y.1996)............................23

*McGill v. Parker*, 179 A.D.2d 98, 106, 582 N.Y.S.2d 91, 96 (1992)........................................10

*McNamee v. Clemens*, 762 F. Supp. 2d 584, 608 (E.D.N.Y. 2011)..........................................20

*Mann v. Abel*, 10 N.Y.3d 271, 856, N.Y.S.2d 31, 885 N.E.2d 884, 885 (2008)................................8

*Melius v. Glacken*, 94 A.D.3d 959, 943 N.Y.S.2d 134 (2d Dep't 2012).....................................9

*Moulton Paving, LLC v. Town of Poughkeepsie*, 98 A.D.3d 1009, 950 N.Y.S.2d 762
 (2d Dep't 2012).......................................................................................25

*Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) ........11,18

*Natoli v. City of Kingston*, 195 A.D.2d 861, 600 N.Y.S.2d 780 (3d Dep't 1993)............................19

*NBT Bancorp Inc. v. Fleet/Norstar Financial Group., Inc.*, 87 N.Y.2d 614, 641
N.Y.S.2d 581, 664 N.E.2d 492 (1996).................................................................22,24

*Owen v. Leventritt*, 174 A.D.2d 471, 472, 571 N.Y.S.2d 25 (1st Dept.), *leave to appeal denied*,
79 N.Y.2d 751, 579 N.Y.S.2d 651, 587 N.E.2d 289 (1991)...............................................18

*Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012)......................22

*Ponticelli v. Zurich Am. Ins. Group*, 16 F. Supp. 2d 414, 440 (S.D.N.Y. 1998)............................17

*Purgess v. Sharrock*, 33 F.3d 134, 141 (2d Cir.1994)......................................................23

*Ram v. Moritt*, 205 A.D.2d 516, 612 N.Y.S.2d 671 (2d Dep't 1994)..........................................9

*Rosenfeld v. W.B. Saunders, A Division of Harcourt Brace Jovanovich, Inc.*, 728 F.
Supp. 236, 249–50 (S.D.N.Y.1990) ...................................................................13

*Sabharwal & Finke, LLC v. Sorrell*, 117 A.D.3d 437, 985 N.Y.S.2d 70 (1st Dep't 2014)....................9

*Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980)...............................13,14

*Steinberg v. Schnapp*, 73 A.D.3d 171, 899 N.Y.S.2d 167 (1st Dep't 2010).................................22

*Susskind v. Ipco Hospital Supply Corp.*, 49 A.D.2d 915, 373 N.Y.S.2d 627 (2d Dep't 1975)................24

*Sweeney v. Prisoners' Legal Services of New York, Inc.*, 146 A.D.2d 1, 7,  538 N.Y.S.2d 370 (3rd Dep't
1989) ...............................................................................................20

*Three Crown Ltd. Partnership v. Caxton Corp.*, 817 F. Supp. 1033, 1048 (S.D.N.Y.1993)...................19

*Union Car Advertising Co. v. Collier*, 263 N.Y. 386, 189 N.E. 463, 469 (1934)............................25

*Union Carbide Corp. v. Montell N.V.*, 944 F. Supp. 1119, 1136 (S.D.N.Y. 1996) ..........................20

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 933 (3d Cir.1990)...................4

*Three Ward v. Goldman, Sachs & Co.*, 1996 WL 3930, at 1 (S.D.N.Y. Jan.3, 1996) ....................................18

*Weiner v. Doubleday & Co.*, 74 N.Y.2d 586, 550 N.Y.S.2d 251, 253, 549 N.E.2d 453
(1989), *cert. denied*, 495 U.S. 930, 110 S. Ct. 2168 (1990)...........................................................................8

*Werlin v. Reader's Digest Ass'n, Inc.*, 528 F. Supp. 451, 464 (S.D.N.Y.1981).................................15

*WFB Telecommunications, Inc. v. NYNEX Corp.*, 188 A.D.2d 257, 590 N.Y.S.2d 460 (1st Dep't 1992)........23

*Williams & Co. v. Collins, Tuttle & Co.*, 6 A.D.2d 302, 176 N.Y.S.2d 99, 104 (1st Dep't 1958)..................25

*Wojnarowicz v. American Family Ass'n*, 745 F. Supp. 130, 141 (S.D.N.Y. 1990).........................................3

*Wolff v. City of New York Financial Services Agency*, 939 F. Supp. 258 (S.D.N.Y.1996) ............................18

*W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 576 (2d Cir.1993) ............................................13

*Zapata v. Tufenkjian*, 123 A.D.3d 814, 998 N.Y.S.2d 435 (2d Dep't 2014).................................................17

## Statutes

Fed. R. Civ. P. 12(b)(6)............................................................................................................................1,2

Lanham Act 15 U.S.C. § 1125 (a)(1)(B).............................................................................................2,3,4,6

## I.    INTRODUCTION

This is not a dispute about commercial speech. Plaintiffs and Defendant are not

commercial competitors – they are political activists with differing views.  Defendant is a global

real estate developer. That is his business. He is also a political activist. That is his passion.

Plaintiff Tang is a self-described pro-democracy activist, who purportedly founded Democracy

Academy of China, a nonprofit organization that promotes democratic revolution in China.

Complaint, ¶¶ 19-20, 23. Plaintiffs and Defendant share no common commercial interest. While

Defendant is a successful businessman, the disputed statements have nothing to do with his

business, and do nothing to promote or enhance his business.

This is a defamation dispute – plain and simple. Plaintiffs do not like the criticisms

Defendant has levied against them. Some of those statements will be addressed herein, as

Plaintiffs' claims regarding them (e.g. statements of opinion) can be disposed of as a matter of

law. Other allegedly defamatory statements will be addressed in the future, as Defendant will

introduce extrinsic evidence to prove the truth of those allegedly defamatory statements.  But as

to Plaintiffs' other claims? Lanham Act? Unfair Competition? Tortious Inference? Infliction of

Emotional Distress? As will be seen below, these claims have no place in the present dispute, do

nothing but complicate and confuse the dispute, have not been properly plead, and thus can and

should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    FED. R. CIV. P. 12(b)(6) STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* An "unadorned, the-defendant-unlawfully-harmed-me accusation" does not suffice. *Id.*

A complaint should be construed liberally and all reasonable inferences should be drawn in the complainant's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted); *see also Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003) (a Rule 12(b)(6) movant bears the burden). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also id.* at 678--79 (Fed. R. Civ. P. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## III.   THIS DISPUTE IS NOT ABOUT COMMERCIAL SPEECH. AS SUCH, PLAINTIFFS' LANHAM ACT CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED.

Plaintiffs' first claim for relief is for false advertising under the Lanham Act 15 U.S.C § 1125(a)(1)(B). Complaint, ¶ 104. Plaintiffs claim Defendant's publications of YouTube videos and Twitter postings endorse false statements about Plaintiffs. Complaint, ¶ 105. Plaintiffs claim those statements are likely to deceive people and consumers as to the nature and quality of Plaintiffs' services. *Id.*

15 U.S.C. § 1125 provides in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—...
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1)(B).

2

The Second Circuit has noted, "The Act's purpose ... is exclusively to protect the interests of a **purely commercial class** against unscrupulous **commercial conduct**." *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974) (emphasis added). Section 1125(a) does not have unfettered application, but rather "is limited to false advertising as that term is generally understood." *Id.* Although Section 1125(a) applies to a wide variety of deceptive commercial practices, it has "never been applied to stifle criticism of the goods or services or another by one ... who is not engaged in marketing or promoting a competitive product or service." *Wojnarowicz v. American Family Ass'n*, 745 F. Supp. 130, 141 (S.D.N.Y. 1990).

### A. Defendant's social-media posts are not "commercial advertising or promotion."

In order for a representation to constitute "commercial advertising or promotion" under Section 1125(a)(1)(B), it must be:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics,* 859 F. Supp. 1521, 1536 (S.D.N.Y. 1994).

Plaintiffs have attempted to paint Defendant's YouTube videos and Twitter postings as "commercial advertising or promotion" for the purpose of staking a Lanham Act claim of false advertising. In truth, these videos and postings are First Amendment-protected political speech. Political speech is afforded the "fullest and most urgent" application of First Amendment protection. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340, 130 S. Ct. 876, 898, 175 L. Ed. 2d 753 (2010) (citing *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223, 109 S. Ct. 1013, 103 L.Ed.2d 271 (1989)).

3

1.      **Defendant's web postings are not "commercial speech."**

Commercial speech is typically defined as "expression related to the economic interests of the speaker and its audience, generally in the form of a commercial advertisement for the sale of goods and services." *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 933 (3d Cir.1990) (citing *Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 66–67, 103 S. Ct. 2875, 77 L.Ed.2d 469 (1983)). The Second Circuit considers the following factors to categorize commercial speech: 1) whether the speech is an advertisement; 2) whether the speech refers to a specific product or service; and 3) whether the speaker has an economic motivation for the speech. *Anderson v. Treadwell*, 294 F.3d 453, 460 (2d Cir. 2002) (citing *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 67, 103 S. Ct. 2875, 2880, 77 L. Ed. 2d 469 (1983)).

In an effort to support their threadbare Lanham Act claims, Plaintiffs attempt to cast Defendant's Constitutionally protected criticism of Tang (e.g., political speech) as commercial speech. In support of this allegation, Plaintiffs state that Defendant's twitter biography "includes links to and advertisements of his commercial businesses." Complaint, ¶ 3. However, Defendant's commercial businesses are in real estate – www.panguplaza.com, the website referenced in Defendant's twitter biography (Complaint, ¶ 32), advertises a hotel, office, and residential development in Beijing, China. Nowhere in the Complaint do Plaintiffs allege that they are in the Chinese real estate business, or that Defendant was attempting to divert customers interested in Plaintiffs' Chinese real estate ventures to Defendant's Pangu Plaza project. None of the web posts referenced in the Complaint referred to any specific product or service provided by either the Plaintiffs or Defendant. Furthermore, Defendant has no economic motivation for the speech at issue. It is political speech – plain and simple. There is simply no way that Defendant's YouTube videos and Twitter feeds can be construed as commercial speech.

2.      **Defendant is not in commercial competition with Plaintiffs.**

Plaintiff Tang is a self-described pro-democracy activist, who purportedly founded Democracy Academy of China ("DAC"), a nonprofit organization that promotes democratic revolution in China. Complaint, ¶¶ 19-20, 23. Defendant is a global real estate developer. There is no common economic interest between the two. Therefore, there can be no competition.

3.      **Defendant was not trying to influence consumers to buy Defendant's goods or services.**

Plaintiffs' Complaint alleges Defendant's actions were to "attack the personal and professional reputation of Mr. Tang and Jing to undermine Mr. Tang's credibility as the leading Chinese political dissident..." Complaint, ¶ 37. Even if this were true, Plaintiffs have not made any attempt to provide examples of how Defendant was trying to influence consumers to buy any of Defendant's goods or services. This is not commercial speech. The Lanham Act, therefore, does not apply to this dispute.

4.      **Defendant's web postings were not disseminated sufficiently to the relevant purchasing public and therefore cannot be considered "advertising" or "promotion" within the Chinese real estate industry.**

Although Plaintiffs' Complaint alleges Defendant's social-media postings were widely disseminated, they were not spread to the relevant purchasing public. Defendant is a Chinese real estate developer with properties in China. His YouTube videos and Twitter postings, cited by Plaintiffs, all relate to the Chinese pro-democracy movement happening here in the United States. Plaintiffs admit that those who might have seen Defendant's videos and postings are "persons interested in the topics of political dissidence against China, like Plaintiffs' own conference attendees..." Complaint, ¶ 95. Plaintiffs have not alleged any of the public audience exposed to Defendant's postings could be potential customers of the Defendant. Setting aside the fact that Plaintiffs' are not in the luxury Chinese real estate market themselves, it is

5

counterintuitive to think Chinese dissidents, or those interested in the topic addressed in the postings at issue, are also in the luxury Chinese real estate market.

**B. Defendant's social-media postings are protected free speech and not susceptible to claims under 15 U.S.C. 1125(a)(1)(B).**

Defendant's postings enjoy broad First Amendment protection and therefore, are not actionable under Section 1125(a). Section 1125(a) only applies to commercial speech. *Farah v. Esquire Magazine,* 736 F.3d 528, 541 (D.C. Cir. 2013). Plaintiffs have not alleged Defendant is selling a competing product. Instead, they claim that "Plaintiffs Tang and Defendant Kwok both compete in the public speaking market on the topics of political dissidence against China." Complaint, ¶ 96. However, "[t]he mere fact that the parties may compete in the *marketplace of ideas* is not sufficient to invoke the Lanham Act." *Farah v. Esquire Magazine,* 736 F.3d 528, 541 (D.C. Cir. 2013) (emphasis in original). Section 1125(a) is only directed against false representations in connection with the sale of goods and services in commerce. "It has never been applied to stifle criticism of the goods or services of another by one, such as a consumer advocate, who is not engaged in marketing or promoting a competitive product or service." *Wojnarowicz v. Am. Family Ass'n,* 745 F. Supp. 130, 141 (S.D.N.Y. 1990). For these reasons, Plaintiffs claim under 15 U.S.C. ¶ 1125(a)(1)(B) should be dismissed.

## IV.   MANY OF PLAINTIFFS' DEFAMATION CLAIMS FAIL AS A MATTER OF LAW AND MUST BE DISMISSED

Under New York Law, a claim for Defamation must allege the following four elements: a false and defamatory statement of and concerning plaintiff; publication to a third party; fault, the degree of which depends upon the status of the libeled party; and special harm or *per se* actionability. *Angio Medical Corp. v. Eli Lilly & Co.,* 720 F. Supp. 269, 272 (S.D.N.Y.1989))

6

Plaintiff, Mr. Tang, is an activist and author who has been one of the leading Chinese political dissidents for the past 28 years. Complaint, ¶¶ 2, 16. He lives in the United States as a political refugee "where he continues to promote democracy." Complaint, ¶ 2. Plaintiff Mr. Tang has authored books on the topic. Complaint, ¶ 18. Mr. Tang has remained active in the pro-democracy movement, which has included "bringing international attention to China's human rights policies and calling for review of the CCP's persecution of Falun Gong practitioners." Mr. Tang is a frequent on-air commentator for New York-based television broadcaster New Tang Dynasty Television—which frequently covers topics that are censored in mainland China, such as human rights." Complaint, ¶ 19. Plaintiffs are, by their own admissions in the Complaint, public figures. Mr. Tang, and his non-profit DAC, have enjoyed "general fame" in their community and pervasive involvement in the affairs of society. Further, Plaintiffs have "thrust themselves to the forefront of a particular public controversies in order to influence the resolution of the issues involved." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344, 94 S. Ct. 2997, 3009, 41 L. Ed. 2d 789 (1974). These persons, by becoming public figures, have voluntarily exposed themselves to increased risk of injury from defamatory falsehood. Thus, they are less deserving of recovery. *Id.*

A public figure plaintiff in a defamation case must show "actual malice" on defendant's part. That is, Plaintiff must allege that the statements complained of were false and were made with "actual malice" – that is with knowledge of their falsity or with reckless disregard of whether they were true or false. *Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*, 981 F. Supp. 112, 118 (E.D.N.Y. 1997).

7

A.   **DEFENDANT'S OPINIONS OF PLAINTIFF ARE NOT ACTIONABLE. PLAINTIFFS' DEFAMATION CLAIMS BASED ON DEFENDANT'S STATEMENTS OF OPINION MUST BE DISMISSED.**

Plaintiffs attempt to support their Defamation claim by citing and quoting a series of opinion statements made by the Defendant. (*See, e.g.,* Complaint, ¶ 44, ¶ 67(b), (e), (f), (g), (j), ¶ 76(a), ¶ 83) Expressions of opinion, no matter how offensive, may not be the subject of an action for defamation. *See Weiner v. Doubleday & Co.*, 74 N.Y.2d 586, 550 N.Y.S.2d 251, 253, 549 N.E.2d 453 (1989), *cert. denied*, 495 U.S. 930, 110 S. Ct. 2168 (1990).

Whether a statement is one of fact or opinion is a question of law for the Court. *Mann v. Abel*, 10 N.Y.3d 271, 856, N.Y.S.2d 31, 885 N.E.2d 884, 885 (2008). "The New York Court of Appeals has explained that there is 'particular value' in resolving defamation claims at the pleading stage, 'so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms.'" *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (internal citations omitted). New York courts will examine the challenged statements with a view toward: (1) whether the specific language in issue has a precise meaning that is readily understood; (2) whether the statements are capable of being proved true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to "signal … readers or listeners that what is being read or heard is likely to be opinion, not fact." *Gross v. New York Times Co.*, 82 N.Y.2d 146, 603 N.Y.S.2d 813, 623 N.E.2d 1166 (1993). The dispositive inquiry under New York law is whether a reasonable reader could have concluded that the statements conveyed facts about the plaintiff. *Gross*, 82 N.Y.2d at 152. Because falsity is a necessary element of a defamation claim, and only "facts" are capable of being proved false, "it follows that only statements alleging facts can properly be the subject of a defamation claim." *Id.* at 153.

Several of Defendant's alleged defamatory statements are nonactionable opinions. Many of the statements (*e.g.* Complaint, ¶ 44, ¶ 67, ¶ 76) ascribed to Defendant are either accompanied by a recitation of the facts upon which it is based or do not imply that it is based upon undisclosed facts. *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 461 (S.D.N.Y. 2012). Additionally, many of the alleged statements do not have a precise meaning, and are readily understood as conjecture, hypothesis, or speculation; others are hyperbolic and incapable of being proven true or false. *See e.g., Sabharwal & Finke, LLC v. Sorrell*, 117 A.D.3d 437, 985 N.Y.S.2d 70 (1st Dep't 2014); *Holliswood Owners Corp. v. Rivera*, 145 A.D.3d 968, 44 N.Y.S.3d 159 (2d Dep't 2016); *See also Levin v. McPhee*, 917 F. Supp. 230 (S.D.N.Y.1996); *Ram v. Moritt*, 205 A.D.2d 516, 612 N.Y.S.2d 671 (2d Dep't 1994).

Moreover, in the context of a heated, controversial dispute over whether or not Plaintiffs are sincere in their mission for Chinese Democracy, no reasonable person could conclude that Defendant's statements in calling Plaintiff Tang a "swindler" and a "liar" because of his choice to promote democracy via "fundraising" and soliciting "donations" is conveying any facts about the Plaintiffs. Paragraph 44 of the Complaint quotes Defendant's opinion that "fundraising" and receiving "donations" in order to promote democracy is akin to "swindling." Plaintiffs argue that those who hear these statements (Chinese dissidents) would believe the Plaintiffs to be engaged in "serious crimes of fraud." Complaint, ¶ 46. A reasonable person would not believe "fundraising" and receiving "donations" are serious crimes of fraud. (*See also* Complaint ¶ ¶67, 76); *See, e.g., Melius v. Glacken*, 94 A.D.3d 959, 943 N.Y.S.2d 134 (2d Dep't 2012) (Candidate brought action against mayor, alleging that mayor defamed him during a debate by calling him an "extortionist." The court ruled that mayor's statements, made during a heated debate, were expressions of opinion. In that context the audience would anticipate fiery rhetoric or hyperbole,

and mayor recited a fact forming the basis of his belief that plaintiff was seeking to "extort money," in that he was seeking an excessive amount of damages in a lawsuit against the village.); *Gonzalez v. Gray*, 69 F.Supp.2d 561 (S.D.N.Y. 1999), *aff'd* 216 F.3d 1072 (2d Cir. 2000) (During a television interview, the husband of a deceased patient, who was suing his wife's doctor for wrongful death, stated that the doctor killed the patient, had lied to her, and that the patient had been seduced by a quack. The doctor sued the husband for defamation. The court held that defendant's statements would have been understood by the reasonable viewer as opinion not fact, given the context of the statements and the obviously controversial nature of the doctor's methods.) For these reasons, Plaintiffs' opinion statements must be dismissed.

## B.   DEFENDANT'S ALLEGED VOICEMAIL TO DEFENDANT TANG IS NOT A "PUBLICATION" AND THUS IS NOT ACTIONABLE.

As stated above, one of the required four elements of a defamation claim is publication to a third party. "Publication" is a term of art. A defamatory statement must be read or heard <u>by a third party</u> in order to be actionable. If the allegedly defamed party is the only person to read or hear the statement, it is not actionable. "The mere receipt of an alleged libelous statement does not establish libel on the part of the person who receives the statement." *McGill v. Parker*, 179 A.D.2d 98, 106, 582 N.Y.S.2d 91, 96 (1992).

Paragraph 55 of Plaintiffs' complaint deals with statements allegedly made in two voice mails to Plaintiff Tang. Assuming, *arguendo*, that the statements would otherwise be defamatory, the leaving of a voicemail in the voice mailbox of the allegedly defamed party would not constitute a "publication" and thus the statement would not be actionable.  Plaintiffs attempt to circumvent this requirement by stating "Upon information and belief, Kwok also repeated these false claims of rape by Mr. Tang to the seven individuals." Complaint, ¶56.  Plaintiffs do not identify who these "seven individuals" are. Plaintiffs do not identify when Defendant allegedly

repeated these "false claims." And, most tellingly, Plaintiffs' make this effort to save this claim "on information and belief." Plaintiffs fail to allege any facts sufficient to support this "belief." *See Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) ("Alleging something "upon information and belief" does not suffice to allege a fact under *Iqbal* and *Twombly* unless plaintiff can point to some facts that make the allegations more than speculation.") As such, Plaintiff's claims based on the allegations made in Paragraphs 55&56 of the complaint should be dismissed or stricken.

### C.   DEFENDANT'S STATEMENTS THAT PLAINTIFF TANG IS A "LIAR" OR "THIEF" ARE TRUE OR SUBSTANTIALLY TRUE. PLAINTIFFS' CLAIMS BASED ON THESE STATEMENTS FAIL AS A MATTER OF LAW AND MUST BE DISMISSED

Much of Plaintiff's Complaint is focused on Defendant's accusing Plaintiff Tang of "cheating, swindling and/or defrauding donation monies for personal gain." Complaint, ¶4. The Complaint is particularly focused on Defendant's alleged statements that Tang is a liar, *See, e.g.,* Complaint, ¶¶4, 37, 44, 46, 59, 66, 67, 68, 72, 78, 84, 86, 94, 114, 124, 127, 138.

Plaintiff's statements that Tang is a liar, cheat, or swindler are true or substantially true. The Court can take judicial notice of <u>Hong Zeng v. Baiqiao Teng</u>, Index No. 700260/2014, a 2014 complaint[1] filed against Plaintiff Teng for fraud, conversion, and unjust enrichment. In sum, Plaintiff Teng has been accused by Hong Zeng, another Chinese pro-democracy activist, of defrauding him and diverting over $31,000 of Zeng's money under false pretenses and for Teng's personal use and benefit. Calling Tang a "cheat" or a "swindler" is not false. Stating that he defrauds other activists is not false. At a minimum, it is substantially true. "As a defense, 'truth need not be established to an extreme literal degree. Provided that the defamatory material

---

[1] The <u>Hong Zeng v. Baiqiao Teng</u> Complaint is annexed to the Declaration of Aaron A. Mitchell as **Exhibit A.**

on which the action is based is substantially true (minor inaccuracies are acceptable), the claim to recover damages . . . must fail'" *Ingber v. Lagarenne*, 299 A.D.2d 608, 609, 750 N.Y.S.2d 172 (2002) (internal citations and quotations omitted).

Defendant had a reasonable basis for his statements accusing Plaintiff Tang of "cheating, swindling and/or defrauding donation monies for personal gain." Tang is a public figure. These statements were not made with actual malice. For these reasons, Plaintiffs' defamation claims based on Defendant's statements accusing Plaintiff Tang of "cheating, swindling and/or defrauding donation monies for personal gain" should be dismissed or stricken.

## V.   DEFENDANT'S COMMON LAW UNFAIR COMPETITION CLAIM FAILS AS A MATTER OF LAW AND MUST BE DISMISSED.

Defendant is a global real estate developer. Plaintiff is a self-described pro-democracy activist, who purportedly founded Democracy Academy of China, a nonprofit organization that promotes democratic revolution in China. Complaint, ¶¶ 19-20, 23. Plaintiffs and Defendant share no common commercial interest. Despite this irrefutable fact, Plaintiffs accuse Defendant of common law unfair competition, alleging Defendant's YouTube videos and Twitter feeds are in fact a ploy to confuse the Plaintiffs' "customers" into directing business from Plaintiffs to the Defendant.

Plaintiffs' Complaint make several accusations that the Defendant interfered with Plaintiffs' fundraising abilities, and that Defendants made multiple social-media posts degrading Plaintiffs' character. *See generally,* Complaint, ¶¶ 32, 43, 44, 67. Plaintiffs further contend that the alleged disparaging comments made by Defendant were for the purpose of competing with Plaintiffs as "the most noteworthy political dissident, in the vein of Mr. Tang." Complaint, ¶ 54. Plaintiffs allege Defendant "seeks such attention in order to promote his personal and professional brands." Complaint ¶ 90. How does being considered "the most noteworthy political

dissident, in the vein of Mr. Tang" sell hotel rooms or office space in Beijing? It does not. This is not about business. It is about political speech.

"[T]he essence of unfair competition under New York common law is 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" *Rosenfeld v. W.B. Saunders, A Division of Harcourt Brace Jovanovich, Inc.*, 728 F. Supp. 236, 249–50 (S.D.N.Y.1990) (quoting *Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.*, 678 F. Supp. 424, 429 (S.D.N.Y.1987)), *aff'd*, 923 F.2d 845 (2d Cir. 1990). "In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34–35 (2d Cir. 1995); *See W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 576 (2d Cir.1993) (citation omitted). Additionally, there must be some showing of bad faith. *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980). In sum, the Complaint must allege: (1) actual confusion (or likelihood of confusion) and (2) bad faith. Plaintiffs fail to allege either of these elements. As such, Plaintiffs' claim for unfair competition must be dismissed.

### A.  Plaintiffs fail to allege actual confusion.

In their Complaint, Plaintiffs allege the Defendant is "using the Videos and Tweets to divert users searching for Plaintiff Mr. Tang to Defendant's competing business and services." Complaint, ¶ 121. Plaintiffs allege Defendant has somehow manipulated the search engine Google to "divert users searching for Plaintiff Mr. Tang to Defendant's competing business and services." Complaint, ¶123. Even if Plaintiffs alleged actual "diversion," diversion does not equal confusion or deception. The implication is the Defendant is tricking Plaintiffs' unsuspecting followers, who think they are finding information about the Plaintiff, to websites

13

that are in fact critical of the Plaintiff for the purpose of generating business for Defendant's real estate ventures in China. Plaintiffs fail to allege any facts that support this contention. Plaintiffs allege statements made by Defendant were made "in such a fashion that no reasonable person would believe that the statements made . . . were opinion, but rather statements of fact about Plaintiffs Mr. Tang and DAC." Complaint, ¶ 47. That the Defendant's videos "had their intended effect: on information and belief, hundreds of thousands of viewers and readers have been misled about Mr. Tang, Jing and DAC.[,]" (Complaint, ¶ 91), and that "Plaintiffs have received numerous inquiries about the truthfulness of the statements on the Videos and Tweets[,]" (Complaint, ¶ 92.) Plaintiffs' allegations about their donators' confusion concludes with "[a]s a direct and proximate result of Defendant's defamatory conduct described herein, a number of Plaintiffs Tang and DAC's donors and contributors have been confused, refused to start and/or continue business with those Plaintiffs." Complaint, ¶ 102. Such conclusory statements of fact are insufficient to make a showing of confusion. *See Kg2, LLC v. Weller*, 105 A.D.3d 1414, 1415, 966 N.Y.S.2d 298 (2013) (holding a Plaintiff's affidavit that 34 patrons expressed confusion between plaintiff's and defendant's business was merely conclusory and failed to establish the elements of the cause of action for unfair competition).

Plaintiffs have not alleged that Defendant has tricked anyone. "In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34–35 (2d Cir. 1995). Plaintiffs have failed to cite a single example of their followers actually being confused by Defendant's social-media posts, resulting in the redirecting of business to Defendant. The only fact alleged by Plaintiffs that

connect Defendant's social media posts to his business is that some of his posts contain a link to www.panguplaza.com, which advertises a real estate venture in Beijing. Complaint, ¶ 32.

Furthermore, although Plaintiffs allege Defendant is using his Tweets to "generate business by turning donors and interest away from Plaintiffs . . .", they fail to allege any fact that shows Defendant is actually generating business at a cost to Plaintiffs. Complaint, ¶ 124. In fact, Plaintiffs fail to show how Plaintiffs and Defendant can even be considered to be in competition. *See* Complaint, ¶¶ 54-94 (entitled "Kwok's Campaign of Disparaging Statements and Unfair Competition"). Plaintiffs allege the Defendant "actively seeks such attention in order to promote his personal and professional brands[,]" but Plaintiffs fail to allege any fact proving the merit of the statement. Complaint, ¶ 90. Plaintiffs' Complaint fails to mention what "personal and professional brands" Defendant has, or how Defendant's actions are promoting these brands.

### B. Plaintiffs fail to allege bad faith.

"The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another.... Central to this notion is some element of bad faith." *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980). Plaintiffs fail to allege any facts that show how Defendant is attempting to misappropriate any of the Plaintiffs' labors and expenditures, let alone that Defendant acted in bad faith in doing so.

It is insufficient for a Plaintiff to show that a defendant's action is "unfair." "New York law in this area is indeed flexible, but it is not that flexible." *Id.* As such, New York courts have required a showing:

(1) That the Defendant obtained access to the idea through an abuse of a fiduciary or confidential relationship with the plaintiff or via some sort of fraud or deception . . . and
(2) That the Defendant's use of the idea deprived the plaintiff of the opportunity to reap its due profits on the idea...

*Werlin v. Reader's Digest Ass'n, Inc.*, 528 F. Supp. 451, 464 (S.D.N.Y.1981) (citations omitted).

Plaintiffs have not alleged any fiduciary or confidential relationship with the Defendant. Rather, Plaintiffs have characterized the parties as having a "personal and professional relationship that Mr. Tang hoped would promote democracy in China—his life's mission." Complaint, ¶ 29. At no time do Plaintiffs allege or even imply the relationship between the parties was anything more than casual. Nor have Plaintiffs alleged fraud or deception by Defendant that would grant Defendant access to any of Plaintiffs' ideas from which unfair competitive torts could be committed. Having failed the first prong of the test, it is unreasonable to argue Defendant used an idea to deprive Plaintiffs of the opportunity to reap their due profits on the idea.

Plaintiffs fail to plead the necessary facts to support a claim of unfair competition under New York law. In an action for damages, the Plaintiff must show actual confusion resulted over the Defendant's actions. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34–35 (2d Cir. 1995). Furthermore, Plaintiffs have failed to allege any facts that satisfy the New York Courts' test for bad faith. Plaintiffs failed to plead the necessary facts that would support a legal theory of common law unfair competition. *Fiesta v. Local 3 Int'l. Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir. 1990). For these reasons, Plaintiffs claim for unfair competition must be dismissed.

## VI.   PLAINTIFFS' CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAIL AS A MATTER OF LAW AND MUST BE DISMISSED.

The tort of intentional infliction of emotional distress ("IIED") has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 612 N.E.2d 699 (1993) "The first element--outrageous conduct--serves the dual function of filtering out petty

16

and trivial complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine." *Id.* "Indeed, of the intentional infliction of emotional distress claims considered by this Court, everyone has failed because the alleged conduct was not sufficiently outrageous[.]" *Id.* at 122.

It is extremely difficult to maintain a claim for IIED New York. *Howell v. New York Post*, 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993). *See also Ponticelli v. Zurich Am. Ins. Group,* 16 F. Supp. 2d 414, 440 (S.D.N.Y. 1998) ("The standard for extreme and outrageous conduct is extremely difficult to satisfy.")."Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell*, 596 N.Y.S.2d at 122 (internal quotations and citations omitted). The requirement of outrageous conduct may be determined as a matter of law. *Howell v. New York Post*, 81 N.Y.2d 115, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993); *Zapata v. Tufenkjian*, 123 A.D.3d 814, 998 N.Y.S.2d 435 (2d Dep't 2014) (Trial court properly dismissed plaintiff's IIED claim where the complaint did not allege conduct that was so outrageous in character, or so extreme as to go beyond the bounds of decency.).

Plaintiffs' IIED claim rests upon the following: Defendant's statement(s) that Plaintiff Tang is a "swindler," and a "liar" (Complaint, ¶ 127)[2] as well as two voice messages the Defendant left on Plaintiff Tang's answering machine claiming to have evidence that Plaintiff Tang was sentenced to jail for the crime of rape. Complaint, ¶ 55. Plaintiffs attempt to strengthen their claim by alleging that the Defendant, "Upon information and belief . . . also repeated these false claims of rape . . . to seven individuals." Complaint, ¶ 56. Plaintiffs fail to allege any facts

---

[2] Plaintiff Jing also pleads a cause of action against Defendant for IIED, but fails specify *what* statement(s) about her fall into this claim. Jing's claim should be dismissed for the reason alone.

sufficient to support this "belief." *See Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) ("Alleging something "upon information and belief" does not suffice to allege a fact under *Iqbal* and *Twombly* unless plaintiff can point to some facts that make the allegations more than speculation.")

All of the alleged "statements" and/or "conduct" fail to meet the high standard of "extreme and outrageous." *See, e.g., G.L. v. Markowitz*, 101 A.D.3d 821, 955 N.Y.S.2d 643 (2d Dep't 2012) (Plaintiff failed to state a claim for IIED for statements made by a community volunteer, alleging that a 13-year-old girl had sexual intercourse with her father); *Ward v. Goldman, Sachs & Co.*, 1996 WL 3930, at 1 (S.D.N.Y. Jan.3, 1996) (allegations of comments concerning sexual orientation failed to state claim for intentional infliction of emotional distress); *Wolff v. City of New York Financial Services Agency*, 939 F. Supp. 258 (S.D.N.Y.1996) (Holding that a false charge of sexual harassment, while reprehensible, does not rise to the level of outrage necessary to constitute intentional infliction of emotional distress."); *Cassini v. Advance Publications, Inc.*, 125 A.D.3d 467, 4 N.Y.S.3d 4 (1st Dep't 2015), leave to appeal denied, 26 N.Y.3d 902, 17 N.Y.S.3d 83, 38 N.E.3d 829 (2015) (allegedly false statements in magazine article that plaintiff and her sisters were promiscuous and that the plaintiff had a secret marriage were not so extreme and outrageous to support an action for IIED); *Butler v. Delaware Otsego Corp.*, 203 A.D.2d 783, 785, 610 N.Y.S.2d 664, 666 (3d Dept.1994) (circulating allegedly defamatory materials about an individual to the press and to business associates not extreme and outrageous enough to support IIED claim); *Owen v. Leventritt*, 174 A.D.2d 471, 472, 571 N.Y.S.2d 25 (1st Dept.) (threatening to kill plaintiff insufficient to support action for IIED), *leave to appeal denied,* 79 N.Y.2d 751, 579 N.Y.S.2d 651, 587 N.E.2d 289 (1991); *See also D'Lima v. Cuba Mem. Hosp., Inc.,* 833 F. Supp. 2d 383, 392 (W.D.N.Y. June 15, 2011)

("defamatory statements are generally not sufficiently extreme and outrageous to support an [intentional infliction of emotional distress] claim.") (internal quotations and citations omitted); *House v. Wackenhut Servs., Inc.,* 2011 WL 6326100, at *5 (S.D.N.Y. Dec. 16, 2011) (same). Plaintiffs also fail to sufficiently plead intent. Under New York law, the conduct alleged must be "intentionally directed at the plaintiff **and** lack any reasonable justification." *See Three Crown Ltd. Partnership v. Caxton Corp.*, 817 F. Supp. 1033, 1048 (S.D.N.Y.1993) (emphasis added); *Green v. Leibowitz*, 118 A.D.2d 756, 500 N.Y.S.2d 146 (2d Dep't 1986) ("gravamen of a cause of action for intentional infliction of emotional distress in that the conduct complained of is **especially calculated** to cause and does cause, mental distress of a very serious kind") (emphasis added). Plaintiffs' conclusory allegations do not support a claim that the Defendant's conduct was "especially calculated to cause" serious emotional distress to the Plaintiffs. *Id.* On the contrary, Plaintiffs' Complaint repeatedly alleges that Defendant's statements were calculated to divert donation money away from the Plaintiffs. *See* Complaint, ¶ 35, 93.

Moreover, Plaintiff Geng's IIED claim against Defendant must be dismissed because the Complaint plead only one instance of allegedly tortious conduct against her. *See Levin v. McPhee*, 917 F. Supp. 230, 242 (S.D.N.Y. 1996), *aff'd,* 119 F.3d 189 (2d Cir. 1997) ("conduct usually must involve a continuous course of harassment, rather than a single instance of abuse").

Furthermore, both Plaintiffs failed to clearly specify *how* they suffered emotional distress as a result of Defendant's alleged actions. *See Natoli v. City of Kingston*, 195 A.D.2d 861, 600 N.Y.S.2d 780 (3d Dep't 1993). Instead, Plaintiffs plead only boilerplate allegations of "mental anguish" and "personal humiliation." Complaint, ¶ 130. Such allegations do not rise to the level of "severe emotional distress" required to state a claim for IIED, without specifically pleading the acts and casual connection that resulted in their alleged injuries.

19

Finally, Plaintiffs' IIED claim is based on the same alleged conduct and/or statements addressed in their Defamation claim and therefore must be dismissed as duplicative. *See McNamee v. Clemens*, 762 F. Supp. 2d 584, 608 (E.D.N.Y. 2011); *See also Sweeney v. Prisoners' Legal Services of New York, Inc.*, 146 A.D.2d 1, 7, 538 N.Y.S.2d 370 (3rd Dep't 1989) ("a cause of action for intentional infliction of emotional distress should not be entertained 'where the conduct complained of falls well within the ambit of other traditional tort liability' ... conduct complained of in plaintiff's third cause of action falls entirely within the scope of his more traditional tort claim for defamation"). Both Plaintiffs' claim for IIED and Defamation rest on allegations that Defendant called Plaintiffs "swindlers," "liars," and Plaintiff Tang a "rapist." Complaint, ¶ 114, 127. For these reasons, Plaintiffs' IIED claim must be dismissed.

## VII. PLAINTIFFS' CLAIMS FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS FAIL AS A MATTER OF LAW AND MUST BE DISMISSED.

"The four elements necessary for a plaintiff to allege a claim for tortious interference with contractual relations are: the existence of a contract between plaintiff and a third party; defendant's knowledge of the contract; defendant's intentional inducement of the third party to breach or otherwise render performance of the contract impossible; and damages to plaintiff." *Union Carbide Corp. v. Montell N.V.*, 944 F. Supp. 1119, 1136 (S.D.N.Y. 1996) Additionally, the breach of the contract between the plaintiff and the third-party must be without reasonable justification or excuse. *Guard-Life Corp. v. S. Parker Hardware Mfg. Co.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 631–633, 406 N.E.2d 445 (1980).

### A. PLAINTIFFS FAIL TO IDENTIFY THE SPECIFIC CONTRACTS WITH THIRD PARTIES WITH WHICH DEFENDANT ALLEGEDLY INTERFERED.

Plaintiffs' Complaint fails to allege several necessary elements for a tortious interference claim. First, Plaintiffs fail to allege adequate details about any specific contracts with third parties. Instead, Plaintiffs merely allege to have "contractual relationships with their donors and contributors" (Complaint, ¶ 100) and expect to receive "donations." Complaint, ¶ 35. Second, Plaintiffs fail to identify the specific parties to the alleged contracts. Instead, Plaintiffs' Complaint states "[m]ore than twenty scheduled *attendees* at DAC's Democratic Revolution Conference cancelled their trips and withdrew their donations to Plaintiffs[.]" Complaint, ¶ 52 (emphasis added). Such conclusory allegations are legally insufficient. *See Bose v. Interclick, Inc.,* No. 10–CV–9183, 2011 WL 4343517, at *10–11 (S.D.N.Y. Aug. 17, 2011). (dismissing tortious interference with contract claim where plaintiff claimed generally that it had contracts with various parties, but did not give "facts regarding the terms of the contracts or the specific parties to the contracts"); *Klapper v. Graziano*, 129 A.D.3d 674, 10 N.Y.S.3d 560 (2d Dep't 2015), *leave to appeal dismissed*, 26 N.Y.3d 1078, 23 N.Y.S.3d 154, 44 N.E.3d 230 (2015) (dismissing plaintiff's claim for tortious interference with contract, where the amended complaint did not identify the third party with whom plaintiff was engaging in a business relationship.).

### B. PLAINTIFFS FAIL TO ESTABLISH THE VALIDITY AND/OR ENFORCEABILITY OF THE ALLEGED CONTRACTS WITH WHICH DEFENDANT ALLEGEDLY INTERFERED.

Second, Plaintiffs' Complaint fails to set forth any facts to establish the validity and enforceability of the alleged contract(s). *See Berman v. Sugo LLC*, 580 F.Supp.2d 191, 208 (S.D.N.Y.2008) (dismissing claim that simply alleged that a contractual relationship with a third

party existed, but set forth no facts to allege the type of contract, whether it was nonexclusive, and whether it was valid); *See also Steinberg v. Schnapp*, 73 A.D.3d 171, 899 N.Y.S.2d 167 (1st Dep't 2010) (no liability for a contract the parties could not enforce); *Guard-Life Corp.*, 428 N.Y.S.2d at 634 ("A valid, but terminable at will contract is not sufficient for purposes of this tort."). Third, Plaintiffs fail to allege that Defendant had knowledge of, or intended to interfere with, any specific contracts with third parties. *See Guard-Life Corp.*, 428 N.Y.S.2d at 634; *Boehner v. Heise*, 734 F. Supp. 2d 389 (S.D. N.Y. 2010) (plaintiff's claim for tortious interference with contract failed because there was no evidence that defendants knew of any specific contracts that plaintiffs had with their customers, or directed any action at those customers in order to secure a breach.) Fourth, Plaintiffs do not allege that Defendant took any actions toward third parties with which Plaintiffs had contracts. *See Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012); *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F.Supp.2d 474, 485 (S.D.N.Y.2010) ("The defendant's interference must be direct: the defendant must direct some activities towards the third party ....").

Instead, Plaintiffs allege, upon information and belief, that Defendant's statements were a campaign to induce Plaintiffs' *donors* (not business partners) to cease doing "business" with Plaintiffs. Complaint, ¶ 101. Additionally, Plaintiffs' Complaint failed to allege that any third parties breached a contract with Plaintiffs. *See NBT Bancorp Inc. v. Fleet/Norstar Financial Group., Inc.*, 87 N.Y.2d 614, 641 N.Y.S.2d 581, 664 N.E.2d 492 (1996). Instead, Plaintiffs simply allege, in conclusory form, that Defendant's conduct caused "attendees" to cancel their trips to Plaintiffs' conference and withdraw their "donations." Complaint, ¶ 52, 53.

C.    **PLAINTIFFS FAIL TO ALLEGE THAT SUCH ALLEGED INTERFERENCE WAS IMPROPER.**

Moreover, even if Plaintiffs' adequately stated a claim for tortious interference, Plaintiffs failed to allege sufficient facts to plausibly show any such alleged interference was intentional **and** improper. *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 631, 406 N.E.2d 445 (1980) (emphasis added). Here, Defendant cut off his relationship with Plaintiffs (Complaint, ¶ 7) and his actions in doing so were motivated by his legitimate concerns about, *inter alia,* Plaintiffs' sincerity in the cause of Chinese Democracy and Plaintiffs' immoral business practices. *See WFB Telecommunications, Inc. v. NYNEX Corp.*, 188 A.D.2d 257, 590 N.Y.S.2d 460 (1st Dep't 1992) (Defendant banned plaintiff from doing business with defendant because of plaintiff's "inappropriate" and "immoral activities." Defendant's actions led several other companies to similarly ban plaintiff and terminate their contracts with plaintiff. The Court dismissed plaintiff's action, stating that defendant had the right to refuse to do business with plaintiff and that its actions were motivated by legitimate concerns of not wanting to be associated with those who behaved contrary to corporate ethics.) For these reasons, Plaintiffs' claim for Tortious Interference with Contractual Relations must fail.

VIII.    **PLAINTIFFS' CLAIMS FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS FAIL AS A MATTER OF LAW AND MUST BE DISMISSED.**

In order to properly to allege a claim for tortious interference with prospective contractual relations, a plaintiff must demonstrate the following: (1) a business relation with a third party that creates an expectancy of future contract rights; (2) defendant's interference with that business relationship; (3) defendant's purpose to harm plaintiff, or defendant's use of wrongful means; and (4) economic injury. *See Purgess v. Sharrock*, 33 F.3d 134, 141 (2d Cir.1994); *Lane's Floor Coverings, Inc. v. Ardex, Inc.*, 1996 WL 19182 (E.D.N.Y.1996);

*Fantaco Enterprises, Inc. v. Iavarone*, 161 A.D.2d 875, 555 N.Y.S.2d 921 (3d Dep't 1990). Conclusory allegations of "lost contracts" will not survive a motion to dismiss. *See Agugliaro v. Brooks Brothers, Inc.*, 802 F. Supp. 956, 963 (S.D.N.Y.1992); *John R. Loftus, Inc. v. White*, 150 A.D.2d 857, 540 N.Y.S.2d 610 (3d Dep't 1989); *Susskind v. Ipco Hospital Supply Corp.*, 49 A.D.2d 915, 373 N.Y.S.2d 627 (2d Dep't 1975). Plaintiffs' claim for tortious interference with prospective contractual relations fails as a matter of law: Plaintiffs fail to plead facts sufficient to show that they have or will have valid, enforceable, future contractual rights for expected "donations," that Defendant interfered with such business relationships, and that Defendant's interference was purposely harmful or wrongful. Instead, Plaintiffs only assume that "numerous other potential and prospective attendees refused to attend and/or withdrew their support . . . after viewing [Defendant's] video." Complaint, ¶ 53.

Even if Plaintiffs plead the existence of prospective contractual relations with the requisite particularity, the Complaint fails to allege that any alleged interference was improper or wrongful. "To be liable under this tort, the defendant must have engaged in improper or wrongful interference, which can include physical violence, fraud, an excessive degree of economic pressure, use of civil or criminal prosecutions, or breach of a fiduciary duty, but it excludes mere acts of persuasion." *NBT Bancorp Inc.; Guard-Life Corp.*, 428 N.Y.S.2d at 633; *See also Cooper v. Hodge*, 28 A.D.3d 1149, 814 N.Y.S.2d 447 (4th Dep't 2006) (Plaintiff brought an action for tortious interference with prospective contractual relations, based on defendant-physician's allegedly false and disparaging comments about his performance as a neurosurgery resident. The court ruled that plaintiff had no cause of action for tortious interference with prospective contractual relations, because plaintiff had no valid, existing contract with third party and defendant's alleged conduct did not amount to a crime or an

independent tort.); *Klapper v. Graziano*, 129 A.D.3d 674, 10 N.Y.S.3d 560 (2d Dep't 2015), *leave to appeal dismissed*, 26 N.Y.3d 1078, 23 N.Y.S.3d 154, 44 N.E.3d 230 (2015) (Court dismissed plaintiff's claim for tortious interference with prospective business relations, absent allegations that the corporate defendants were motivated solely by malice or to inflict injury by unlawful means.); *Moulton Paving, LLC v. Town of Poughkeepsie*, 98 A.D.3d 1009, 950 N.Y.S.2d 762 (2d Dep't 2012) (Ruling that the plaintiff failed to prove that the defendants acted with improper means or motive, where the defendants officials had **legitimate concerns** about the plaintiff's ability to perform the job).

As discussed above, Defendant's statements were indeed based on legitimate concerns with, and criticism of, Plaintiffs. Moreover, Plaintiffs failed to show that they would have received the "donations" had it not been for defendant's alleged interfering acts. *See Union Car Advertising Co. v. Collier*, 263 N.Y. 386, 189 N.E. 463, 469 (1934); *Williams & Co. v. Collins, Tuttle & Co.*, 6 A.D.2d 302, 176 N.Y.S.2d 99, 104 (1st Dep't 1958). For these reasons, Plaintiffs' claim must fail.

## IX.   CONCLUSION

For the reasons stated above, Plaintiffs' First, Third, Fourth, and Fifth Claims for Relief should be DISMISSED. Further, Plaintiffs' Second Claim for Relief should be limited as stated above.

Dated: January 18, 2018                   Respectfully submitted,

By: /s/ Aaron A. Mitchell
   Aaron A. Mitchell, Esquire
   **COHEN & HOWARD, LLP**
   766 Shrewsbury Avenue, Suite 301
   Tinton Falls, New Jersey 07724
   (732) 747-5202
   (732) 747-5259 (Fax)
   amitchell@howardandcohen.com

Daniel S. Ward (Pro Hac Vice to be filed)
Ryan C. Berry (Pro Hac Vice to be filed)
**WARD & BERRY PLLC**
2020 N Street, NW
Washington, DC 20036
(202) 331-8160
dan@wardlawdc.com
ryan@wardlawdc.com

*Attorneys for Defendant*

26