DAVID D. LIN (DL-3666)
JUSTIN MERCER (JM-1954)
**LEWIS & LIN, LLC**
45 Main Street, Suite 608
Brooklyn, NY 11201
David@iLawco.com
Justin@iLawco.com
Telephone: (718) 243-9323
Facsimile: (718) 243-9326

*Attorneys for Plaintiffs*
BAIQIAO TANG a/k/a
TANG BAIQIAO and JING GENG

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BAIQIAO TANG a/k/a<br>TANG BAIQIAO and JING GENG,<br><br>                              *Plaintiffs*,<br><br>    v.<br><br>WENGUI GUO, a/k/a<br>MILES KWOK, a/k/a<br>GUO WENGUI,<br>HO WAN KWOK and GOLDEN<br>SPRING (NEW YORK) LTD.,<br><br>                              *Defendants*. | Case No: 17–CV–9031–JFK |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**     **iii**

**PRELIMINARY STATEMENT**     **1**

**FACTAUAL BACKGROUND**     **3**

**ARGUMENT**     **3**

A.    LEGAL STANDARD     3

B.    PLAINTIFFS ADEQUATELY ALLEGE FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(A)(1)(B).     4

     1.    Defendants' Communications, Including Social Media Posts, Do Constitute "Commercial Advertising or Promotion" For Purposes of the Lanham Act.     5

     2.    Defendants' Web Postings Are Commercial Speech     7

     3.    Plaintiffs Do Not Need to Plead That The Parties Were "Direct Competitors"     10

     4.    Plaintiffs Have Sufficiently Pled That Defendants Were Trying to Influence Consumers to Engage with Their Competing Services.     11

     5.    The Defendants' Statements Were Disseminated Sufficiently to Support a Lanham Act Claim.     11

     6.    Defendants' Statements Are Not protected by the First Amendment.     12

C.    PLAINTIFFS ADEQUATELY ALLEGE DEFAMATION.     13

     1.    The Defamatory Statements in the Complaint Were Statements of Fact, Not Opinion     13

     2.    The Context of the Defamatory Statements Makes Clear that They Would be Interpreted as Statements of Fact, Not Opinion.     15

     3.    Defendants' Truth Defense Is Premature and Insufficient.     16

D.    PLAINTIFFS ADEQUATELY ALLEGE UNFAIR COMPETITION.     16

E.    PLAINTIFFS ADEQUATELY ALLEGE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.     19

F.    PLAINTIFFS ADEQUATELY ALLEGE TORTIOUS INTERFERENCE.     20

G.    PLAINTIFFS ADEQUATELY ALLEGE TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AS A MATTER OF LAW.     23

H.    PLAINTIFFS ADEQUATELY ALLEGE HARASSMENT.     24

I.    PLAINTIFFS ADEQUATELY ALLEGE FALSE LIGHT INVASION OF PRIVACY. 24

J.    PLAINTIFFS ADEQUATELY ALLEGE CLAIMS AGAINST DEFENDANT GOLDEN SPRING     25

**CONCLUSION**     **26**

# TABLE OF AUTHORITIES

## CASES

*AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, 2003 WL 21203503, at \*7 (S.D.N.Y. 2003) ....... 22

*Amaranth LLC v. J.P. Morgan Chase & Co.,* 888 N.Y.S.2d 489, 494 (2009) ............................ 23

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................ 3

*AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496, 520–21 (W.D. Va. 2013) ...... 4, 6, 7, 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ........................................................ 3

*Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 730 (S.D.N.Y. 2012) ................................ 23

*Blasetti v. Pietropolo*, 213 F.Supp. 2d 425, 428 (S.D.N.Y. 2002) ............................................. 24

*Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66-67 (1983) ................................................. 9

*Boule v. Hutton*, 328 F.3d 84, 90-91 (2d Cir. 2003) .................................................................. 5

*Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201, 1208 (S.D.N.Y. 1986) ............ 18

*Brown v. AXA RE*, 2004 WL 941959, at \*8 (S.D.N.Y. 2004) ................................................ 21, 22

*Clark Consulting, Inc. v. Fin. Sols. Partners, LLC*, 2005 WL 3097892, at \*6 (S.D.N.Y. Nov. 17,
2005) ............................................................................................................................ 17, 18

*Clark v. Celeb Pub., Inc.*, 530 F. Supp. 979, 982–83 (S.D.N.Y. 1981) ...................................... 24

*Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) ......................... 10

*Curry v. Roman,* 217 A.D.2d 314, 635 N.Y.S.2d 391 (4th Dep't 1995) ...................................... 14

*Cytyc Corp. v. Neuromed. Sys., Inc.*, 12 F. Supp. 2d 296, 301-02 (S.D.N.Y. 1998) ................... 13

*D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 365 (S.D.N.Y. 2017) ........................................... 19

*Daniel v. Safir*, 175 F. Supp. 2d 474, 481 (E.D.N.Y. 2001) ..................................................... 24

*Dennis v. Napoli*, 148 A.D.3d 446, 446 (1st Dep't 2017) .......................................................... 19

*Edwards v. National Audubon Soc. Inc.* 556 F.2d 113 (2d Cir.1977) ......................................... 14

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 293
(S.D.N.Y. 2016) .................................................................................................... passim

*Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) ............................. 3

*Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013) .............................................. 12

*Garcia v. Puccio*, 17 A.D.3d 199, 201 (1st Dep't 2005) ............................................................ 16

*Geraci v. Probst,* 61 A.D.3d at 718, 877 N.Y.S.2d 386 (2d Dep't 2009) .................................... 13

*G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 535-36 (S.D.N.Y. 2002) ................. 22

*Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc.*, 94 F. Supp. 2d 566, 568, 577 (E.D. Pa. 1999) ............................................................................................................................ 10

*Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) ..................................................... 3

*Gonzalez v. Gray*, 69 F.Supp.2d 561 (S.D.N.Y. 1999) .................................................. 15

*Greater Houston Transportation Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 682 (S.D. Tex. 2015) ...................................................................................................................... 7

*Grieco v. Galasso*, 297 A.D.2d 659, 660, 747 N.Y.S.2d 120, 121 (2d Dep't 2002) ................... 15

*Grinaldo v. Meusburger*, 34 A.D.2d 586, 587 (3rd Dep't 1970) ................................................ 14

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 194, 406 N.E.2d 445, 451 (1980) ...................................................................................................................... 22

*Healthnow New York Inc. v. Catholic Health Sys., Inc.*, 2015 WL 5673123, at *4 (W.D.N.Y. Sept. 25, 2015) ............................................................................................................. 10

*Ivy League Sch., Inc. v. Danick Indus., Inc.*, 44 Misc. 3d 1223(A), 999 N.Y.S.2d 797, 2014 WL 4099376 (N.Y. Sup. 2014) ................................................................................. 17, 18

*Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*, 968 F.2d 286, 289 (2d Cir. 1992) ...................................................................................................................... 21

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 379 (S.D.N.Y. 2003) ........................................................................................... 25

*Lexmark Int'l, Inc. v. Static Control Components, Inc.* 134 S. Ct. 1377, 1392 (2014) ................. 10

*McNamee v. Clemens*, 762 F. Supp. 2d 584, 600–02 (E.D.N.Y. 2011) ....................................... 14

*Melius v. Glacken*, 94 A.D.3d 959 (2d Dep't 2012) ............................................................. 15, 16

*Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014) ....................................... 4

*Miramax Film Corp. v. Abraham*, 2003 WL 22832384, at *7 (S.D.N.Y. 2003) .......................... 25

*Mobius Mgmt Sys, Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1023 (S.D.N.Y. 1994) ...................................................................................................................... 17

*Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1235-36 (S.D.N.Y. 1991)........ 5, 7, 9, 12

*Prignoli v. City of New York*, 1996 WL 340001 at *6 (S.D.N.Y. 1996) ..................................... 24

*Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446, 452 (S.D.N.Y. 2011) ................... 6

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 718–19 (S.D.N.Y. 2014).. 14, 16

*Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 212 (W.D.N.Y. 2013) ................................ 15

*Sang Lan v. Time Warner, Inc.,* 2014 WL 764250, at *10 (S.D.N.Y. Feb. 25, 2014)................. 24

*Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521 (S.D.N.Y. 2015)............................ 20

*Scutti Enterprises, LLC. v. Park Place Entm't Corp.*, 322 F.3d 211, 216 (2d Cir. 2003)............ 21

*Seung Jin Lee v. Tai Chul Kim,* 16 Misc.3d 1118(A), 2007 WL 2241493, at *4 (N.Y. Sup. Aug. 2, 2007) ......................................................................................................................... 14

*Simplex Grinnell LP v. Integrated Sys & Power, Inc.*, 642 F. Supp. 2d 167, 201 n.18 (S.D.N.Y. 2009) ................................................................................................................................ 16

*SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*, 439 F. Supp. 2d 281, 287 (S.D.N.Y. 2006) ............. 11

*Towers Fin. Corp. v. Dun & Bradstreet, Inc.*, 803 F. Supp. 820, 823 (S.D.N.Y. 1992) ........ 17, 18

*Ulrich v. Moody's Corp.*, 2017 WL 1232709, at *18 (S.D.N.Y. Mar. 31, 2017), *aff'd*, 2018 WL 357539 (2d Cir. Jan. 11, 2018) ........................................................................................ 13

*United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*, 128 F.3d 86, 89 (2d Cir. 1997) ............................................................................................................................... 11

*UPS Store, Inc. v. Hagan*, 2015 WL 9256973, at *4 (S.D.N.Y. Nov. 18, 2015) .......................... 4

*Valley Forge Military Acad. Found. v. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451, 455 (E.D. Pa. 2014)................................................................................................................. 11

*White Plains v. Cintas Corp.*, 8 N.Y.3d 422, 425-26 (2007)....................................................... 20

**RULES**

Fed. R. Civ. P. 12(b)(6)......................................................................................................... 3, 16

Fed. R. Civ. P. 8 ......................................................................................................................... 3

**STATUTES**

15 U.S.C. § 1125(a)(1)................................................................................................ 4, 7, 10, 17

N.Y. GBL § 349 ........................................................................................................................ 17

N.Y. Penal Law § 240.30........................................................................................................... 24

Plaintiffs Baiqiao Tang a/k/a Tang Baiqiao ("Mr. Tang") and Jing Geng ("Jing") (collectively, "Plaintiffs") by and through their undersigned counsel, request that this Court deny the Defendants' Motion to Dismiss ("Motion to Dismiss") [ECF. No. 23] Plaintiffs' First Amended Complaint (the "Complaint" or "FAC") [ECF. No. 17], for the reasons below.

## PRELIMINARY STATEMENT

Both Plaintiffs in this case are prominent veterans of a democratic opposition movement in America's large community of Chinese exiles. Mr. Tang was part of the original democracy movement that culminated with the Tiananmen Square Massacre, and was imprisoned shortly thereafter. Ultimately, he escaped to the U.S., and since then he has been an influential activist, author and commentator for the cause of Chinese democracy and opposition to the current regime. He is also a founder of "Conscience Media," an online media outlet that has become the premiere information and publishing hub to promote the movement for democracy in China. Jing Geng is his wife and a fellow activist for the same causes. Mr. Tang has dedicated his personal and professional life to this cause, and manages to support themselves from donations, contributions, and public and private gifts buttressed on Mr. Tang's personal and professional reputations.

Defendant Kwok is a Chinese national, who facing pressure from criminal charges related to his business activities in China, relocated to the United States in 2015. Since then, he has made a multi-pronged effort to cultivate an image of resistance to corruption in the Chinese government, ostensibly as a political dissident in the vein of Mr. Tang. Defendant Golden Spring is a Delaware corporation owned and dominated by Defendant Kwok. Defendants have recently created a competing media website outlet ("Guo Media"). Through this channel and their branded Twitter account and YouTube channel, Defendants have made frequent text and video

publications with the sole purpose to unfairly stifle competition with Mr. Tang and to garner financial support for his online media outlet and applied-for trademarks.

Defendants' strategy to promote their applied-for trademarks included a sustained attack to impugn the reputation and credibility of Mr. Tang (and Jing), competitors to his online media outlet. As detailed in the Complaint, these attacks have come in numerous channels, some widely distributed (such as Twitter missives to Defendants nearly 600,000 followers) and others more targeted (such as phone calls to other prominent members of the opposition community). The attacks have included numerous misrepresentations and false statements about both Plaintiffs and Conscience Media, and have caused considerable damage to the credibility of Plaintiffs' online media outlet, irreparable damage to individual Plaintiffs' reputations and emotional well-being, and a serious reduction in donations and financial support to the organizations that Plaintiffs work to support.

In defense of their outrageous conduct, Defendants appear to argue that *none* of the claims in the Complaint are adequately pled. However, in most instances, Defendants do not dispute that Plaintiffs have alleged all the necessary elements of each claim. Rather, Defendants claim that their own recitation and/or characterization of the facts, which contradict the factual allegations in the Complaint, should be considered. In short, Defendants do not believe their own arguments that any of the claims should be dismissed as pled, but rather than they believe they will succeed at trial. This is no basis to dismiss at this stage of the proceeding.

However, here, the Complaint contains detailed allegations supporting each of Plaintiffs' legal claims. As explained below, there is more than a sufficient basis to plausibly infer that the claims are meritorious. For these reasons, Defendants' Motion to Dismiss should be denied in its entirety.

## FACTAUAL BACKGROUND

Plaintiffs respectfully refer to the Court to the Complaint [ECF No. 17] for a full and accurate statement as to what was alleged in support of each of Plaintiffs' causes of action.

## ARGUMENT

### A.    LEGAL STANDARD

Sufficiency of pleadings are governed by Rule 8. *See* Fed. R. Civ. P. 8(a)(2). All a litigant need to do to survive a Rule 12(b)(6) motion to dismiss is to plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 only requires "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Twombly*, 550 U.S. at 555.

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). Further, in assessing whether a pleader has met this standard, the court must "constru[e] the complaint liberally." *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555. In other words, factual disputes are neither considered, nor are to be resolved, on a Rule 12(b)(6) motion. Given the governing standard, each of the claims should be sustained because they are well-pled under the applicable law.

## B.   PLAINTIFFS ADEQUATELY ALLEGE FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(A)(1)(B).

The Lanham Act prohibits making "false or misleading description[s]. . . or. . . representation[s] of fact," in "commercial advertising or promotion," about the "nature, characteristics, [or] qualities. . .of . . . another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1). Thus, a false advertising claim under Section 43(a) must also allege that: (1) the statement in the challenged advertisement is false and (2) "misrepresented an inherent quality or characteristic" of the other party's services or commercial activities, (3) that the defendant "placed the false or misleading statement in interstate commerce"; and (4) injury. *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014). A claim under Section 43(a) need not plead "fraudulent intent" and or be pled with "heightened particularity." *UPS Store, Inc. v. Hagan*, 2015 WL 9256973, at *4 (S.D.N.Y. Nov. 18, 2015).

Here, Plaintiffs allege that Defendants made false statements which impugn the quality of a competitor's (Plaintiff Tang) services and commercial activities while promoting their competing services, and that such statements were sufficiently disseminated on Twitter and YouTube—commonly-used means of commercial advertising. This a prototypical Lanham Act false advertising claim: bashing your competitor on the Internet has routinely been held to constitute commercial speech for purposes of stating a claim for false advertising. *See, e.g.*, *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 293 (S.D.N.Y. 2016) (holding Internet forum posts "lambasting" competitor constitute advertisements); *see also AvePoint, Inc. v. Power Tools, Inc*., 981 F. Supp. 2d 496, 520–21 (W.D. Va. 2013) (Applying commercial speech test set forth by the Southern District of New York and holding "statements [on Twitter] impugning the quality of [plaintiff's] services [that] have caused damage to [plaintiff's] business, reputation, and goodwill. . .are also sufficient to

state a plausible claim for relief under § 43(a)(1)(B) of the Lanham Act.").

While Defendants' Motion to Dismiss appears to ignore the allegations pled in support of this claim, they seek to dismiss this claim, in cursory fashion, by claiming that Defendants' statements are not "commercial advertising or promotion," or that they are somehow protected by the First Amendment, and therefore cannot serve as the basis for a Lanham Act claim. However, the statements at issue fit cleanly within the Lanham's Act definition of commercial speech, and are not the type of speech protected by the First Amendment. Accordingly, Plaintiffs' claim for false advertising under the Lanham Act has been sufficiently alleged and the Motion to Dismiss should be denied.

**1.    Defendants' Communications, Including Social Media Posts, Do Constitute "Commercial Advertising or Promotion" For Purposes of the Lanham Act.**

Defendants first argue that Plaintiffs' Lanham Act claims must be dismissed because his social media posts were not "commercial advertising or promotion." Def. Br. at 5-9. "To be actionable under the Lanham Act, statements must constitute commercial advertising or promotion." *Bleeping Computer LLC*, 194 F. Supp. 3d at 293. Under the Lanham Act, a communication is considered "commercial advertising or promotion" when it is 1) commercial speech, 2) made for the purpose of influencing consumers to buy goods or services, and 3) disseminated to the relevant purchasing public. *Boule v. Hutton*, 328 F.3d 84, 90-91 (2d Cir. 2003). Communications need not be as formal as "those made as part of a classic advertising campaign. . . ." *Id.* at 90; *see also Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1235-36 (S.D.N.Y. 1991) (speech "may properly be classified as 'commercial', notwithstanding its social aspects" where it was made "at least primarily[] for business purposes").

Even where the misrepresentations were not a classic advertising campaign, they are still "commercial advertising and promotion" because together they constituted an organized

campaign to penetrate the relevant market. *See, e.g.*, *Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446, 452 (S.D.N.Y. 2011) ("[T]he touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market.").

The Complaint provides a detailed account of Defendants' organized campaign to penetrate the relevant market: Defendants founded a YouTube channel where they have accumulated over 160,000 subscribers (FAC at ¶¶ 4, 39) and launched a branded media outlet (FAC ¶ at 36) in competition with Plaintiff Tang's own; filed trademark applications for their media outlet under various personal name aliases and the moniker "everything is just the beginning" (FAC at ¶¶ 41-45); and made a sustained effort to garner support and influence the public at large and especially in the Chinese pro-democracy and exile community—as many of their advertisements were in Chinese (FAC at ¶¶ 32-40). The Complaint further alleges the various tortious conduct committed as part of this broader campaign to penetrate relevant market. FAC at ¶¶ 46-127.

More generally, courts have found that these sorts of communications can serve as the basis for a properly pled Lanham Act claim. For example, in *AvePoint*, the plaintiff alleged that its competitor, Axceler, and its agents/employees engaged in a campaign of making false, defamatory, and deceptive claims and statements regarding AvePoint and its services, both in online networking services such as Twitter (including on the personal Twitter account of an Axceler agent) and in direct communications with customers and prospective customers. *AvePoint, Inc.*, 981 F. Supp. 2d at 502-04. Recognizing that "Twitter is a commonly-used means of advertising" and "that the messages were published and republished to *hundreds* of customers, potential customers and other members [of the relevant market]," the *AvePoint* court found that

"messages on Twitter that impugn the quality of AvePoint's products and services" clearly constitute commercial speech sufficient to sustain a Lanham Act claim. *AvePoint, Inc.*, 981 F. Supp. 2d at 520-21 (emphasis added).

Similarly, in *Greater Houston Transportation Co. v. Uber Techs., Inc.*, the plaintiffs alleged a Lanham Act claim based on "a number of representations, on its webpages, [and] in communications with customers and in the media." 155 F. Supp. 3d 670, 682 (S.D. Tex. 2015). These included blog posts by company executives and press releases issued to the media. The defendant brought a motion to dismiss, arguing that the "statements made to the news media do not qualify as commercial advertising or promotion" under the Lanham Act. *Id.* at 682. But the court rejected this argument, noting that that "[b]ecause Uber's statements as a whole are issued with the intent to influence consumer opinion, they thereby become commercial speech even though they were contained in news media." *Id.* at 691.

Courts have also found that false and derogatory statements published on a public Internet forum constitutes false advertising under Section 43(a) of the Lanham Act. *See Bleeping Computer LLC*, 194 F. Supp. 3d at 295, 297-98. Even direct communications such as phone calls can be actionable. *See, e.g.*, *Weaving*, 769 F.Supp. at 1235 (holding that private, partially social phone conversations were sufficient to qualify as commercial promotion). Under this standard, Defendants' onslaught of YouTube videos, Twitter posts, voicemails and other media clearly meet the bar for commercial promotion under the Lanham Act. As detailed below, each of the specific elements to meet the definition of "commercial advertising or promotion" are met.

## 2. Defendants' Web Postings Are Commercial Speech

In arguing that Defendant' statements should not be considered commercial speech, Defendants chiefly rely on their characterization of Defendant *Kwok*'s economic interests as being strictly in real estate. Def. Br. at 6-7. But, this a red herring. Defendants offer no authority

for this career-focused interpretation of "commercial speech" under the Lanham Act.

Defendants' argument ignores and contradicts the well-pleaded facts in the Complaint, which

offer details that Defendants have a multi-faceted economic motivation for the speech at issue.[1]

Moreover, this argument is essentially an effort to make a factual rebuttal to the allegations in the

Complaint. This is inappropriate on a motion to dismiss.

Defendants seem to argue that because Plaintiff Tang's business interests built on his

reputation also have a collateral social purpose, that Defendants' misrepresentations concerning

Plaintiff Tang's reputation can be made with impunity and never be considered "commercial

speech." This makes little sense.

More importantly, the Defendants' statements at issue were focused on the economic

interests of their audience and directed towards the same audience interested in Plaintiff Tang's

competing media enterprise. For example, in one online video Defendants states: "Tang artifice .

. .swindles for donations" and "Chinese media need to be independent. . . .This is what I pursue. .

.**Everything Is Just The Beginning**." FAC at ¶¶ 55-57 (emphasis added). The statements at

issue were clearly not just how best to support reform in China, they were attacks against

Plaintiff Tang (whose media outlet, Conscience Media, just announced a conference the day

---

[1] The allegations state that Defendant Kwok's recent business interests include online media, and includes a variety of facts to support the notion that Defendant Kwok stands to receive both a direct financial benefit and other more intangible benefits by installing himself as an influencer within (and representative of) the pro-democracy movements among Chinese exiles in America. FAC at ¶¶ 38-47. First, there are the trademarks filed for the names "Miles Kwok," "Miles Guo," "Guo Wengui," and "Everything Is Just The Beginning," all with the same service description: "a web site featuring photographic, video and prose presentation featuring news and *social and political commentary*." FAC at ¶¶ 41-45 (emphasis added). Second, there is the recently-created "Guo Media" website, a "social networking and livestreaming platform" where users are invited to join "in promoting judicial and media independence, democracy and religious freedom in China." FAC at ¶ 126. Third, there are social media accounts with numbers of followers that suggest a movie star or political pundit, rather than low-profile real estate developer (over 596,000 of Twitter and over 169,000 on YouTube). FAC at ¶ 4.

before) and a charge to support Defendants' media outlet instead.

These circumstances also resemble the facts of *Weaving*, wherein the court considered whether statements constituted "commercial speech," in the context of the Lanham Act and the First Amendment. In *Weaving*, a former president of a theatre booking agency and her husband made disparaging misrepresentations to clients via phone conversations which the court acknowledged "may have been purely or primarily social calls with friends who also happen to be their business associates." 769 F. Supp. at 1235. However, the court noted that "[s]peech may be classified as commercial, however, even when, in addition to having a business purpose, it has an informational or a social purpose." *Id.* Without deciding which conversations were primarily social and which were primarily commercial, the court held that there were sufficient allegations to survive a motion to dismiss because specific portions concerned the "economic interests of the speaker and its audience." *Id.* at 1236.

The fact that many of the representations made were presented along with links to Defendants' other properties and commercial offerings is also important. *See Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66-67 (1983) (finding that informational pamphlets about sexually transmitted diseases could be classified as "commercial" in nature because they also contained references to the publisher's products and that the publisher had an economic motivation for mailing them). As Defendants' business interests go well beyond real estate and include media and "social and political commentary" outlets, (FAC at ¶¶ 41-44), such that they do in fact have an economic motivation to make the statements against Plaintiff Tang, and because much of the statements relate solely to the economic interests of the speaker and its audience, the alleged statements constitute "commercial speech" to support a Lanham Act

claim.[2]

### 3. Plaintiffs Do Not Need to Plead That The Parties Were "Direct Competitors"

Defendants further argue that the statements were not "commercial advertising or promotion" because the parties were not in commercial competition. Def. Br. at 7-8. While this contradicts the plain allegations of the Complaint, it is of no consequence because "commercial competition" is no longer a requirement after the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.* 134 S. Ct. 1377, 1392 (2014) (rejecting a "a rule categorically prohibiting all suits by noncompetitors" under the Lanham Act). Courts in this Circuit generally agree that any door left open by the Second Circuit as to the 'competitors' requirement was "firmly closed by the Supreme Court's decision in *Lexmark*.'" *Healthnow New York Inc. v. Catholic Health Sys., Inc.,* 2015 WL 5673123, at *4 (W.D.N.Y. Sept. 25, 2015); *see also Bleeping Computer*, 194 F. Supp. 3d at 296–97 ("In *Lexmark*, the Supreme Court held that, to have standing to sue under § 43(a), a plaintiff need not allege that the parties are direct competitors.").

Furthermore, despite Defendant Kwok's belabored attempts to characterize himself as strictly in the real estate business (Def. Br. at 7), he is in fact in competition with the Plaintiff Tang in more ways than one: as an activist and as the owner of a media enterprise. FAC at ¶¶ 38-40. While activist leaders in the Chinese opposition community tend support each other, they do undeniably compete for fundraising and media bandwidth with which to promote their initiatives

---

[2] And even if the parties were not engaged in a for-profit enterprise, that does not affect their liability under the Lanham Act. *See, e.g., Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) (applying section 43(a) to "two non-profit advocacy groups"); *Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc.*, 94 F. Supp. 2d 566, 568, 577 (E.D. Pa. 1999) (applying section 43(a) to nonprofit religious groups).

and priorities. Courts have held that competition in this context—i.e., for fundraising—can form the basis of Lanham Act claim. *See Valley Forge Military Acad. Found. v. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451, 455 (E.D. Pa. 2014).

4. **Plaintiffs Have Sufficiently Pled That Defendants Were Trying to Influence Consumers to Engage with Their Competing Services.**

Defendants argue that they were not "trying to influence consumers to *buy* [his] goods or services." Def. Br. at 8. However, the Complaint explains in detail how Defendants were competing in a market for services in informing, entertaining and organizing the Chinese dissident movement. FAC ¶¶ 38-48. It is undeniable that Defendants' statements were meant to influence viewers and readers. The scope of the Lanham Act's definition of "services" is "not so narrow." *SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*, 439 F. Supp. 2d 281, 287 (S.D.N.Y. 2006) (finding that "the circulation of leaflets. . .in furtherance of their mission to educate the public" qualified as 'services' as defined by the Lanham Act."). "The term 'services' has been interpreted broadly by [the Second Circuit] Court of Appeals, and various courts have applied the Lanham Act against defendants furnishing a wide variety of noncommercial public and civic benefits." *Id*. (quoting *United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*, 128 F.3d 86, 89 (2d Cir. 1997)).

5. **The Defendants' Statements Were Disseminated Sufficiently to Support a Lanham Act Claim.**

Here, Defendants' Twitter posts, YouTube Channel and website were "disseminated sufficiently to the relevant purchasing public." *Bleeping Computer*, 194 F. Supp. 3d at 295 (citation omitted). "[T]he level of circulation required […] will undeniably vary from industry to industry and from case to case." *Gordon & Breach*, 859 F.Supp. at 1535 (citation omitted); *see, e.g., Mobius*, 880 F.Supp. at 1020–21 (a single letter addressed to potential buyer of plaintiff's software product was sufficient to satisfy "dissemination" requirement where the relevant market

was small). These statements were disseminated on "public internet forums" just as in *Bleeping Computer*, 194 F. Supp. 3d at 295; in private, partially social voicemail messages, like the phone calls in *Weaving*, 769 F.Supp. at 1235; and on Twitter, as in *AvePoint*, 981 F. Supp. 2d at 520–21 ("At this stage of the proceedings, the court also concludes that AvePoint has alleged sufficient facts to plausibly establish that the Twitter posts constitute commercial speech, and that they were disseminated sufficiently to the relevant purchasing public to constitute 'advertising' within that industry"). Accordingly, this requirement is clearly met.

### 6.    Defendants' Statements Are Not protected by the First Amendment.

Finally, Defendants argue that their statements enjoy such "broad First Amendment protection" that they are "not actionable under Section 1125(a)." Def. Br. at 9. However, once again, by attempting to restyle the Complaint to define Mr. Kwok as strictly in the business of real estate and categorize all his and Golden Spring's other activities as mere diversion, Defendants improperly characterize the statements at issue as political discourse in the "marketplace of ideas." Def. Br. at 9 (citing *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013)). Defendants cannot recast the Complaint as implicating a First Amendment issue to avoid liability. The Defendants' statements were plainly not the stuff of ideological or academic debate; they were targeted attacks, focused on Mr. Tang 's businesses and reputation, rather than on their own political views. Defendants' business interests are more broad-based and complex than real estate transactions—they publicly filed for trademarks for media outlets in the same vein as Plaintiff Tang's Conscience Media. Moreover, "[s]peech may be classified as commercial when, in addition to having a business purpose, it has an informational or a social purpose." *See Weaving*, 769 F. Supp. at 1235-36. ("applying the Lanham Act to such conduct does not violate [the speaker's] First Amendment rights").

Defendants' statements were fundamentally different from the sort of pure political

speech that was protected by the First Amendment in *Farah*, 736 F.3d at 541. The present case is easily distinguished: Defendants have never suggested that they were engaging in satire or that they meant anything less than exactly what they said in bashing a competitor.

## C. PLAINTIFFS ADEQUATELY ALLEGE DEFAMATION.

The Complaint sufficiently alleges all of the elements of a defamation claim[3] based on a number of different statements made by Defendant Kwok. Similarly, by requesting that the court only dismiss *some*, but not all, of Plaintiffs' claim for defamation, Defendants do not dispute that Plaintiffs have alleged all of the necessary elements of a defamation claim. While most of Defendants' gripe with Plaintiffs' claim comes from a blatant misreading of the allegations of the Complaint, a number of statements highlighted below are clearly not opinion and are actionable as a matter of law. Moreover, Defendants' argument that some of statements are true is both inappropriate for a motion to dismiss and, frankly, false.

### 1. The Defamatory Statements in the Complaint Were Statements of Fact, Not Opinion

In determining whether a statement is one of fact or opinion, courts examine (1) whether the statement had a "precise and readily understood meaning"; (2) whether the statement is "susceptible of being proven false"; and (3) whether the context signals that the statement is one of fact. *Cytyc Corp. v. Neuromed. Sys., Inc.*, 12 F. Supp. 2d 296, 301-02 (S.D.N.Y. 1998). "At bottom, the inquiry is whether a reasonable listener is likely to have understood the statements as

---

[3] A defamation claim requires "(1) a false and defamatory statement of and concerning plaintiff; (2) publication to a third-party; (3) the requisite degree of fault; and (4) special harm [or] *per se* actionability." *Ulrich v. Moody's Corp.*, 2017 WL 1232709, at *18 (S.D.N.Y. Mar. 31, 2017), *aff'd*, 2018 WL 357539 (2d Cir. Jan. 11, 2018). "A false statement constitutes defamation per se when it charges another with a serious crime or tends to injure another in his or her trade, business, or profession" *Geraci v. Probst*, 61 A.D.3d at 718, 877 N.Y.S.2d 386 (2d Dep't 2009).

conveying provable facts about the plaintiff." *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53
F. Supp. 3d 705, 718–19 (S.D.N.Y. 2014).

Defendants argue that Plaintiffs' defamation claims rely on statements of opinion.
However, the Complaint is rife with examples of statements that qualify as statements of fact,
and that are *prima facie* defamatory, including:

- **Defendants Claimed that Plaintiff Tang "swindles" donors.** FAC at ¶¶ 55(b-c); 59, 74, 80, 81(b and j). A reasonable listener would conclude that Mr. Tang was embezzling from the organizations he serves, or similarly defrauding donors. *See Grinaldo v. Meusburger*, 34 A.D.2d 586, 587 (3rd Dep't 1970) (reversing grant of motion to dismiss where defendant's statement to third-parties that "you have been swindled" were "susceptible to a defamatory meaning"); *Curry v. Roman,* 217 A.D.2d 314, 635 N.Y.S.2d 391 (4th Dep't 1995) (statements by art dealer that auctioneer and his associates were "swindlers," "liars," and "thieves," were defamatory as a matter of law).

- **Defendants accused both Plaintiffs of being "liars."** FAC at ¶¶ 81(b, c), 82. *See McNamee v. Clemens*, 762 F. Supp. 2d 584, 600–02 (E.D.N.Y. 2011) (denying motion to dismiss defamation claim and finding that "Clemens' statements that McNamee is a liar are facts capable of being proven true or false..."); s*ee also Edwards v. National Audubon Soc. Inc.* 556 F.2d 113 (2d Cir.1977); *Seung Jin Lee v. Tai Chul Kim,* 16 Misc.3d 1118(A), 2007 WL 2241493, at *4 (N.Y. Sup. Aug. 2, 2007).

- **Defendants claimed that both plaintiffs were "secret agent[s]" or spies for the People's Republic of China.** FAC ¶¶ 69, 80-82, 93. For example, Defendant said "I want to emphasize that TANG Baiqiao is not just a liar, he is really a secret agent," (FAC at ¶ 81(c)), and "GENG Jing is a current secret agent of the Ministry of National Security,

and has funds for being a secret agent." (FAC ¶ 81(i)). *See Restis*, 53 F. Supp. 3d at 720-21 (finding defendant's statement that evidence "clearly" established that plaintiff was a "front-man" working with Iran to bypass trade sanctions, a statement of fact). These are by no means "opinion" but statements of fact.

- **Defendants claimed that Plaintiff Tang committed sexual assault, rape and "sexual fraud".** (FAC at ¶¶ 107-108, 114). These statements clearly constitute defamation *per se*. *See Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 212 (W.D.N.Y. 2013) ("A statement falsely accusing someone of rape is defamation *per se*.").

- **Defendants claimed that Plaintiff Tang has unsupported children**. FAC at ¶ 112. Similar statements have been found to constitute *prima facie* defamation. *Grieco v. Galasso*, 297 A.D.2d 659, 660, 747 N.Y.S.2d 120, 121 (2d Dep't 2002) (statement that plaintiff "refuses to pay child support" was defamatory).

### 2. The Context of the Defamatory Statements Makes Clear that They Would be Interpreted as Statements of Fact, Not Opinion.

In a feeble attempt to argue that these were statements of opinion, Defendants compare their statements to a "heated debate" between mayoral candidates in *Melius v. Glacken*, 94 A.D.3d 959 (2d Dep't 2012), or the grieving husband's emotional television interview in *Gonzalez v. Gray*, 69 F.Supp.2d 561 (S.D.N.Y. 1999). These cases are inapposite.

Here, Defendants were not grieving or taking part in a political contest: from the viewers' and readers' perspective, Defendants had no apparent motivation to lie about the Plaintiffs, which made their accusations of embezzlement, sexual misconduct and other improprieties even more damaging. Defendant Kwok was calm, collected, and delivered a planned message from the comfort of his home (which doubles as Golden Spring's principal offices). FAC ¶¶ 52, 89, 94. Many of these misrepresentations were made repeatedly, through different mediums.

These statements more closely resembled those made in *Restis,* where the court rejected comparisons to "heated public debate" cases, emphasizing that the statements at issue were "not made spontaneously" or "intemperate in tone" but instead "part of a sophisticated and coordinated international campaign in letters, press releases, Facebook posts, and tweets." 53 F. Supp. 3d at 721. Similarly, in the present case Defendants posted tweets, recorded videos and left voicemails on multiple occasions. Indeed, "[t[he broader social context and surrounding circumstances" of these statements only exacerbated the extent to which viewers and readers would interpret them as statements of fact. *Melius*, 94 A.D.3d at 960.

3.      **Defendants' Truth Defense Is Premature and Insufficient.**

Lastly, Defendants' attempt to support dismissal based on the alleged truth of their statements are plainly improper at this stage. Truth is a factual defense, and cannot defeat a claim through a Rule 12(b)(6) motion. *See Garcia v. Puccio*, 17 A.D.3d 199, 201 (1st Dep't 2005) (noting that "a claim of truth or substantial truth, like a claim of qualified privilege, is an affirmative defense"). Finally, again, here, as with Plaintiffs' 1125(a) claim, Defendants attempt to weigh evidence outside of the pleadings to convince the Court ignore its obligation to consider Plaintiffs' allegations as true.  As such, the Court should deny the Motion to Dismiss the defamation claim in its entirety.

D.      **PLAINTIFFS ADEQUATELY ALLEGE UNFAIR COMPETITION.**

Defendants' challenge to Plaintiffs' unfair competition claim is curious as said cause is adequately pled under at least *three* theories of liability under New York common law.

First, it is well established that false advertising under the Lanham Act may also be pled as an unfair competition claim under New York law. *See Simplex Grinnell LP v. Integrated Sys & Power, Inc.*, 642 F. Supp. 2d 167, 201 n.18 (S.D.N.Y. 2009) ("claims of unfair competition

under New York common law mirror the Lanham Act [false advertising] claims"); *Mobius Mgmt Sys, Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1023 (S.D.N.Y. 1994) ("Because the elements of unfair competition [by false advertising] in this case are satisfied by my analysis under § 43(a), I need not address this claim separately."). Plaintiffs' unfair competition claim survives the Defendants' Motion to Dismiss on this theory of liability alone, and clearly the Complaint has set forth enough facts to state such a claim.

Furthermore, false descriptions and/or misrepresentations about a competitor's goods or services, including those which directly malign the character of the owner, constitute unfair competition under New York statutory and common law. "New York common law unfair competition doctrine is both broad and flexible encompassing an incalculable variety of illegal practices or commercial immorality." *Ivy League Sch., Inc. v. Danick Indus., Inc.*, 44 Misc. 3d 1223(A), 999 N.Y.S.2d 797, 2014 WL 4099376 (N.Y. Sup. 2014).

Thus, second, the dissemination of false, misleading and/or deceptive representations about a competitor's goods or services has been found to be in violation of New York's General Business Law Section 349 barring deceptive trade practices. *See* N.Y. GBL § 349; *Clark Consulting, Inc. v. Fin. Sols. Partners, LLC*, 2005 WL 3097892, at *6 (S.D.N.Y. Nov. 17, 2005) ("The FSP defendants have sufficiently alleged that Clark intentionally and wilfully deceived consumers of BOLI products and the general public by disseminating false, misleading, and deceptive representations and omissions concerning the FSP defendants' separate account BOLI products, the FSP defendants' marketing of their products, and Clark's general account BOLI products, in, among other places, New York State."); *see also Towers Fin. Corp. v. Dun & Bradstreet, Inc.*, 803 F. Supp. 820, 823 (S.D.N.Y. 1992).

Third, New York courts recognize "unfair competition by disparagement" as an

independent tort. *See, e.g.*, *Towers Fin. Corp.*, 803 F. Supp. at 823; *Clark Consulting, Inc.*, 2005 WL 3097892, at *6 (noting that such claims do "not require proof of special damages."); *Ivy League Sch., Inc.*, 2014 WL 4099376 at *10 ("Among the several types of claims encompassed by the unfair competition doctrine are . . . [f]alse description claims [which] rest upon allegations that defendants made false or misleading representations about the nature, characteristics or quality of plaintiff's goods and/or services, that the representations were made in the scope of commerce and in the context of advertising or promotion and the defendants' actions made the plaintiff believe that it would be damaged by the defendants' representations."); *c.f. Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201, 1208 (S.D.N.Y. 1986) ("In order to state a claim for unfair competition based on disparagement, Brignoli must allege some injurious falsehood intentionally uttered that caused the plaintiff to suffer actual damage.").

Finally, to the extent that Defendants claim that bad faith is an additional element under New York law,[4] the Complaint adequately alleges bad faith. Plaintiffs also allege that Defendants willfully and strategically used web postings to manipulate search engine results such that users searching for the Plaintiffs' names would be drawn to malicious and defamatory articles about them. FAC at ¶¶ 156-59. Moreover, the Complaint alleges that "Defendant Kwok knew that his statements concerning Tang were false and/or, at best, misleading, Kwok had no justification to assert the misrepresentations other than to harm Plaintiff Tang's business by exploiting the earned reputation of Tang and coopting Tang's story as an image of resistance to corruption in the Chinese government, as Kwok's own." FAC at ¶ 162. This constitutes bad faith for the purposes of an unfair competition claim. As such, Defendants' Motion to Dismiss Plaintiffs' unfair competition claim should be denied.

---

[4] Plaintiffs dispute that this is required. *See* Section D, *supra*.

E.    **PLAINTIFFS ADEQUATELY ALLEGE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

Plaintiffs have adequately described a course of conduct that was easily outrageous enough to sufficiently plead an intentional infliction of emotional distress (IIED) claim. Defendant Kwok engaged in a prolonged and extremely far-reaching campaign of insults and attacks on Plaintiffs' character in a variety of media. *See, e.g., Dennis v. Napoli*, 148 A.D.3d 446, 446 (1st Dep't 2017) (a "deliberate and malicious campaign of harassment or intimidation" was sufficiently outrageous to plead "extreme and outrageous conduct."). Plaintiffs also allege that Defendant Kwok offered to pay $100,000 to anyone who brought a court case against Plaintiff Tang for sexual misconduct. Clearly Defendant Kwok's widely-publicized bounty would encourage suits whether they had any basis or not, as payment was evidently never made conditional on the success or merit of the claim. FAC at ¶ 107.   Further, Plaintiffs allege that Defendant Kwok publicly insisted that both Plaintiffs personally betrayed their fellow dissidents, such that they were likely imprisoned, tortured and even killed. FAC at ¶ 81(g). FAC at ¶ 107.

Plaintiffs have also sufficiently alleged intent to cause severe emotional distress. Defendant Kwok's targeted and multifaceted campaign of defamation that not only undermined Plaintiffs' professional and political aspirations, but also personally humiliated them and associated their names with morally reprehensible behavior. FAC ¶¶ 52-129. As above, the consistent and systematic nature of these attacks resembles the facts of *Dennis*, 148 A.D.3d at 446.

Plaintiffs have also adequately alleged a causal connection between Defendant Kwok's conduct and severe emotional distress. *See, e.g., D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 365 (S.D.N.Y. 2017) (finding that in light of "the vulnerability of the alleged[] victims," claim for IIED against staff members of care facility who allegedly abused developmentally disabled

patients was sufficiently pled). Plaintiff Tang was a fugitive from Chinese authorities after participating in the Tiananmen Square protests, spent years fearing for his life, and has since spent 28 years in exile from his homeland and family. FAC at ¶ 2. It is easy to see how he could be vulnerable to having a highly-visible Chinese figure publicly accuse him of rape, sexual assault and fraud to the organizations he serves, and kidnapping and/or betraying his fellow dissidents to Chinese Authorities. Plaintiff Jing is a breast cancer patient going through treatments. The large scale of defamation and harassment happened during Jing's chemotherapy and radiation cancer treatment. Jing's cancer was known to Defendant Kwok at the time he republished various defamatory statements and certainly aggravated her mental and physical condition. *See* FAC at Exhibit D [ECF No. 14-4] at 12.

In conclusion, Plaintiffs have adequately alleged a claim for IIED. Nor is the claim duplicative of Plaintiffs' other claims, because both the conduct and the injuries at issue are distinct with regards to their IIED claim. *See Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521 (S.D.N.Y. 2015) ("Courts do not dismiss IIED claims whose substantiating conduct differs from those of other causes of action."). The other causes of action do not attempt to redress the direct personal attacks or the acute humiliation caused by the Defendant Kwok's actions.

## F.     PLAINTIFFS ADEQUATELY ALLEGE TORTIOUS INTERFERENCE.

Plaintiff Tang has sufficiently alleged facts to state a claim for tortious interference[5] with contractual relations against Defendant Kwok. The Complaint alleges that attendees to Plaintiff

---

[5] A claim for tortious interference with contractual relations under New York law requires that the aggrieved party show (1) "the existence of its valid contract with a third party," (2) accused party's "knowledge of that contract," (3) accused party's "intentional and improper procuring of a breach," and (4) "damages." *White Plains v. Cintas Corp.*, 8 N.Y.3d 422, 425-26 (2007).

Tang's "Democratic Revolutionary Conference" had contracted to attend the event, (FAC at ¶¶ 29, 172-73), that Defendant Kwok knew this, (FAC at ¶¶ 49-50, 173), and that he intentionally and improperly procured breach, both by contacting several specifically-named individuals and by more generally publicized serious misrepresentations in order to discourage attendance (FAC at ¶¶ 50, 69, 174), such as that Mr. Tang's "purpose to attend the democratic congress is impure and his political quality and morality are substandard," (FAC at ¶¶ 89-92). *See Scutti Enterprises, LLC. v. Park Place Entm't Corp.*, 322 F.3d 211, 216 (2d Cir. 2003) (standard for "improperly procuring breach" or "wrongful means," in New York includes "misrepresentation"); *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*, 968 F.2d 286, 289 (2d Cir. 1992) (finding adequately alleged tortious interference claim where defendant, a religious group, called event facility and told them plaintiff was a "bad group"). Defendants ignore this in asserting that the Complaint fails to identify the contracts with third parties that they were induced to breach. Def. Br. at 26. The Complaint details how Mr. Hongbin Yuan and Mr. Guo Baosheng were scheduled to attend the DAC's Democratic Revolution Conference, but Defendant Kwok told Plaintiff Tang (in a voicemail) that he had sent damaging documents to Mr. Yuan and Mr. Baosheng. FAC at ¶ 69. Both men subsequently cancelled their plans to attend the DAC's conference. FAC at ¶ 71. The Complaint goes on to detail additional fall-out with Mr. Baosheng. FAC at ¶ 73. Accordingly, this argument is meritless. Finally, the complaint alleges that this conduct caused significant damages, (FAC at ¶¶ 65, 175). *See, e.g., Brown v. AXA RE*, 2004 WL 941959, at *8 (S.D.N.Y. 2004) (tortious interference claim could proceed where plaintiff alleged to have lost substantial "donations from various individuals and foundations").

Defendants further assert that the Complaint "fails to … establish the validity and

enforceability of the alleged contract." As above, the Complaint alleges that specific individuals had purchased tickets to the Conference, forming a binding contract, but subsequently backed out. This is sufficient to state a claim for tortious interference with a contract; Plaintiffs need not definitively establish the validity or enforceability of those contracts at the pleading stage, especially where an alternative claim for tortious interference with prospective business relations has been pled, as here. *See AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, 2003 WL 21203503, at *7 (S.D.N.Y. 2003) (enforceability of contract did not have to be resolved to determine which cause of action was appropriate at motion to dismiss stage) (citing *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 535-36 (S.D.N.Y. 2002) (refusing to "unfairly require Holdings to choose, at an early stage in the proceedings [motion to dismiss], which cause of action to base its claim")).

Further, Defendants assert that "Plaintiffs fail to allege that Defendant had knowledge of . . . any specific contracts with third parties" or "took any actions towards" those thirds parties. Def. Br. at 27. Again, this simply ignores the plain language of the Complaint. Nor is there any legal authority to support Defendants' insistence on a distinction between "donors and contributors" and "business partners," (Def. Br. at 27): courts have held that a tortious interference with contract claim can be based on lost donations. *See Brown*, 2004 WL 941959, at *8.

Finally, Defendants argue that Plaintiffs failed to allege that the interference was intentional and improper, or that such allegations were conclusory. Def. Br. at 28. But this once again ignores the body of the Complaint, which alleges that "Defendant Kwok knew of Plaintiffs' contracts with the conference attendees identified above" and that therefore Defendant Kwok intentionally and "improperly interfered with Plaintiffs' contracts." FAC at ¶ 173-74. The

Complaint describes Defendant Kwok's campaign of deliberate disinformation, which went well beyond "mere acts of persuasion" as claimed by Defendants, and constituted defamation on its own. *See, e.g.*, *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 194, 406 N.E.2d 445, 451 (1980) (fraudulent representations were improper). The same goes for defamation or "misrepresentations about the plaintiffs' professional honesty." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 730 (S.D.N.Y. 2012).

## G.   PLAINTIFFS ADEQUATELY ALLEGE TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AS A MATTER OF LAW.

Notwithstanding Defendants' scattershot arguments, which essentially assert that the Complaint alleges none of the required elements, Plaintiff Tang has also stated a claim for tortious interference with prospective contractual relations.[6] The Complaint alleges that Plaintiff Tang had a profitable business relationship with donors and partners, and that Defendant Kwok was aware of this and set out on deliberate campaign to interfere with these relationships through dishonest and tortious means, including defamatory statements made both to the public at large and directly to individuals such as Mr. Yuan and Mr. Baosheng, and that as a result, "Plaintiffs' reputations suffered and donations waned" and many "former prospective donors and conference attendees" have been caused to "cease doing business with Plaintiff Tang, withdraw their attendance from various conferences, and not to visit Mr. Tang's Conscience Media network of websites." FAC at ¶¶ 134, 136-37. Indeed, Defendants made the statements at the *very same time* Plaintiff Tang publically announced a conference on his Conscience Media website.

---

[6] To state a claim for tortious interference with prospective contractual relations (or "prospective economic advantage") under New York law, a plaintiff must "establish four elements: (1) the existence of a profitable business relationship, (2) [the defendant's] interference with that relationship, (3) [the defendant's] use of dishonest, unfair or improper means, and (4) damage to [the plaintiff's] business relationships." *Bertuglia*, 839 F. Supp. 2d at 729–30.

Indeed, Defendant Kwok's wrongful conduct in interfering with Plaintiff Tang's professional relationships constitute the independent tort of defamation, and clearly surpass "mere acts of persuasion." *See, e.g., Amaranth LLC v. J.P. Morgan Chase & Co.,* 888 N.Y.S.2d 489, 494 (2009) ("Defamation is a predicate wrongful act for a tortious interference claim."). Defendants' additional argument that the statements were "based on legitimate concerns," is both incorrect and premature. This argument is a factual one, and not appropriate at this stage.

## H. PLAINTIFFS ADEQUATELY ALLEGE HARASSMENT.

Defendants assert that there is no independent right of action in civil court for harassment. However, "New York courts have implied a private right of action from the language of the New York criminal statute that proscribes harassment." *Prignoli v. City of New York*, 1996 WL 340001 at *6 (S.D.N.Y. 1996); *Daniel v. Safir*, 175 F. Supp. 2d 474, 481 (E.D.N.Y. 2001) ("[A]n implied private right of action for criminal harassment is recognized under New York law."); *Blasetti v. Pietropolo*, 213 F.Supp. 2d 425, 428 (S.D.N.Y. 2002) ("New York. . .recognizes an implied private right of action for criminal harassment in violation of the Penal Law."); *see also Sang Lan v. Time Warner, Inc.,* 2014 WL 764250, at *10 (S.D.N.Y. Feb. 25, 2014) (recognizing a private right of action for "cyberharassment" under N.Y. Penal Law § 240.30). Accordingly, Defendants' sole argument with regards to this claim fails.

## I. PLAINTIFFS ADEQUATELY ALLEGE FALSE LIGHT INVASION OF PRIVACY.

Defendant's argue that New York does not recognize a tort claim for false light invasion of privacy; however, both Plaintiffs are residents of California, which does recognize such a cause of action. *See, e.g., Clark v. Celeb Pub., Inc.*, 530 F. Supp. 979, 982–83 (S.D.N.Y. 1981). In *Clark*, brought in this district by California plaintiffs, the court applied a "government interest analysis" and concluded that California had the greatest interest in having its laws applied, as the

"injuries allegedly suffered as a result of the wrongful publication all occurred in California." *Id.* at 982. This Court should make a similar finding in this case, as Plaintiffs' injuries occurred in California, where they reside, and deny the Motion to Dismiss.

**J.      PLAINTIFFS ADEQUATELY ALLEGE CLAIMS AGAINST DEFENDANT GOLDEN SPRING**

Plaintiffs sufficiently allege claims under the Lanham Act and for Unfair Competition against Defendant Golden Spring (New York) LTD. Defendants assert that Plaintiffs "fail to allege Golden Spring published and/or endorsed any false and/or misleading statements." This is simply incorrect. As set forth above, Golden Spring has a direct financial interest in the publication of statements against its competitor own media outlets it owns. For instance, Golden Spring owns and operates the website, Twitter account, and YouTube channel where most the tortious statements were published, *and* Golden Spring owns the trademarks for the stylized personal brands that were advertised alongside such statements. This alone is an adequate basis to hold Golden Spring liable for statements published on the website and YouTube channel.

Furthermore, Defendant Kwok spoke on behalf of and in support of the commercial enterprise owned by Golden Spring—that same commercial enterprise (an online media outlet) is the exact same service that Golden Spring claims (publicly) is the basis of their trademark applications.  The Complaint also states that Defendant Kwok "owns, directs and/or controls Golden Spring, and who has directed the wrongful conduct complained of herein." FAC at ¶ 10.[7]

---

[7] As such, Plaintiffs also adequately allege liability under an alter ego theory. FAC ¶ at 11. On an alter-ego claim, piercing the corporate veil "in reverse" is appropriate "when the corporation has been so dominated by an individual or another corporation ... and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego." *Miramax Film Corp. v. Abraham*, 2003 WL 22832384, at *7 (S.D.N.Y. 2003). "As with conventional veil-piercing claims, in a reverse veil-piercing claim, the plaintiff must allege (1) that the owner exercised complete domination over the corporation

More specifically, the Complaint alleges—and public records show—that Golden Spring applied for trademarks to the names "Guo Wengui," "Miles Kwok," "Miles Guo," and Everything Is Just The Beginning." Defendants then used those same marks in their false advertising. Moreover, the Complaint adequately alleges that Defendant Kwok acted in the scope of his agency relationship with Golden Spring, and vice versa. FAC at ¶ 11. This is also supported by Golden Spring's ownership of the Kwok Marks. FAC at ¶ 3. Clearly, Golden Spring is a proper defendant.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss should be denied.

Dated: Brooklyn, New York
April 6, 2018

Respectfully submitted,

By: */s/ David D. Lin*
David D. Lin, Esq. (DL-3666)
Justin Mercer, Esq. (JM-1954)
**LEWIS & LIN, LLC**
45 Main Street, Suite 608
Brooklyn, NY 11201
Tel: (718) 243-9323
*Counsel for Plaintiffs*

---

with respect to the transaction at issue; and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 379 (S.D.N.Y. 2003).