**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------ X
BAIQIAO TANG a/k/a TANG　　　:
BAIQIAO, and JING GENG,　　　:
　　　　　　　　　　　　　　:
　　　　　　　Plaintiffs,　　:
　　　　　　　　　　　　　　:
　　-against-　　　　　　　　:
　　　　　　　　　　　　　　:
WENGUI GUO a/k/a MILES KWOK　:
a/k/a GUO WENGUI a/k/a HO WAN　:
KWOK, and GOLDEN SPRING (NEW　:
YORK) LTD.,　　　　　　　　　:
　　　　　　　　　　　　　　:
　　　　　　　Defendants.　　:
------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/20/2019

No. 17 Civ. 9031 (JFK)
**OPINION & ORDER**

APPEARANCES

FOR PLAINTIFFS BAIQIAO TANG AND JING GENG
　　David Dong Ann Lin
　　LEWIS & LIN, LLC

FOR DEFENDANTS WENGUI GUO AND GOLDEN SPRING (NEW YORK) LTD.
　　Aaron Aubrey Mitchell
　　LAWALL & MITCHELL, LLC

**JOHN F. KEENAN, United States District Judge:**

　　Plaintiffs Baiqiao Tang and Jing Geng ("Plaintiffs") bring a motion for leave to file a second amended complaint ("the SAC") and to add three new defendants to this action following the Court's March 14, 2019 Opinion & Order ("the March 14, 2019 Order") that dismissed without prejudice Plaintiffs' first amended complaint ("the FAC") against Defendants Wengui Guo a/k/a Miles Kwok ("Kwok") and Golden Spring (New York) Ltd. ("Golden Spring") (collectively, "the FAC Defendants"). For the

1

reasons set forth below, Plaintiffs' motion is GRANTED in part and DENIED in part.

## I. Background

### A. Factual Background

The Court presumes familiarity with the allegations of this case as stated in the March 14, 2019 Order. See Tang, et al. v. Guo, et al., No. 17-cv-9031 (JFK), 2019 WL 1207859 (S.D.N.Y. Mar. 14, 2019).  To briefly summarize, Plaintiff Tang is a legal permanent resident, domiciled in California; Plaintiff Jing is Tang's wife and a U.S. citizen also domiciled in California. Defendant Kwok is a "Chinese national and/or Hong Kong national" who is currently domiciled in New York.  Defendant Golden Spring is a Delaware corporation that is authorized to do business in the state of New York.

Plaintiffs allege that Defendant Kwok runs charitable organizations and a media platform that are designed to compete with Plaintiffs' own nonprofit organizations and online, independent media outlet.  Plaintiffs allege that Kwok made, and continues to make, numerous false and defamatory statements about Plaintiffs to garner attention for and ultimately drive donors away from Plaintiffs' organizations to Kwok's competing organizations.  Plaintiffs allege that Kwok's attacks have caused them to lose donors and to suffer severe emotional distress and damage to their reputations.

## B.  Procedural History

Plaintiffs filed the first complaint in this action on November 17, 2017 ("the Original Complaint").  (ECF No. 1.)  The Original Complaint only asserted claims against Kwok.  On January 18, 2018, Kwok filed a motion to dismiss the Original Complaint.  (ECF No. 11.)  On February 9, 2018, Plaintiffs filed the FAC in lieu of an opposition to Kwok's motion to dismiss. (ECF No. 17.)  The FAC added Golden Spring as a defendant and asserted seven causes of action against the FAC Defendants: one federal law claim for violation of the Lanham Act under 15 U.S.C. § 1125(a)(1)(B), and six pendent state law claims for (1) slander, libel <u>per se</u>, and commercial disparagement; (2) unfair competition; (3) intentional infliction of emotional distress; (4) tortious interference with contractual relations; (5) harassment in violation of N.Y. Penal Code § 240.26; and (6) false light invasion of privacy.  On March 9, 2018, Kwok and Golden Spring moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 23.)

On March 14, 2019, the Court dismissed the FAC in its entirety and without prejudice.  (ECF No. 28.)  The Court dismissed Golden Spring as a defendant because the FAC failed to allege any wrongdoing by Golden Spring "sufficient to support Plaintiffs' general contention that Golden Spring aided Kwok in violating the Lanham Act or in engaging in acts which could

3

constitute unfair competition." Tang, 2019 WL 1207859 at *2.

The Court dismissed Plaintiffs' Lanham Act claim against Kwok

because the FAC did not adequately allege that his

communications were economically motivated commercial speech.

Id. at *4. Having dismissed Plaintiffs' federal law claims, the

Court declined to exercise supplemental jurisdiction over and

dismissed Plaintiffs' remaining state law claims. Id. at *5.

The Court allowed Plaintiffs to seek leave to amend their

complaint, but ordered them to demonstrate how they will cure

the deficiencies in their claims and that justice requires

granting leave to amend. Id.

On April 15, 2019, Plaintiffs moved the Court for leave to

file the SAC and add three additional defendants: "Rule of Law

Foundation III Inc." and "Rule of Law Society IV Inc."

(collectively "the Rule of Law Defendants"), and "Saraca Media

Group Inc." (together with Golden Spring, "the Media

Defendants").[1] (ECF No. 30.) The SAC adds numerous allegations

of additional wrongdoing by Kwok and the other named defendants

(collectively "Defendants") that occurred after the FAC was

filed and which allegedly continue into the present day.

---

[1] Defendants Rule of Law Foundation III Inc. and Rule of Law Society IV Inc. are Delaware non-profit corporations; Defendant Saraca Media Group Inc. is a Delaware corporation. All three are authorized to do business in the State of New York.

## II. Discussion

### A. Legal Standard

Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2); Dluhos v. Floating & Abandoned Vessel, 162 F.3d 63, 69 (2d Cir. 1998). "Nonetheless, the Court may deny leave if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile." Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303 (S.D.N.Y. 1996) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citing Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015).

In evaluating Plaintiffs' motion to amend, the Court will consider whether the SAC cures the deficiencies identified in the March 14, 2019 Order. In so doing, "the Court treats all factual allegations in the SAC as true and draws all reasonable

5

inferences in Plaintiffs' favor." <u>Kuriakose v. Fed. Home Loan</u> <u>Mortg. Corp.</u>, 897 F. Supp. 2d 168, 175 (S.D.N.Y. 2012) (citing <u>Ganino v. Citizens Util. Co.</u>, 228 F.3d 154, 161 (2d Cir. 2000)). Should the SAC not contain sufficient factual matter to state a claim that is plausible on its face, the Court will deny leave to amend as futile. <u>See</u> <u>Balintulo v. Ford Motor Co.</u>, 796 F.3d 160, 164-65 (2d Cir. 2015).

**B. Lanham Act**

**1. Applicable Law**

Section 43(a) of the Lanham Act "protect[s] persons engaged in . . . commerce against unfair competition." <u>POM Wonderful LLC</u> <u>v. Coca-Cola Co.</u>, 573 U.S. 102, 107 (2014) (quotation marks omitted). It provides in relevant part that any person shall be liable in a civil action,

> who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1)(B). The Lanham Act "does not prohibit false statements generally," but it does prohibit "false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services." <u>S.C. Johnson & Son, Inc. v. Clorox Co.</u>, 241 F.3d 232, 238 (2d

Cir. 2001) (quoting <u>Groden v. Random House, Inc.</u>, 61 F.3d 1045, 1052 (2d Cir. 1995)).

"To be actionable under the Lanham Act, statements must constitute 'commercial advertising or promotion.'" <u>Enigma Software Grp. USA, LLC v. Bleeping Computer LLC</u>, 194 F. Supp. 3d 263, 293 (S.D.N.Y. 2016) (quoting <u>Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC</u>, No. 08-cv-0442 (DLC), 2016 WL 815205, at *7 (S.D.N.Y. Feb. 29, 2016)).

> In this circuit, to constitute "commercial advertising or promotion" under the Lanham Act, a statement must be: (1) "commercial speech," (2) made "for the purpose of influencing consumers to buy defendant's goods or services," and (3) "although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public."

<u>Gmurzynska v. Hutton</u>, 355 F.3d 206, 210 (2d Cir. 2004) (quoting <u>Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.</u>, 314 F. 3d 48, 56, 57-58 (2d Cir. 2002)). Many courts have adopted a fourth requirement: a purportedly false statement must be made "by a defendant who is in commercial competition with plaintiff." <u>Enigma</u>, 194 F. Supp. 3d at 293 (collecting cases).

"Pure commercial speech 'does no more than propose a commercial transaction.'" <u>Id.</u> (quoting <u>Bolger v. Youngs Drug Prods. Corp.</u>, 463 U.S. 60, 66 (1983)). "But a 'hybrid' communication, <u>i.e.</u>, one that combines commercial and non-commercial elements, may nonetheless be 'commercial' where (1)

7

it is an advertisement; (2) it refers to a specific product or service; and (3) the speaker has an economic motivation for the speech." Id. (citing Bolger, 463 U.S. at 66-67).

## 2. Analysis

The March 14, 2019 Order dismissed Plaintiffs' Lanham Act claim because the FAC failed to allege how Kwok had an economic motivation or intended to profit by attempting to gain viewers on his media platform at the expense of viewers on Plaintiffs' platform. "Without these allegations," the Court ruled, "[it] cannot conclude that Kwok's speech was commercial speech as opposed to political speech, which is not actionable under the Lanham Act." Tang, 2019 WL 1207859 at *4.

The SAC successfully amends Plaintiffs' pleading to plausibly allege a violation of the Lanham Act. First, the SAC alleges a sufficient economic motivation for Kwok's speech because Plaintiffs now allege that, in the time since the FAC was filed, Kwok has added "DONATE" buttons to the video infomercials promoting his media outlets and fundraising organizations. (SAC ¶¶ 79, 83, 91-100 (ECF No. 30-1).) Further, the SAC now alleges that Kwok and the other named defendants intended to increase viewership on the Media Defendants' platforms to encourage viewers to donate to the Rule of Law Defendants that compete with Plaintiffs' own nonprofit organizations.

8

Second, the SAC adds new allegations that Kwok and the
other named defendants have violated the Lanham Act by
misleading the public regarding the purported use of donated
money.  (Id. ¶¶ 67-90.)  The SAC now alleges that Defendants
have engaged in false advertising by encouraging donations to
the Rule of Law Defendants without disclosing that (1) the
donations are not tax-deductible and (2) the funds will be used
for non-charitable lobbying efforts, to support the for-profit
Media Defendants, and to fund Kwok's application for asylum in
the United States.  (Id.)

Finally, the SAC meets the other elements of a Lanham Act
claim by plausibly alleging that Plaintiffs and Defendants
compete for fundraising dollars, Kwok's false statements were
made for the purpose of influencing viewers to donate to his
charitable organizations instead of Plaintiffs', and the
statements were sufficiently disseminated to the relevant
purchasing public by being posted to public forums such as
YouTube and Twitter.  Kwok argues that his statements are free
speech and, thus, not actionable under the Lanham Act.  The
Court is not persuaded at this procedural stage.  "[A]ssuming it
occurred as plaintiffs allege, [Kwok's conduct] is 'commercial
speech' within the ambit of the Lanham Act, and . . . applying
the Lanham Act to such conduct does not violate [his] First
Amendment rights." Nat'l Artists Mgmt. Co. v. Weaving, 769 F.

Supp. 1224, 1236 (S.D.N.Y. 1991).  Accordingly, the SAC

plausibly alleges a violation of the Lanham Act sufficient to

survive a motion to dismiss.

### C. Golden Spring and the Proposed Additional Defendants

Federal Rule of Civil Procedure 21 provides that a court

"may at any time, on just terms, add or drop a party."  However,

leave to amend to add additional parties to a complaint will

only be granted where the amended pleading alleges specific

wrongdoing by each named defendant.  See, e.g., Harnage v.

Lightner, 916 F.3d 138, 143 (2d Cir. 2019).  In deciding whether

to permit the addition of defendants, courts apply the "same

standard of liberality afforded to motions to amend pleadings

under Rule 15."  Soler v. G & U, Inc., 86 F.R.D. 524, 528

(S.D.N.Y. 1980) (quotation marks omitted).

The SAC plausibly alleges specific wrongdoing by Golden

Spring and the three new defendants.  First, the SAC alleges

that the Rule of Law Defendants, which are wholly owned and

controlled by Kwok, operate the Media Defendants and use the

Media Defendants to publish Kwok's false and misleading

statements.  (SAC ¶¶ 10-20.)  Second, the SAC alleges that the

Rule of Law Defendants engaged in false advertising regarding

the foundations' non-tax exemption for charitable donations,

lobbying efforts, and non-charitable expenditures.  (Id. ¶¶ 67-

90.)  Finally, the SAC alleges that the Media Defendants promote and encourage Kwok's and the Rule of Law Defendants' false statements and advertising by receiving funding from the Rule of Law Defendants and publishing the misleading infomercials on their platforms.  (Id. ¶ 84.)

The FAC Defendants argue that the three new defendants cannot be liable for any wrongdoing because the new defendants were formed after Kwok made the allegedly false statements in 2017 and 2018 that form the basis of Plaintiffs' claims. Drawing all reasonable inferences in Plaintiffs' favor, however, the SAC plausibly alleges wrongdoing by the new defendants after they were created in late 2018.  First, the SAC alleges the new defendants engaged in false advertising after they were incorporated.  (Id. ¶¶ 67-90.)  Second, Kwok's original false and defamatory statements are still publicly available on YouTube and Twitter.  (Id. ¶¶ 101-70.)  Finally, the SAC alleges new false and defamatory statements that were made as recently as February 2019.  (Id. ¶¶ 171-78.)  Accordingly, even though the new defendants were created after Kwok's initial false statements, the SAC plausibly alleges that the new defendants are sufficiently involved in Kwok's current, economically motivated false statements.

### D.  State Law Claims

The March 14, 2019 Order declined to exercise supplemental jurisdiction over and summarily dismissed the FAC's state law claims.  As discussed below, the SAC plausibly alleges unfair competition, defamation, and harassment sufficient to allow these state law claims to survive at this procedural stage.  The SAC, however, fails to plausibly allege tortious interference with contract, intentional infliction of emotional distress, or false light invasion of privacy.  Accordingly, leave to amend the first two of these claims is denied without prejudice; leave to amend Plaintiffs' false light claim is denied with prejudice as futile.

### 1.  Unfair Competition

In addition to the Lanham Act claim, the SAC also asserts a claim against Defendants for unfair competition.  "It is well-established that the elements necessary to prevail on causes of action for . . . unfair competition under New York common law mirror the Lanham Act claims." Real News Project, Inc. v. Indep. World Television, Inc., No. 06-cv-4322 (GEL), 2008 WL 2229830, at *6 (S.D.N.Y. May 27, 2008) (quoting Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005)).  Accordingly, the SAC's unfair competition claim is permitted for the same reasons as its Lanham Act claim.

## 2. Tortious Interference with Contractual Relations

The SAC alleges tortious interference with contractual relations and prospective contractual relations against Kwok and Golden Spring. "The elements of a tortious interference claim are: (1) that a valid contract exists; (2) that a 'third party' had knowledge of the contract; (3) that the third party intentionally and improperly procured the breach of the contract; and (4) that the breach resulted in damage to the plaintiff." <u>Bose v. Interclick, Inc.</u>, No. 10-cv-9183 (DAB), 2011 WL 4343517, at *10 (S.D.N.Y. Aug. 17, 2011) (citing <u>TVT Records v. Island Def Jam Music Grp.</u>, 412 F.3d 82, 88 (2d Cir. 2005)).

Plaintiffs' tortious interference claim fails because the SAC does not allege facts regarding the nature of the contracts Plaintiffs had with other donors that were impacted by Defendants' wrongdoing, nor any individual contract that was breached because of Defendants' actions. The SAC's allegations are far too general to state a claim for tortious interference because, without specific facts regarding the terms of the contracts that were breached, or the specific parties to the contracts and how they breached the agreements, the SAC does not plausibly allege that a contract existed or would have existed on which Defendants' actions were wrongful. <u>See, e.g.</u>, <u>id.</u> at

*10-11. Accordingly, the SAC's tortious interference claim is dismissed without prejudice.

### 3. Additional Claims Against Kwok

The SAC alleges the following claims against Kwok in his individual capacity: (1) defamation; (2) intentional infliction of emotional distress ("IIED"); (3) harassment; and (4) false light invasion of privacy. Each is discussed in turn below.

### a. Defamation

The SAC alleges false and defamatory statements by Kwok regarding, among other things, Plaintiffs' attempts to lie to and "swindle" donors, steal money from donors, and use donated money for Plaintiffs' own personal and illicit expenses. Further, the SAC alleges that Kwok continued making such false and defamatory statements as recently as February 2019, long after he was on clear notice that Plaintiffs would litigate to protect themselves against defamatory statements. Kwok argues that the allegations relate to statements of opinion, not fact, and regardless, Plaintiff Tang is a public figure.

"A defamation claim requires (1) a false and defamatory statement of and concerning plaintiff; (2) publication to a third-party; (3) the requisite degree of fault; and (4) special harm of per se actionability." Ulrich v. Moody's Corp., No. 13-cv-8 (VSB), 2017 WL 1232709, at *18 (S.D.N.Y. Mar. 31, 2017), aff'd, 721 F. App'x 17 (2d Cir. 2018) (internal quotation marks

omitted).  A statement of opinion cannot form the basis of a
defamation claim.  See Levin v. McPhee, 119 F.3d 189, 195 (2d
Cir. 1997).  "In determining whether a statement is one of fact
or opinion, courts examine (1) whether the statement had a
precise and readily understood meaning; (2) whether the
statement is susceptible of being proven false; and (3) whether
the context signals that the statement is one of fact." Ulrich,
2017 WL 1232709 at *18 (internal quotation marks omitted).  A
public figure must show "actual malice" to recover damages for a
defamatory falsehood. New York Times Co. v. Sullivan, 376 U.S.
254, 280 (1964).  "Actual malice requires proof that the
publisher had a subjective awareness of either falsity or
probable falsity of the defamatory statement, or acted with
reckless disregard of [the statement's] truth or falsity." Celle
v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 182 (2d
Cir. 2000).

Drawing all reasonable inferences in favor of Plaintiffs,
the SAC plausibly alleges defamatory statements by Kwok with, at
a minimum, a reckless disregard for whether the statements were
false or not.  "Libel law provides redress for injuries to a
person's reputation, caused by statements that 'tend [ ] to
expose a person to hatred, contempt or aversion, or to induce an
evil or unsavory opinion of him in the minds of a substantial
number in the community.'" Levin, 119 F.3d at 195 (citation

omitted; alteration in original). Here, the SAC plausibly states such a claim because it includes numerous specific references to defamatory statements by Kwok and their impact on Plaintiffs. Further, at this procedural stage, the statements are sufficiently factual because Kwok's assertions that Plaintiffs are secret agents of the Chinese government, rapists, or thieves, are statements that may be proven false and, thus, they are not mere statements of opinion. See id. Finally, the context of Kwok's statements did not signal to the listener that what was being conveyed was likely to be opinion rather than fact. See id. Indeed, the SAC plausibly alleges that Kwok intended the statements to encourage the listener to provide donations to organizations in direct competition with Plaintiffs. Accordingly, the SAC's slander, libel per se, and commercial disparagement claims are permitted.

### b. IIED

Under New York law, IIED requires: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996). "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." Id. Further, IIED claims should not be entertained

where the conduct complained of falls entirely within the scope of a tort claim such as defamation. See McNamee v. Clemens, 762 F. Supp. 2d 584, 608 (E.D.N.Y. 2011) (collecting cases).

Accepting Plaintiffs' allegations as true, and drawing all reasonable inferences in their favor, the SAC's IIED claim fails for the following reasons: First, Plaintiffs do not allege sufficiently "extreme and outrageous" conduct by Kwok. Here, the gravamen of the SAC is a commercial dispute between competing high-profile public advocates and the use of false and defamatory statements by one advocate to obtain an unfair advantage over his competitor.[2] This "cannot be said to shock the conscience of humankind." Id. at 610. Second, the SAC does not allege a specific severe emotional injury suffered by Plaintiffs because of Kwok's defamatory statements. Finally, Plaintiffs' IIED claim is duplicative of their defamation claim. The injuries arising from the defamation claim are the same as the IIED claim and, thus, "resolution of the . . . defamation claims will fully redress the injuries alleged under the IIED

---

[2] Plaintiffs contend that this case resembles Dennis v. Napoli, where the court permitted the plaintiffs defamation and IIED claims to move forward. 148 A.D.3d 446 (1st Dep't 2017). The Court disagrees. Unlike the circumstances here, the defendants in Dennis allegedly engaged in concerted action to access the plaintiff's work email, personal email, and Facebook accounts in order to harass and defame the plaintiff. See id. at 49. Such conduct is quite different than the facts of this case which do not involve similar allegations of significant wrongdoing by Kwok beyond his defamatory statements and unfair competition.

action." Id. at 608.  Accordingly, the SAC's IIED claim is dismissed without prejudice.

### c.  Harassment

The SAC alleges Kwok engaged in a course of conduct that served no legitimate purpose and which alarmed and seriously annoyed Plaintiffs in violation of N.Y. Penal Code § 240.26. New York law "recognizes an implied private right of action for criminal harassment in violation of the Penal Law." Blasetti v. Pietropolo, 213 F. Supp. 2d 425, 428 (S.D.N.Y. 2002) (collecting cases).  Accordingly, Plaintiffs' harassment claim is permitted.

### d.  False Light

The SAC alleges that Kwok publicly and falsely accused Plaintiffs of engaging in wrongdoing, and that such actions give rise to the tort of false light invasion of privacy. Allegations that a defendant portrayed a plaintiff in a false light, however, are not actionable under New York law. See Beverley v. Choices Women's Med. Ctr., Inc., 141 A.D.2d 89, 95 (2d Dep't 1988).  Nevertheless, Plaintiffs cite Clark v. Celeb Pub., Inc., 530 F. Supp. 979 (S.D.N.Y. 1981), for the proposition that New York courts may allow a California tort claim to go forward where the Plaintiffs are California residents and the harm was suffered in California.  The Court disagrees.

In Clark, the court applied California law when determining
the plaintiff's damages after default judgment was entered
against the defendant publisher. See 530 F. Supp. at 982.  The
court ruled that California tort law, which permitted a claim
for invasion of privacy, allowed the defendant to recover
damages for the tort. See id.  Clark, however, had nothing to do
with defamation or unfair competition; it was about the
defendant's wrongful use of the plaintiff's image in a
pornographic magazine. See id.  Here, Plaintiffs have alleged
violations of federal law and New York law—including, as
discussed above, New York's implied right of action under its
Penal Law—for the exact same conduct as Plaintiffs' false light
claim under California law.  Accordingly, Plaintiffs' false
light claim is wholly duplicative of their harassment and
defamation claims and, because the SAC's harassment and
defamation claims both survive, leave to amend Plaintiffs' false
light claim is denied with prejudice as futile.

### E.  Timeliness

Defendants argue that Plaintiffs' motion should be
dismissed as untimely.  The March 14, 2019 Order required
Plaintiffs to file their motion "within 30 days of the date of
this Opinion." Tang, 2019 WL 1207859 at *5.  Accordingly,
Plaintiff's motion was due by April 13, 2019, which fell on a
Saturday.  As a result, Plaintiffs were permitted to file their

19

motion on "the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). Plaintiffs' motion, which was filed on the following Monday, April 15, 2019, was timely.

## F. Plaintiffs' Action in State Court

Finally, Defendants argue the SAC should be dismissed because Plaintiffs have filed a similar action in New York state court. "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 73 (2013) (quoting Colo. River Water Cons. Dist. v. United States, 424 U.S. 800, 817 (1976)) (alterations in original). Accordingly, because the Court has jurisdiction over the SAC's Lanham Act claim, and supplemental jurisdiction over its related state law claims, Plaintiffs' SAC is permitted.

## III. Conclusion

For the reasons stated above, Plaintiffs' motion to amend is GRANTED in part and DENIED in part. Plaintiffs may file a second amended complaint with their Lanham Act, unfair competition, defamation, and harassment claims. The Court notes that Plaintiffs initiated this action more than two years ago. However, should Plaintiffs wish to prolong the pleading stage of this litigation—rather than move forward to discovery—and amend their remaining claims, Plaintiffs must demonstrate (1) how they will cure the deficiencies in the claims and (2) that justice

requires granting leave to file a third amended complaint. Such demonstration shall be filed within 30 days of the date of this Opinion.

It is FURTHER ORDERED that if Plaintiffs do not elect to amend their remaining claims, Defendants shall serve their answer to the SAC no later than 15 days from the date the SAC is filed.

**SO ORDERED.**

Dated:  New York, New York
        November 20, 2019

John F. Keenan
United States District Judge