DAVID D. LIN (DL-3666)
JUSTIN MERCER (JM-1954)
**LEWIS & LIN, LLC**
81 Prospect Street, Suite 8001
Brooklyn, NY 11201
David@iLawco.com
Justin@iLawco.com
Telephone: (718) 243-9323
Facsimile: (718) 243-9326

*Attorneys for Plaintiffs*
BAIQIAO TANG and JING GENG

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BAIQIAO TANG a/k/a TANG BAIQIAO and JING GENG, <br><br> *Plaintiffs*, <br><br> v. <br><br> WENGUI GUO a/k/a MILES KWOK a/k/a GUO WENGUI a/k/a HO WAN KWOK, GOLDEN SPRING (NEW YORK) LTD., RULE OF LAW FOUNDATION III INC., RULE OF LAW SOCIETY IV INC., and SARACA MEDIA GROUP, INC., <br><br> *Defendants*. | Case No: 1:17-cv-09031-JFK <br><br><br> **SECOND AMENDED COMPLAINT** |

Plaintiffs Baiqiao Tang a/k/a Tang Baiqiao ("Mr. Tang") and Jing Geng ("Jing," and

collectively with Mr. Tang, "Plaintiffs") by their attorneys Lewis & Lin LLC, for their complaint

against Defendants Wengui Guo a/k/a Miles Kwok a/k/a Guo Wengui a/k/a Haoyun Guo a/k/a Ho

Wan Kwok a/k/a Ho Kwok a/k/a Wen Gui Gwo a/k/a Wan Gue Haoyun a/k/a Guo Haoyun

("Kwok"), Golden Spring (New York) Ltd. a/k/a China Golden Spring Group (Hong Kong)

Limited a/k/a Ace Decade Holdings Limited a/k/a Beijing Pangu Investment Inc. d/b/a "Guo

Media" ("Golden Spring"), Rule of Law Foundation III Inc. ("ROL Foundation"), Rule of Law

Society IV Inc. ("ROL Society" and with ROL Foundation, "Rule of Law Fund" or the "Foundation Defendants"), and Saraca Media Group Inc. ("SMG," together with Golden Spring, the "Media Defendants," and collectively with Kwok, Golden Spring, ROL Foundation, and ROL Society, "Defendants"), allege as follows:

## STATEMENT OF CASE

1.      Plaintiffs bring this action pursuant to the federal Lanham Act for false advertising and common law for unfair competition, online harassment, and for the malicious, willful and unlawful publication in this District of false, misleading, disparaging and defamatory statements by Defendants regarding their own competitive services, as well as Plaintiffs.

2.      Plaintiff Mr. Tang is an activist and author who has been one of the leading Chinese political dissidents for the past 28 years, and who has dedicated his life's work and reputation to promoting democracy in China.  Mr. Tang was a leader in the student uprising that led to the Tiananmen Square massacre in 1989, escaped from communist China in the early 1990s, and now permanently resides in exile in the United States as a political refugee—where he continues to promote democracy and activism through humanitarian aid and educating Chinese democratic leaders via his online media outlet called "Conscience Media" ("良知媒體"). Plaintiff Jing is Mr. Tang's wife.

3.      Defendant Kwok is a Chinese multi-billionaire who, in order to drive donations and customers to his commercial ventures, used his platform and personal wealth to perpetrate an attack campaign against Mr. Tang by publishing and communicating false, defamatory and completely fabricated statements on YouTube videos,  his Twitter account, @KwokMiles and profile on the website <guo.media>, @milesguo—with the goal of promoting his competing online media outlet "Guo Media" a/k/a "Everything Is Just Beginning" and advertising his profit-

driven businesses.  The ostensible purpose of Kwok's campaign is to "expose corruption" within and without China. However, the true nature of Kwok's posts, on Golden Spring-owned "Guo Media" and elsewhere, was intended to promote and support his "Rule of Law Fund," media endeavors and public persona—commercial operations for which he has filed various trademark applications in his own name, including "GUO WENGUI," "MILES KWOK," and "MILES GUO," as well as for "EVERYTHING IS JUST BEGINNING" (the "Kwok Marks").  Defendant Golden Spring is the putative owner of the Kwok Marks. Defendant SMG is the putative owner of a registered design mark including "GUO MEDIA," recently transferred to it from Golden Spring, that is prominently displayed on the website <guo.media>.

4.       Specifically, beginning in or around August 2017 and continuing to the present, via public comments to third parties, via Kwok's Twitter account (published to over 596,000 Twitter followers online and touted by Kwok to have received over 4 *billon* impressions), via Defendants' YouTube account (published to over 169,366 subscribers), via email and social media (including on Kwok's profile the website <guo.media> which purports to have 7.6 *million* followers and 67 million users), and accessible across the Internet, Kwok accused Mr. Tang of cheating, swindling and/or defrauding donation monies for personal benefit and gain. Yet it is Kwok himself who has misled the public about the purported use of donation monies for his competing Rule of Law Fund, by purposely blurring the lines of which entity is receiving funds and failing to adequately disclose to the public that such monies are (a) not tax-deductible, (b) intended to be used for Kwok's individual asylum application, and (c) instead being used to support Kwok's for-profit media endeavor, "Guo Media."

5.       In short, Defendants lie to the public in advertisements about themselves, while falsely criticizing Plaintiff Tang and his endeavors within those same advertisements.

6.      Defendant Kwok's false Twitter posts, YouTube videos of his public statements and posts on his "Guo Media" account, @milesguo, remain active and, upon information and belief, are viewed by millions of visitors each day, and Defendants continue to defame and injure Plaintiffs with same. Kwok's false accusations threaten to destroy Plaintiffs' entire reputations and Mr. Tang's livelihood. As a result of Defendants' misconduct, Plaintiffs have been and continue to be substantially and irreparably harmed.

## PARTIES

7.      Plaintiff Tang Baiqiao ("Mr. Tang") is an individual and Chinese political refugee, granted permanent resident status in the United States, domiciled in the State of California.

8.      Plaintiff Jing Geng ("Jing" collectively with Mr. Tang, "Plaintiffs") is a private individual and U.S. citizen, domiciled in the State of California.

9.      Upon information and belief, Defendant Kwok a/k/a Guo Wengui ("郭文贵") is an individual and Chinese national and/or Hong Kong national who is residing and domiciled in New York at 781 Fifth Avenue, 18th Floor, New York, New York 10022 ("Kwok's Residence").  Kwok uses aliases, including but not limited to, Miles Kwok, Guo Wengui, Haoyun Guo, Ho Wan Kwok, Ho Kwok, Wen Gui Gwo, Wan Gue Haoyun, and Guo Haoyun.  Defendant Kwok maintains the active, verified Twitter account "@KwokMiles" and YouTube account "郭文贵".

10.      Upon information and belief, Defendant Golden Spring is a Delaware corporation, authorized to do business in the State of New York as a foreign business corporation, with a principal office at 800 5th Avenue, Suite 21F, New York, New York 10065 (the "5th Avenue Office") and a place of business at 781 Fifth Avenue, 18th Floor, New York, New York 10022— i.e. Kwok's Residence.

11.      Kwok is an individual who owns, directs and/or controls Golden Spring, and who

4

has directed the wrongful conduct complained of herein. Upon information and belief, while Golden Spring has nominal officers, Kwok is the only employee and sole owner of Golden Spring. Upon further information and belief, there are no other known agents or promoters of Golden Spring's products or services but Kwok. Golden Spring's "Guo Media" is a sponsor, a donor and also a media platform used by Defendants to distribute information about and advertisements for Defendants' "Rule of Law Fund."

12.     Upon information and belief, Defendant ROL Foundation is a Delaware non-profit corporation, authorized to do business in the State of New York as a foreign non-profit corporation, with a principal office at 800 5th Avenue, Suite 21F, New York, New York 10065— i.e. the 5th Avenue Office. Upon information and belief, Kwok is the founder, a promoter and a spokesperson of ROL Foundation.

13.     Kwok is an individual who owns, directs and/or controls ROL Foundation, and who has directed the wrongful conduct complained of herein.

14.     Upon information and belief, Defendant ROL Society is a Delaware non-profit corporation, authorized to do business in the State of New York as a foreign non-profit corporation, with a principal office at 800 5th Avenue, Suite 21F, New York, New York 10065— i.e. the 5th Avenue Office. Upon information and belief, Kwok is the founder, a promoter and a spokesperson of ROL Society.

15.     Kwok is an individual who owns, directs and/or controls ROL Society, and who has directed the wrongful conduct complained of herein.

16.     Upon information and belief, Defendant SMG is a Delaware corporation, authorized to do business in the State of New York as a foreign business corporation, with a principal office and a place of business at 781 Fifth Avenue, 18th Floor, New York, New York

10022—i.e. Kwok's Residence.

17.     Kwok is an individual who owns, directs and/or controls SMG, and who has directed the wrongful conduct complained of herein. Upon information and belief, while SMG has nominal officers, Kwok is the only employee and sole owner of SMG.  Upon further information and belief, there are no other known agents or promoters of SMG's products or services but Kwok. SMG's "Guo Media" is a sponsor, a donor and also a media platform used by Defendants to distribute information about and advertisements for Defendants' "Rule of Law Fund."

18.     Each of Golden Spring, ROL Foundation, ROL Society and SMG are referred to collectively herein as "Kwok's Entities."

19.     At all times material to this action, each of the Defendants was the agent, servant, employee, partner, alter ego, subsidiary, or joint venture of the other defendant, and the acts of each defendant were in the scope of such relationship; in doing the acts and failing to act as alleged in this Complaint, each of the Defendants acted with the knowledge, permission, and the consent of the other defendant; and each defendant aided and abetted the other defendant in the acts of omissions alleged in this Complaint.

20.     Each of the Kwok's Entities operates out of Kwok's residence and Kwok is the sole agent and promoter of the Kwok's Entities' services as described herein.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over the subject matter of this action pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq.  This Court has also subject matter jurisdiction, *inter alia*, pursuant to 28 U.S.C. §§ 1331, 1332(a)(2), 1332(a)(3), 1338 and 1367.

22.     This Court has pendent jurisdiction of the related state law claims asserted in this action pursuant to 28 U.S.C. § 1367 because they involve the same parties, they arise from the

same operative facts common to the causes of action arising under the federal claims, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

23.     This Court has personal jurisdiction over Defendant Kwok because he is a resident of the State of New York.

24.     The Court has personal jurisdiction over Kwok's Entities because each is authorized to do business in the State of New York and maintain their principal office within this judicial district.

25.     This Court also has personal jurisdiction over Defendants pursuant to CPLR § 302 because they (i) transact business within the State of New York and (ii) committed a tortious act within the State of New York, while regularly doing and soliciting business and deriving substantial revenue from services rendered in the State of New York.

26.     Defendants further subjected themselves to this Court's jurisdiction by invoking the benefits and protections of this State in an attempt to cause harm from the State of New York.  Defendants orchestrated false and defamatory posts, made between August 2017 and the present, all from Kwok's Residence and/or  the Kwok's Entities' principal 5th Avenue Office in New York, while Defendants engage in substantial competition with Plaintiff Tang.

27.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c), since some, or all, of the conduct that is the subject of this action occurred in this district.

## **BACKGROUND COMMON TO ALL CLAIMS**

**Plaintiff Tang's History of Advocacy, Supporting Commercial Enterprise and Goodwill**

28.     Plaintiff Mr. Tang is a political activist and author who has been one of the leading Chinese political dissidents for the past 30 years, and who has dedicated his life's work

and reputation to promoting democracy in China.

29.     Mr. Tang was a *leader* in the student uprising that led to the Tiananmen Square massacre in 1989, escaped from communist China in the early 1990s, and now permanently resides in exile in the United States as a political refugee—where he continues to promote democracy.

30.     Prior to his arrival in the United States, while in exile in Hong Kong, Mr. Tang contributed to and co-authored "Anthems of Defeat: Crackdown in Hunan Province 1989-1992" through Human Rights Watch—which book details some of the harshest punishments and human rights atrocities by the Communist Party of China ("CCP") during the Tiananmen Square protests and 1989 democracy movement.

31.     Since his escape from China, Mr. Tang has remained active in the pro-democracy movement, including bringing international attention to China's human rights policies and calling for review of the CCP's persecution of Falun Gong practitioners.  Mr. Tang is a frequent on-air commentator for New York-based television broadcaster New Tang Dynasty Television— which frequently covers topics that are censored in mainland China, such as human rights.  He also is a spokesman and officer for the China Interim Government—which was founded with the goal of disintegrating the tyranny of the CCP.

32.     In 2011, Mr. Tang co-authored the book "My Two Chinas: The Memoir of a Chinese Counterrevolutionary," detailing his life's work and history of pro-democracy activism. Mr. Tang's written work has also appeared in numerous national and international journals and publications, including the Journal of International Affairs—a publication edited by graduate students at the School of International and Public Affairs at Columbia University, where Mr. Tang earned his Master's degree in 2003.

33.     Mr. Tang has been invited to speak at human rights and international affairs conferences across the United States, some of which he receives modest honorariums. He has also been known for his pro-democracy nonprofit organizations including the China Peace and Democracy Federation–formerly called "China Peace"–and the All China People's Autonomous Federation.  Mr. Tang's organizations were and are funded via public and private donations.

34.     Jing Geng Tang is Mr. Tang's wife and is a private individual.

35.     Mr. Tang has founded and established organizations and online media outlets to promote the concept of human rights and democracy, promote the democratic revolution in China, and train youth leaders for future democracy in China.

36.     For instance, Mr. Tang co-founded the online media outlet called "Conscience Media" ("良知媒體") (accessible on the Internet at <www. lzmtnews.org> and <www.liangzhichuanmei.com>, and on Twitter at @lzmtnews).  Conscience Media is an independent, online news media outlet focused on uniting forces of global justice, seeking justice for vulnerable groups and individuals who are subjected to persecution, and establishing itself as the premiere information and publishing hub to promote the democracy. While Conscience Media does not accept any government subsidy, all funds for the operation of its website and journalism arms come from non-governmental donations and are regularly announced to the public.  Even though access to websites such as Conscience Media is restricted and/or in China, Conscience Media quickly developed into one of the major online destinations for news and information about the democratic revolution in China, principally because of its well-known association with Mr. Tang.

37.     Through his own efforts and reputation, Mr. Tang also receives donations, speaking fees and contributions to support his life's work: the pro-democracy movement in

China.

38.     In addition, Mr. Tang conducts and host conferences and fund raising events, entitled the "Democratic Revolutionary Conference," in various states, including New York, where attendees pay fees and/or invited make financial contributions to attend.  Sums received from such donations help support Mr. Tang's democracy efforts, including his media outlet Conscience Media.

39.     In short, Plaintiff Tang derives income from donations, contributions, and public and private gifts buttressed on Mr. Tang's personal and professional reputations—which are held in high regard.

**Defendants' Competing Businesses and their Wrongful Conduct**

40.     In early 2017, Mr. Tang was introduced to Defendant Kwok, a Chinese multi-billionaire and real estate mogul. Before Kwok moved to the United States, he had connections with senior officials in the Chinese government and amassed his fortune via an extensive portfolio of hotels, office buildings, condominiums and investment firms.

41.     Kwok, in the wake of pressure from criminal charges related to his business activities in China in 2015, relocated to a $68 million apartment in New York City (where he resides today), to cultivate an image of resistance to corruption in the Chinese government, ostensibly as a political dissident in the vein of Mr. Tang.

42.     Kwok has claimed to be "a longstanding critic of corruption within elements of the Chinese government and a leading advocate for government reform."

43.     Based on this portrayal of common interests, Mr. Tang and Kwok developed a personal and professional relationship that Mr. Tang hoped would promote democracy in China—his life's mission.

44.     Unaware that Kwok intended to leverage Mr. Tang's reputation and following for his personal and professional gain and to ultimately drive direct economic benefit to the corporate defendants named herein, Mr. Tang became one of Kwok's most public and ardent supporters in Kwok's purported resistance to corruption in the CCP.

45.     Upon information and belief, few in the United States knew of Kwok before his rousing endorsement from Mr. Tang in 2017—which endorsement, along with Kwok's flamboyant personality, catapulted him into the spotlight.

46.     Then, instead of supporting Mr. Tang's human rights efforts, Kwok used his platform and personal wealth to perpetrate an attack campaign against Mr. Tang by publishing and communicating false, defamatory and completely fabricated statements on YouTube videos and his Twitter account, @KwokMiles—in order to promote his competing online media outlet "Guo Media" a/k/a "Everything Is Just Beginning;" his commercial businesses, Pangu Plaza (www.panguplaza.com) and the website www.guo.media; and the competing, purportedly Chinese-democracy-promoting foundation, "Rule of Law Fund."

47.     Although he characterizes himself as a political activist and whistle-blower, in reality, Kwok's public persona and political dissident narrative, co-opted from Mr. Tang's actual life history, is a ruse (i) to garner financial support for his competing online media outlet and trademarked personal brands, and (ii) to supplant himself as the most-worthy and/or primary recipient of financial support for the social causes Mr. Tang has spent his life advancing (to wit: democracy in China)—all to continue adding value to his multi-billion-dollar empire.

**Defendants' "Guo Media" Online Media Business and False Advertisements**

48.     In early to mid 2017, Defendants began to market a YouTube weblog series called "Everything Is Just Beginning" and "Guo Media."  Kwok is the host and commentator of the

program available on the Kwok Entities' YouTube channel.

49.     The ostensible purpose of "Everything Is Just Beginning" is the presentation of views in the spirit of Mr. Tang's proven democracy movement. However, as became apparent, the real purpose of Defendants' "Everything Is Just Beginning" media campaign was to compete with Mr. Tang in the online media business.

50.     On or around June 20, 2017, Defendants Kwok and Golden Spring filed an application for a trademark registration, US Trademark Serial No. 87496983, with the United States Patent & Trademark Office ("USPTO") for the word mark "EVERYTHING IS JUST BEGINNING" for "Entertainment services, namely, providing a web site featuring photographic, video and prose presentations featuring news and social and political commentary" (the "EVERYTHING IS JUST BEGINNING Applied-For Mark").

51.     On or around June 22, 2017, Defendants Kwok and Golden Spring filed an application for a trademark registration, US Trademark Serial No. 87500691, with the USPTO for the word mark "MILES KWOK" for "Entertainment services, namely, providing a web site featuring photographic, video and prose presentations featuring news and social and political commentary" (the "MILES KWOK Applied-For Mark").

52.     On or around June 22, 2017, Defendants Kwok and Golden Spring filed an application for a trademark registration, US Trademark Serial No. 87500710, with the USPTO for the word mark "MILES GUO" for "Entertainment services, namely, providing a web site featuring photographic, video and prose presentations featuring news and social and political commentary" (the "MILES GUO Applied-For Mark").

53.     On or around June 22, 2017, Defendants Kwok and Golden Spring filed an application for a trademark registration, US Trademark Serial No. 87500728, with the USPTO

for the word mark "GUO WENGUI" for "Entertainment services, namely, providing a web site featuring photographic, video and prose presentations featuring news and social and political commentary" (the "GUO WENGUI Applied-For Mark," collectively the "Kwok Marks").

54.     On or around September 25, 2017, Defendants Kwok and Golden Spring filed similar applications for trademark registrations for each of the Kwok Marks in the United Kingdom.

55.     Sometime in mid- to late- November 2017, the Kwok Entities' registered the domain name www.guo.media with GoDaddy (the "Guo Media Website").

56.     Indeed, on or around mid-December 2017, Kwok conducted several public interviews claiming he was transforming his web series, Twitter accounts and the like into a new media platform that he intended to launch before the end of December 2017.

57.     Between mid-January 2018 to the present, Kwok has published several videos on his GUO MEDIA™ YouTube channel promoting the formal launch of the competing Guo Media Website—accessible at <www.guo.media>.

58.     Upon information and belief, the Guo Media Website launched on February 1, 2018.  At that time,  the "About" section of the Guo Media Website, it stated that Guo Media is a "social networking and livestreaming platform where everyone can express their views and opinions freely. Please join us in promoting judicial and media independence, democracy and religious freedom in China! Everything is just beginning!"

59.     On or around early 2018, the About section of the Guo Media Website further stated, "GUO.MEDIA is an all-in-one social networking platform available in both website and mobile app versions, where users can build their own user profiles, create their own posts and follow each other. This is a platform for people to share their views freely on everything. . .

Users can broadcast a live video via our app. Your followers will receive notifications when live streaming has started, to let everyone also able to watch your broadcast."

60.     The Guo Media Website allows users to create profiles with usernames (i.e. "@milesguo") similar to Twitter accounts, where they can publish text, images and videos. A link to Kwok's @milesguo Guo Media account appears on the homepage of the Guo Media Website.

61.     On or around April 24, 2018, Defendants Kwok and Golden Spring filed an application for a trademark registration, US Trademark Serial No. 87890048, with the USPTO for the word mark "GUO.MEDIA" for, *inter alia*, "Audio and video broadcasting services" and "Internet-based social networking services" (the "GUO.MEDIA Applied-For Word Mark").

62.     On or around April 24, 2018, Defendants Kwok and Golden Spring filed an application for a trademark registration, US Trademark Serial No. 87890053, with the USPTO for a design mark including the words  "GUO MEDIA" for, *inter alia*, "Audio and video broadcasting services" and "Internet-based social networking services" (the "GUO MEDIA Applied-For Design Mark," collectively with the GUO.MEDIA Applied-For Word Mark, the "Guo Media Marks").

63.     On or about July 18, 2018, Golden Spring and SMG executed a trademark assignment whereby the Guo Media Marks were transferred from Golden Spring to SMG.

64.     Upon information and belief, the Guo Media Website is the formal media platform and the Rule of Law Fund is the formal iteration of the two competing businesses that Defendants referred to in the below Posts and Tweets disparaging Plaintiff Tang and his related Conscience Media network of websites.

65.     Indeed, the specimen that Kwok and Golden Spring provided when applying for

the GUO MEDIA Applied-For Design Mark was a screen shot of the Guo Media Website.

66.     Thus, by continuing to promote Kwok's personal name trademarked brands and Guo Media in Defendants' online advertisements, while including misleading and false public statements regarding Plaintiff Tang, Defendants intended to siphon visitors and customers away from Plaintiff Tang's online media outlets and towards their own.

**Defendants' "Rule of Law Fund" and False Advertisements**

67.     Simultaneously with Kwok's promotion of Guo Media, on or around late 2018, Defendants announced and advertised the establishment of a "Rule of Law Fund" at a glitzy press conference held by Kwok and his friend Steve Bannon, a founding member of Breitbart News, a news, opinion and commentary website; Government Accountability Institute, a 501(c)(3) organization and investigative "think-tank"; and Citizens of the American Republic, a 501(c)(4) economic advocacy organization.

68.     Specifically, Defendant ROL Foundation is a non-profit corporation founded by Kwok purporting to be in the process of applying with the Internal Revenue Service ("IRS") for tax-exempt *501(c)(3) status*.  ROL Foundation maintains a website at "www.rolfoundation.org" (the "ROL Foundation Website"). J. Kyle Bass is listed the nominal chairman on the ROL Foundation Website.

69.     On the contrary, Defendant ROL Society is a non-profit corporation founded by Kwok purporting to be in the process of applying with the IRS for tax-exempt *501(c)(4) status*. ROL Society maintains a website at "www.rolfsociety.org" (the "ROL Society Website"). Bannon is listed as the nominal chairman on the ROL Society Website.

70.     The IRS imposes guidelines that entities with (and those entities seeking) these particular tax statuses must follow to either maintain or obtain such tax status.

71.     Save for the word "Foundation" on one and "Society" on the other, the ROL Foundation Website and the ROL Society Website are nearly identical in all material respects including style, format and content:



72.     Both of the ROL Foundation Website and ROL Society Website list identical "mission" statements":

**ROL Foundation Website**:



**ROL Society Website:**



73.     To the casual observer and consumer, there is no difference between the respective "Rule of Law" organizations.

74.     At the Kwok-Bannon press conference, Bannon announced the establishment of the "Rule of Law Fund," and indicated that Kwok would be the first donor, pledging $100 million dollars of his personal assets for the "fund" and/or "foundation."

75.     However, at such conference, neither Kwok nor Bannon distinguished between the ROL Foundation and ROL Society's purposes, nor informed attendees or viewers that there is or was a difference in the two organizations activities.

76.     Indeed on the ROL Society Website, Defendants display a video advertisement of the Kwok-Bannon press conference, published on or about January 28, 2019, and accessible on the Internet at rolsociety.org/index.php#videos (the "Rule of Law Fund Infomercial").

77.     The Rule of Law Fund Infomercial is an imbedded YouTube video, which original is located at https://www.youtube.com/watch?v=ehjMdYouuos. The YouTube channel where the Rule of Law Fund Infomercial resides is titled "Guo Media."

78.     The title of the Rule of Law Fund Infomercial video (that viewers see when they

either click on same on ROL Society's website, or else visit the "Guo Media" YouTube channel)

is "RolFoundation":



79.     The aforementioned Rule of Law Fund Infomercial video is also accessible at the

Guo Media Website, where it also includes a "Donate" button that populates a link listing only

"Rolfoundation":



80.     Thus, by encouraging the public and viewers to donate to the "Rule of Law

Fund," and on videos titled "Rolfoundation" and providing payment links listing "Rolfoundation," while failing to disclose that the ultimate purpose of such funds is for ROL Society (the purported 501(c)(4) applicant) whose purposes include, *inter alia*, lobbying efforts and non-501(c)(3) related activities, such as funding Defendant Kwok's individual asylum application, the Foundation Defendants engage in false advertising.

81.     In addition, ROL Society fails to adequately disclose on its Rule of Law Fund Infomercial and on its Website that its donations are not tax deductible nor for charitable purposes.

82.     The Rule of Law Fund Infomercial contains no such notice or disclaimer, either on the ROL Society Website, the Guo Media YouTube channel or the Guo Media Website.

83.     While the text of ROL Society Website includes a small disclaimer at the bottom of the homepage, it also includes prominent "DONATE" links to PayPal payments and a PDF that has wire instructions (*see* ¶ 71 above)—neither of which include any such notice or disclaimer that funds sent to ROL Society are not tax deductible.

84.     The Media Defendants not only promote and encourage these misleading advertisements by publishing these misleading infomercials on the Guo Media platform with donation links listing only "Rolfoundation," but also they actively participate in the Foundation Defendants' false advertising insofar as both Foundation Defendants claim that donated funds will be used to support their "media expenses"—which, upon information and belief, includes directly funding the Media Defendants and the Guo Media Website, the "media platform designated by" ROL Foundation and ROL Society to promote their efforts (as identified in the FAQ sections of the Foundation Defendants' Websites).

85.     Defendants' solicitation of monies under the false auspices that funds are to be

used for 501(c)(3) purposes, when they intend to use such funds for 501(c)(4) purposes, while speaking to the same audience, individuals and/or business that Plaintiff Tang did and would be seeking to sponsor his activist organizations could, and does, impact Plaintiff Tang's fundraising efforts.

86.     Defendants purposely and willfully blur the lines between the Foundation Defendants to mislead the public by simply referring to either as "Rule of Law" without any qualifier or "Rule of Law Fund" without distinguishing to which Foundation Defendant will be using the solicited donations.

87.     In addition, Plaintiff Tang and Defendants compete in the public speaking market on the topics of political dissidence against China.

88.     Plaintiff Mr. Tang has authored books on the subject.

89.     Thus, upon information and belief, Defendants knew that the Videos and Tweets (and videos contained therein) would stifle competition with and cause economic harm to Plaintiff Tang by attempting undermine Tang's reputation which is what his personal business is built on—especially considering Defendant Kwok was a relatively unknown figure until Mr. Tang supported him, and for decades the public had come to trust the political reputations and motivations of dissidents like Mr. Tang and routinely visit Mr. Tang's Conscience Media network of websites.

90.     Further, according to Alexa.com traffic statistics for <guo.media>, nearly 76% of visitors to Defendants' U.S.-based website are from China, while the most popular "upstream site" to guo.media, i.e. the website people visit immediately before that website, is YouTube—at about 39%.  Thus, Defendants knew and know that their statements on YouTube or of-and-concerning the Guo Media platform would reach and impact the very same audience and market

that Plaintiff Tang services and Mr. Tang's Conscience Media network of websites attempts to reach: people interested in democracy in China, including those willing to donate to the cause.

**Defendants Drive Financial Contributions to their Own Ventures**

91.     By publishing the below Videos, Tweets, and Posts, Defendants intended to increase viewership on their media platform—Guo Media—for the explicit purpose of encouraging viewers to donate to their competing Rule of Law Fund.

92.     Each of the Guo Media Defendants and the Rule of Law Fund(s) (i.e. the Foundation Defendants) are owned, operated, controlled and promoted by Kwok exclusively. Indeed, Kwok's "@milesguo" social media profile is the first and only profile visible on the website <guo.media>, which is crudely modeled after Twitter's interface, and includes only four external links: one to Kwok's YouTube account, one to Kwok's Twitter account, and two PayPal links to donate to the Foundation Defendants' "Rule of Law Fund."

93.     Further, the "pinned," static post on Kwok's "@milesguo" profile encourages visitors to the Guo Media platform to send money and donations directly to these "Rule of Law" funds—which Kwok controls exclusively. A screenshot from a social media post, dated March 6, 2019, on Kwok's profile on the Guo Media Website showing his solicitation for funds for, ROL Foundation and ROL Society (without providing notice that the ROL Society-directed funds are not tax deductible), is annexed hereto as **Exhibit F**.

94.     In fact, on www.guo.media/broadcasts, *every* video has a "Donate" button superimposed over the video, including for the entire length of the segments were Kwok refers to Tang and/or Jing (see below).

95.     When a user clicks on the "Donate" button, they are taken to an external link for

donations.livestream.com (for "ROLfoundation"), where they can make a donation:



96.     Indeed, each of the Kwok Entities' benefited from Kwok's advertising statements,

as such statements were intended to benefit the Golden Spring/SMG's media platform and the

ROL Foundation/ROL Society's "Rule of Law Fund."

97.     As stated above, not only does Kwok have a history of having his and his

businesses' money frozen by the Chinese government, but he (and Golden Spring) has also been

sued by various third parties who claim he owes them tens of millions of dollars collectively.

98.     Upon information and belief, Kwok uses several sham corporate entities,

including the Kwok Entities, all operating out of his residence, to secret and hide his personal

income from his alleged creditors and government authorities.

99.     Thus, Kwok uses his mesh of shell companies to collect donations and while

hiding his personal income derived from the promotion of his Rule of Law Fund on his Guo

Media platform. In other words, it was and is Kwok's intention for the Kwok Entities to benefit

from his negative advertisements against Tang by (a) fraudulently disparaging a direct competitor in the pro-Chinese-democracy movement and media markets (b) by soliciting and receiving direct financial benefit to his funds (as he actively promoted both wire transfer information and PayPal links on the same platforms as were the Videos, Tweets and Posts).

100.    In short, when Defendants disparage Plaintiffs, in the manner stated above and below, Plaintiffs' reputations suffered, donations waned and fewer consumers visited Mr. Tang's Conscience Media network of websites.

**Defendants' Campaign of Disparaging Statements, Defamation and Unfair Competition**

101.    Beginning in or around August 2017 and continuing to the present, in an intentional effort to divert business and contributions away from Plaintiff Tang and toward Defendants, and to cause injury to Mr. Tang, Defendant Kwok began to contact Tang's potential donors in an effort to dissuade Plaintiff Tang's potential donors from doing business with or contributing to Plaintiff Tang or his online media outlet, Conscience Media.

102.    In particular, Defendant Kwok, on behalf of himself and the Kwok Entities, has posted taunting material and defamatory statements, authored, espoused, concurred in and/or endorsed by Kwok, about Plaintiffs Mr. Tang and Jing  and Plaintiff Tang's services on various websites and social media outlets across the Internet—including on his YouTube and Twitter accounts.

103.    Specifically, Kwok has attempted to attack the personal and professional reputation of Mr. Tang and Jing to undermine Mr. Tang's credibility as the leading Chinese political dissident (as well as the attention received by Mr. Tang's competing media outlet Conscience Media) by falsely accusing and directly endorsing others' false statements accusing Mr. Tang and Jing of being a spies for the Chinese government, accusing Mr. Tang of defrauding

and swindling monies for donations sent to Mr. Tang and his pro-democracy organizations, and calling Mr. Tang all types of heinous things, including a convicted rapist.

104.    On or about September 8, 2017, Mr. Tang publicly announced a fundraising campaign for the Democratic Revolution Conference to be held in New York from September 30 to October 1, 2017 on the Conscience Media website.  The goals of the conference were to meet and discuss how to effectively promote democracy in China.

105.    After the conference was announced on the Conscience Media website, upon information and belief, the CCP attempted to sabotage every aspect of the conference, including discrediting and intimidating the preparatory team members of the Conference, including Mr. Tang. One the participating guests was harassed and threatened to obstruct the open and legitimate fundraising activities in the preparatory process for the Conference.

106.    At that time, upon information and belief, no other similar pro-Chinese-democracy conference was being promoted and was fundraising in New York, or in the United States.

107.    On or about September 10, 2017, speaking from his New York apartment on behalf of himself and the Kwok Entities, Kwok live-streamed and subsequently published on YouTube a 1 hour 20 minute and 11 second long Chinese language video to an audience of supporters (the "September 10th Video"). The September 10th Video is available and can be viewed on Kwok's YouTube account at www.youtube.com/watch?v=EOk2QpE4aAU.

108.    To date, the September 10th Video on Kwok's YouTube channel, in which he defames Mr. Tang, has been viewed more than 255,000 times.  A condensed 13-minute version of the September 10th Video, is available and can be viewed at www.youtube.com/watch?v=fWvJ7UPsZAI. To date, that version of the September 10th Video

has more than 292,000 views on YouTube.

109.    In both versions of the September 10th Video, Kwok defames and makes false statements of fact about Plaintiffs Tang and the planned Conference, while promoting his online media business endeavors. A Chinese language transcript and English language translation of the condensed version of the Video is annexed hereto as **Exhibit A**.

110.    Specifically, in the September 10th Video, Defendant Kwok states, in relevant part as follows:

      a.    "**There are many conferences**, such as **TANG . . . democratic meeting**, . . . .However, if anyone wants to fundraise in society, I will cut off the relationship with you immediately. We need to be very clear. If anyone makes a fundraising activity, I will cut off the relationship with you immediately, because **we cannot fundraise at this time**. . . ."

      b.    "They don't have money to eat, so **they just swindle donations for the party**, and they beg for money for the party, and they just know how to ask for money."

      c.    "[N]ow we have become a party that begs for food or money, or a party that **swindles for donations, and then the donations become unclear**, so this is a huge damage to us, a huge damage, so I tell everyone that I am firmly against it. Anything related to donations or fundraising, I will immediately draw a clear line with you. If you have democracy, you have the heart and motivation to pursue democratic freedom and governance by law, you can devote your own time and work, including some money, **but you cannot fundraise**."

*See* Exhibit A (emphasis added).

111.    The above statements are knowingly and materially false, and were made to defame Plaintiffs.

112.    Further, in the September 10th Video, Defendant Kwok states, in relevant part:

      a.    "Chinese media need to be independent. Under the circumstances of national security interest, we must have this.  This is what I pursue. . .**Everything is just the beginning**."

*See* Exhibit A (emphasis added).

113.    Upon information and belief, Defendant Kwok referenced "Everything is just the beginning" to garner attention for and ultimately drive consumers to his competing online entertainment and media business he advertises under the trademarks EVERYTHING IS JUST

BEGINNING, GUO WENGUI and GUO MEDIA.

114.   Within the same September 10th Video, Defendant likewise made unseemly comparisons between Plaintiffs and "swindling for donations," i.e. serious crimes of fraud, in an effort to promote his false persona of being a political dissident. Thus, by linking Mr. Tang and the conference to these forms of "swindl[ing]" and fraud, Defendant Kwok intentionally attempts to bring Plaintiffs' reputation, credibility and good will in ill repute.

115.   Defendant made the above statements in such a fashion that no reasonable person would believe that the statements made therein were opinion, but rather statements of fact about Plaintiff Mr. Tang.

116.   Furthermore, because of Defendant Kwok's stature in the community and Tang's previous public endorsement of Kwok, viewers understood the above statements to be factual.

117.   Indeed, while in September 10th Video Kwok stated that "you cannot fundraise," his stated intention was that people should not donate *to Plaintiff Tang*—not that donating and fundraising in general was unacceptable, nor an avenue that he and other defendants would use to ultimately benefit from Kwok's September 2017 statements.

118.   Upon further information and belief, from August 2017 to the present, Defendant has communicated these same false and defamatory statements to other individuals, via email, social media, orally and elsewhere in writing.

119.   The September 10th Video has remained active and accessible through the Internet since its creation.

120.   Upon information and belief, hundreds, if not thousands, of people each day view the September 10th Video, which has a significant influence on viewers' perception of Plaintiff Mr. Tang.

121.    Moreover, more than twenty scheduled attendees at the Democratic Revolution Conference cancelled their trips and withdrew their donations after the Video was published and stated to Mr. Tang that the false statements in the September 10th Video motivated their decisions to withdraw.

122.    Upon information and belief, numerous other potential and prospective attendees refused to attend and/or withdrew their support for the Democratic Revolution Conference after viewing Kwok's September 10th Video.

123.    Upon information and belief, Kwok also posted a link to the September 10th Video on his Twitter account, @KwokMiles, where he has made and/or endorsed other disparaging statements regarding Plaintiffs in an effort to continue his organized campaign to compete with Plaintiff in the online media business and supplant himself as the most noteworthy political dissident, in the vein of Mr. Tang and in the spirit of Conscience Media.

124.    Upon information and belief, Defendant Kwok posted the link on his Twitter account, @KwokMiles, to garner attention for and ultimately drive consumers to his competing online entertainment and media business he advertises under the trademarks EVERYTHING IS JUST BEGINNING, MILES KWOK and GUO MEDIA.

125.    On September 11, 2017, Kwok sent Mr. Tang two voice messages wherein Kwok falsely claimed to have evidence that (i) Mr. Tang was sentenced to jail for the crime of rape and (ii) Mr. Tang received millions of dollars from the Chinese government through Plaintiff Jing, his wife—insinuating that Mr. Tang's decades-long claims of dissidence to the Chinese government were false and that Mr. Tang and Jing were "special agents" or spies for the Chinese government.  In those voice messages, Kwok said he sent dozens of pages of documents to at least seven individuals, including two scheduled attendees at the Democratic Revolution

Conference, Mr. Hongbin Yuan and Mr. Guo Baosheng (unrelated to Defendant Kwok).

126.    Upon information and belief, Kwok also repeated these false claims of rape by Mr. Tang to the seven individuals.

127.    Thereafter, Mr. Hongbin Yuan and Mr. Guo Baosheng cancelled their trips and withdrew their attendance at Democratic Revolution Conference, including their planned contributions.

128.    On or about October 10, 2017, Kwok posted a tweet to his MILES KWOK™ Twitter account stating: "对唐柏桥一些事情的说明包括8月16日唐柏桥对郭文贵先生的留言节选（经相关人士许可发布)," which translates to "Explanations of the things related to Tang Boqiao and selected messages of Tang Boqiao to Mr. Guo Wengui on August 16 (permitted to be published by applicable people)." (the "October 10th Tweet"). The October 10th Tweet is available and can be viewed on Kwok's Twitter account at www.twitter.com/KwokMiles/status/917727740329160704.  An English language translation of the October 10th Tweet is annexed hereto as **Exhibit B**.

129.    Kwok's October 10th Tweet also published a YouTube video of Mr. Guo Baosheng, wherein Mr. Guo Baosheng (i) published a 20 minute long voice recording between Mr. Tang and Defendant Kwok, that Mr. Guo Baosheng said he received from Defendant Kwok, (ii) published disparaging statements that Mr. Tang was wrongfully using monies from his organization's bank account to steal same for Mr. Tang's personal gain. A visitor to Kwok's Twitter account can view the entire Guo Baosheng video within Kwok's October 12th Tweet, without leaving the tweet or webpage.

130.    All of the statements concerning Mr. Tang within the video appended to the October 10th Tweet are false and completely fabricated.  They have been published by Kwok on

his Twitter account for the overt purposes of (i) destroying the reputation and business of Mr. Tang by misleading the public to believe that Mr. Tang can and does swindle donation money for personal gain and (ii) to convince consumers not to visit Mr. Tang's Conscience Media network of websites, and instead support Kwok's then-upcoming media outlet—Guo Media.

131.    Specifically, because of Kwok's additional commentary on the October 10th Tweet, coupled with the act of retweeting the disparaging video within, and his reputation and experience (including his professed and well-known relationship with Mr. Tang), people understood that Kwok adopted the factual content of the Tweet and video within as true—as if he were speaking the words within the video himself, in addition to republishing those same words on his Twitter account.

132.    The October 10th Tweet has been "retweeted" more than 400 times and "liked" more than 1,400 times.

133.    Upon information and belief, the video appended to the October 10th Tweet has been viewed more that 63,000 times.

134.    On or about October 12, 2017, Kwok posted a tweet to his MILES KWOK™ Twitter account stating: "（20）郭文贵保卫战：女侠大战唐骗子系列之三（决胜篇）10/11/17," which translates to "(20) Guo Wengui Defense War: Female Warrior Fighting Against Liar Tang Series Three Final Battle 10-11-17." (the "October 12th Tweet"). The October 12th Tweet is available and can be viewed on Kwok's Twitter account at www.twitter.com/KwokMiles/status/918624512983388160.  An English language translation of the October 12th Tweet is annexed hereto as **Exhibit C**.

135.    Kwok's October 12th Tweet also published a YouTube video of Xinping Zhang originally posted YouTube on October 11, 2017 (the "October 11th Video"). A visitor to Kwok's

Twitter account can view the entire October 11th Video within Kwok's October 12th Tweet, without leaving the tweet or webpage. A Chinese language transcript and English language translation of the October 11th Video is annexed hereto as **Exhibit D.** The title of the October 11th Video (appended to the October 12th Tweet) translates to "(20) Guo Wengui Defense War: Female Warrior Fighting Against Liar Tang Series Three Final Battle 10-11-17 Eliminate completely Tang Boqiao [*sic*] is the biggest contribution to our Guo Wengui Defense War." *See* Exhibit C.

136.    In the October 11th Video, appended to Kwok's October 12th Tweet, Kwok and Ms. Zhang published false and disparaging statements concerning Mr. Tang, Jing and PlaintiffsMr. Tang's services, including, but not limited to, (i) that Mr. Tang and Jing were a "special agent[s]" or spies for the Chinese government, (ii) Mr. Tang is a "liar," (iii) Mr. Tang "swindles" for donations, and (iv) that Defendant Kwok has documentary evidence that Mr. Tang cooperated with Chinese authorities by identifying and turning in other political dissidents who have since mysteriously disappeared.

137.    In the October 11th Video, published by Defendant Kwok, it states in relevant part as follows:

    a.  "YUAN Jianjun exposed materials about **GENG Jing being a secret agent**."

    b.  "Then, yesterday there was an announcement, and yesterday the formal cutting off of the relationship with **TANG Baiqiao** was made public, and a long recording was played. People also learned the truth about many things. Then, for **Liar TANG Baiqiao, he swindles for donations, he swindles for money, always swindling and lying, doing sneaky things**, I think everyone has understood it now."

    c.  "Today, I want to emphasize that **TANG Baiqiao is not just a liar, he is really a secret agent**. We will keep exposing him continuously, but the thing about exposing **his secret agent identity**, **we need to pay attention to Mr. GUO's exposed materials**, so that we will not have any conflict with his exposed materials. To reveal **this liar, the secret agent** thing is very important, but if Mr. GUO has anything new, we will withdraw and wait until Mr. GUO settles down. We will not let the Internet be very quiet, and we will expose **this big liar**. Today,

I want to talk about **TANG Baiqiao, this secret agent**. **I not only have evidence about his political background, there are indeed a lot of signs indicating that he has the background of Chinese Communist Party**."

d.  Mr. Tang "is just a dog raised by the Chinese Communist Party. He uses the Chinese consulate in Los Angeles as his own house."

e.  "Why did **TANG Baiqiao** visit the younger brother of Bruno WU in Tangbao the first thing when he arrived in New York? This indicates that **he came with the mission from the Communist Party**, to get in touch with Mr. GUO, and after contacting Mr. GUO, **to find opportunities to kill Mr. GUO**."

f.  "I tell you, no wonder that **GENG Jing** worked so hard, waiting in Central Park during such a heavy rain. **What are you if you are not a secret agent**?"

g.  "Also, a few days ago, Mr. YUAN played a recording of Mr. GUO, questioning you TANG Baiqiao, and we listened to the content of his questions to you. Mr. **GUO asked you about the documents. Mr. GUO said that he donated money to you for the democratic movement, but it was not for you TANG Baiqiao**. But please explain it to me, **what are the files about? TANG Baiqiao, please hurry up and explain to us what the files are about. These files are about the internet friends in China who supported you for the democratic revolution, the internet friends who donated money to you. You submitted the list to the Ministry of National Security of the Chinese Communist Party, and now these internet friends have all disappeared**. Why did they disappear? TANG Baiqiao, please explain. If you are not a **secret agent**, then what are you? **Mr. GUO has the evidence, but we don't**."

h.  "In the evening of the day before yesterday, when YUAN Jianbin was disclosing **the secret agent identity of GENG Jing**, he was constantly attacked by hackers."

i.  "**GENG Jing is a current secret agent of the Ministry of National Security, and has funds for being a secret agent**. TANG Baiqiao is a target for which GENG Jing has tried to develop and is under GENG Jing. **Therefore, although TANG Baiqiao is not a current secret agent of the Ministry of National Security, he is absolutely a target of being recruited to be a secret agent and is a small secret agent**."

j.  "**We must completely expose the secret agent identity of TANG Baiqiao** because  [f]or the defense of GUO Wengui, he can cause more damaging effect than a cold stone knife in a summer night, greater damaging effect than any person. **He still swindled many internet friends**, and if we don't expose him now, he will still keep dividing our internal defense force. In his heart, **Liar TANG** has enormous hatred towards GUO Wengui."

*See* Exhibit D (emphasis added).

138.  The October 11th Video calls Mr. Tang a "liar" more than 28 times and Mr. Tang and/or Jing a "secret agent" more that 15 times.

139.  All of the statements concerning Mr. Tang and Jing within the October 11th Video, appended to Kwok's October 12th Tweet are false and completely fabricated.  They have

been published by Kwok on his Twitter account for the overt purpose of destroying the personal reputations and business of Mr. Tang and Jing, and with the goal of promoting his competing online media outlet "Guo Media" a/k/a "Everything Is Just Beginning" and advertising his profit-driven businesses, Rule of Law Fund. As set forth above, Kwok's video advertisements were intended to promote his Media Defendants (which compete with Tang in the online media market) and his Foundation Defendants (which compete with Tang for donations in the advocacy and activism space), by soliciting funds while obfuscating the true nature of their use and disparaging their main competitors: Conscience Media and Tang.

140.    Neither Mr. Tang nor Jing are "secret agents" or spies for the Chinese Communist Party. Mr. Tang does not "swindle for donations" or "swindle for money." Mr. Tang did not try to "kill Mr. Guo [a/k/a Kwok]."

141.    Specifically, because of Kwok's additional commentary on the October 12th Tweet, coupled with the act of retweeting the disparaging October 11th Video within, and his reputation and experience (including his professed and well-known relationship with Mr. Tang), people understood that Kwok adopted the factual content of the October 12th Tweet and October 11th Video within as true—as if he were speaking the words within the October 11th Video himself, in addition to republishing those same words on his MILES KWOK™ Twitter account.

142.    Indeed, Kwok's earlier published videos similarly accused Mr. Tang of being, *inter alia*, a "swindler" before and referenced documentary "evidence" that Kwok claims to have (*see* above), such that Kwok's republication of the October 11th Video was understood (by viewers of the video and his October 12th Tweet) to be a continuation of the false set of facts that Kwok had asserted about Plaintiffs in the recent past.

143.    The October 12th Tweet has been "retweeted" more than 300 times and "liked"

more than 1,200 times.

144.   Upon information and belief, the October 11th Video (published within Kwok's October 12th Tweet) has been viewed more than 30,000 times.

145.   On or about October 23, 2017, Kwok, speaking from his New York apartment via video to approximately, upon information and belief, twenty to thirty individuals, defamed and made false statements of fact about Plaintiff Tang and the planned Conference. (the "October 23rd Video"). A condensed version of the October 23rd Video, is available and can be viewed at www.twitter.com/GO_GO_60/status/922680968728776704. A Chinese language transcript and English language translation of a condensed version of the October 23rd Video is annexed hereto as **Exhibit E**.

146.   In the October 23rd Video, Defendant Kwok states, in relevant part as follows:

   a.   "In addition, I always try to be thankful for and unite with Mr. *TANG Baiqiao*. You may not know what my relationship with Mr. *TANG Baiqiao* has inflicted on me. I have to endure attacks, resentment and so many negative things from overseas and his enemies. However, our feelings and moral integrity ultimately failed to overcome the power of truth. *Mr. TANG Baiqiao* is unable to withstand the test. Later I will forward you an audio file of 20+ minutes he sent to me. . . .But you need to know that Mr. *TANG Baiqiao* made a big mistake in that audio recording. I, Wengui, used to be a grassroots farmer. I have seen many things. Nobody dared to talk to and treat me like that. That shows some problems with Mr. *TANG Baiqiao*. First, as you can hear from the audio recording, **he stressed I'm affluent as I easily made a donation of USD 500,000 while a meeting costs only USD 20,000 to 30,000 US**. Such notion astounded me very much. **It proved what others said about him. What exactly? He regarded democratic movement as democratic donation. He regarded democratic movement as a business**. This has been absolutely corroborated in [the recording]. Second, he brings up his wife for everything. He always favors personal relationship over our ideals and fighting goals **He can't make a clear distinction between public and private interests**. Third, much to my astonishment, he is so conceited that he said my whistle blowing and the results of our fight against traitors would be impossible without him. Undoubtedly[,] he overestimated himself. In conclusion, **his purpose to attend the democratic congress is impure** and his political quality and morality are substandard."

*See* Exhibit E (emphasis added).

147.     The above statements are knowingly and materially false, and were made to defame Plaintiff Tang.

148.     Within the same October 23rd Video, Defendant Kwok again makes unseemly comparisons between Plaintiff Tang and swindling for donations, i.e. serious crimes of fraud, in an effort to promote his false persona of being a political dissident. Thus, by linking Mr. Tang and the conference to these forms of swindling and fraud, Defendant Kwok intentionally attempts to bring those Plaintiffs' reputations, credibility and good will in ill repute.

149.     Defendant Kwok made the above statements in such a fashion that no reasonable person would believe that the statements made therein were opinion, but rather statements of fact about Plaintiff Mr. Tang.  Indeed, in the October 23rd Video, Kwok claims to have documentary evidence supporting his statements regarding Plaintiffs' donation improprieties that he received from "intelligence agents in which [he] ha[s] 28 years of experience," to give the false impression that his statements are supported by facts only known to him.

150.     On or about November 12, 2017, speaking from his New York apartment, Kwok live-streamed and subsequently published on his GUO MEDIA(TM) YouTube a 38 minute and 43 second long Chinese language video to an audience of supporters (the "November 12th Video"). The November 12th Video is available and can be viewed on Kwok's YouTube account at www.youtube.com/watch?v=HPeOcd437y8.  To date, the November 12th Video on Kwok's YouTube channel, in which he defames Mr. Tang, has been viewed nearly 146,000 times.

151.     A condensed 2-minute version of the November 12th Video, is available and can be viewed at twitter.com/GO_GO_60/status/929904474751152128. To date, that version of the November 12th Video has more than 170 retweets and more than 340 likes.

152.     In both versions of the November 12th Video, Kwok defames and makes false

statements of fact about Plaintiff Tang.

153.    Specifically, in the November 12th Video, Defendant Kwok begins by ridiculing the exiled political refugees from the Tiananmen Massacre—including Mr. Tang. Then Defendant Kwok praises Ms. Zhang and her statements in the October 11th Video, and states, translated in relevant part as follows:

> a.    "Fundraising every day. After 28 years, how much money have you raised? Did you do anything like a human? Where did the donation money go? Who implemented after the meeting? Fundraising after fundraising, meeting after every fundraising, everyone is gone after eating and drinking in the meeting and did nothing. You are more despicable than Chinese Communist Party and the Thefts of the National Wealth."

154.    By linking Mr. Tang and his organization's efforts to the CCP and using the words "theft" in association with Plaintiff's fundraising efforts, Defendant Kwok intentionally attempts to bring those Plaintiff Tang's reputations, credibility and good will in ill repute.

155.    On or about November 16, 2017, Kwok live-streamed and subsequently published on his GUO MEDIA™ YouTube channel a 13 minute long Chinese language video to an audience of supporters (the "November 16th Video"). The November 16th Video is available and can be viewed on YouTube at https://www.youtube.com/watch?v=AYa5anpj0hY.

156.    In the November 16th Video, Kwok defames and makes false statements of fact about Plaintiff Tang. Specifically, Kwok accuses Mr. Tang of "fraud" and "lying" and stated Tang (i) "is just a swindler in life," (ii) "swindles, and he swindles with his wife [Jing] out there," (iii) "is swindling money every day," (iv) "is just a fraud," (v) "looks like his artifice of swindles and fraud and the way he succeeds with every fraud never changes. This is why he is a big swindler, a professional swindler;" and (vi) "You see him [Tang], for only twenty or thirty thousand dollars, he swindles one person after another. Lots of people gave me a lot of information about him but I never said anything about him. These few days he is out of his

mind."

157.    The above statements are knowingly and materially false, and were made to defame Plaintiff Tang and Jing, and with the goal of promoting Kwok's competing online media outlet "Guo Media" a/k/a "Everything Is Just Beginning" and advertising his profit-driven businesses, Rule of Law Fund. As set forth above, Kwok's video advertisements were intended to promote his Media Defendants (which compete with Tang in the online media market) and his Foundation Defendants (which compete with Tang for donations in the advocacy and activism space), by soliciting funds while obfuscating the true nature of their use and disparaging their main competitors: Conscience Media and Tang.

158.    On November 18, 2017, Kwok live-streamed and subsequently published on his GUO MEDIA™ YouTube channel and on his Instagram account yet another video defaming and making false statements of fact about Plaintiff Tang (the ("November 18th Video"). An excerpt from the November 18th Video is available and can be viewed on YouTube at https://www.youtube.com/watch?v=03dp2Y5R_Jc.   In the November 19th Video, Kwok accuses Tang of being a "professional swindler," stating, in relevant part: "What kind of professional fraud is this? 28 years of fundraising, everyday fundraising, even fundraising for divorce, fundraising for divorce. Even fundraising to pay for his visit to prostitutes in night club."

159.    The above statements are knowingly and materially false, and were made to defame Plaintiff Tang.

160.    On November 21, 2017, Kwok live-streamed and subsequently published on his GUO MEDIA™  YouTube channel yet another video defaming and making false statements of fact about Plaintiff Tang (the "November 21st Video"). The November 21st Video is available and can be viewed on YouTube at https://www.youtube.com/watch?v=9fzY7z0bgdw.

161.    Specifically, in the November 21st Video, Kwok states, in relevant part, "Tang, Baiqiao never worked a single day for the past 28 years, just do donation swindle and fraud every day, live on donation fraud."

162.    The above statements are knowingly and materially false, and were made to defame Plaintiff Tang.

163.    Furthermore, in the November 21st Video, Kwok offered to publicly to reward $100,000 to any female person worldwide to file lawsuits against Tang for sexual assault and rape charges. Specifically in the November 21st Video, Kwok states, in relevant part:

   a.   I'm calling all internet friends that I'm going to implement a method of Direct Reward. I'm going to respond to a USA act for Women and Children Protection. Any overseas Chinese and Chinese inside China, any female person, can contact Guo, Wengui directly. Why are you contacting me? For example things like Li, Weidong's **sexual assault**. Li, Weidong . . . and **Tang, Baiqiao**,. . . you guys should come together. Let people see that members of Democratic Movement are coming together. For all these people, all females in the past sexually assaulted and insulted by them who wants to cooperate with me to sue them gets paid a $100,000 reward the same day after you sign the attorney agreement. Instant cash payment. I will pay all attorney fees. I will reimburse all related room and board and travel cost. Remember these names, remember: . . .**Tang, Baiqiao** . . . If I forget anyone I will tell later. Any female person who **was sexually assault or raped** that willing to come out to sign the attorney contract, I'll find the lawyer for you, at the day of signature I'll immediately pay you $100,000 US dollars. All attorney fees covered.

164.    The above statements are also knowingly and materially false, and were made to defame and ridicule Plaintiff Tang by falsely associating him with accusations of rape and sexual assault.

165.    On or about November 22, 2017, Kwok posted a tweet to his MILES KWOK™ Twitter account stating: "这几天发生了很多大事情：这几天我会一一向大家报告．这一周我们要一起先把假民运骗子．唐柏桥．李洪宽的真实面目彻底揭穿！他们骗了这么多女同胞．钱．色．有这么多刑事案件．假文凭．假历史．假募资⋯⋯我们一起先将他俩送到该

去的地方吧！" which translates to "There have been many big events in these days: I will report to you all these days. This week we should first put fake people to swindlers. Tang Baiqiao. The true face of Li Hongkuan completely wear! They lied so many female compatriots. money. color. There are so many criminal cases. Fake Diploma. Fake history. Fake fundraising ... we first sent them to the place to go!" (the "November 22nd Tweet"). The November 22nd Tweet is available and can be viewed on Kwok's Twitter account at www. twitter.com/KwokMiles/status/933499789739810818.

166.    On November 26, 2017, Kwok live-streamed and subsequently published on the GUO MEDIA™ YouTube channel two additional videos defaming and making false statements of fact about Plaintiff Tang (the "November 26th Videos"). The November 26th Videos are available and can be viewed on YouTube at https://youtu.be/wvcCY_DJK-s and https://youtu.be/EQZrTPqUQaQ, respectively.

167.    In the first of November 26th Videos, Kwok states "Tang, Baiqiao, he spent all of the donations of the past several decades on himself. After investigating different accounts in different areas, [we see] Tang,Baiqiao 's donation fraud, sexual fraud, cheating, and all kinds of fake information. Other than his person that is real, nothing else is real about him."

168.    In the second of the November 26th Videos, Kwok states ""Tang, Baiqiao and Li, Hongkuan, use the name of democracy and democratic movement, wearing the hat, swindle female and gave birth to children. He doesn't even raise this child. This is crime. Criminal crime and moral crime."

169.    The above statements are knowingly and materially false, and were made to defame and ridicule Plaintiff Tang by falsely associating him with accusations of fraud and criminal sexual misconduct.

170.    On December 12, 2017, Kwok posted yet another video on his YouTube account

(accessible on the Internet at https://youtu.be/AsBoFhUW7n4), accusing Tang of sexual assault

against women, being a "real money tricker,"and "brib[ing] people around [Kwok]."

171.    On February 16, 2019, Kwok posted another video on the GUO MEDIA™

YouTube channel, now with the words "GUO.MEDIA – Everything Is Just Beginning"

superimposed over the video, (accessible on the Internet at

https://www.youtube.com/watch?v=g2-J0fU5z-U), falsely accusing Tang of using monies

donated for Mr. Tang's activism causes for personal gain (the "February 16th Video")

172.    Specifically in the February 16st Video, Kwok states, in relevant part:

a.  "The Swindler Tang,  the democracy movement, where did they registered their
organization? They went to state of North Carolina or a little town in Miami. You
are shameless. Are you qualified to speak publicly? The organization and the
funds are being put into your own pocket. Can you even remember your
registered name? Swindler Tang, can you remember any of the registration
number you registered? I ask you to be worthy of a man. You shameless trash."

b.  "The swindler Tang used all names of entire human race."

c.  "Swindler Tang even accept Chinese Yuan inside China, and pick up [the
donation] at your door step. Is there such a robbery logic under the sky? You
really think we are stupid? Why are you sending me this kind of question? There
are some good comrades who are really naive."

d.  "The thief and swindlers, you are jealous and hateful.  Now I announce: the thief
and swindlers, if you dare to, remember what I am saying now, whoever is dared
to give one million dollars. I will match three times of it. Anyone gives one
million dollar for this same purpose, not for Baiqiao Tang's wife to treat her
breast cancer, . . . . not for the son of bitch for their meetings, is for the same
purpose of what I said in here [gesturing with papers], for public services,
including, if you give one million, I will match three million. If I don't match I am
a fraud. Whoever is daring, contact me immediately. I will sign contract with
you."

e.  "Because we are formal, not like swindler Tang. Not like these grand kids and
swindlers. We are completely regulated. One single mistake would give Chinese
Communist Party a chance. We had so many sleepless nights for bank account
opening. We are working so hard. We never took one day off. I gave one hundred
million dollar donation for Chinese public services, however the swindler Tang
and Xinuo and others who swindled for 29 years challenged me by saying: if
Wengui Guo [Kwok] can do fundraising why can't we?. . . What you are doing is
fundraising fraud. You are buying meals and you are using the money for Baiqaio

39

Tang's wife for her cancer treatment, for divorce treatment. . . for Airbnb property rental. You are begging money. We are doing public service to benefit most people. Don't compare our public service with your money begging. I will say this again: any small or large amount of donation for personal purposes are all donation fraud. I will say one more time: any one fundraising for personal purposes including for legal fees is a swindler."

173.    The above statements are knowingly and materially false, and were made to defame Plaintiffs and Jing and to mislead the public about Plaintiff Tang's services—while promoting Defendants' own.

174.    Defendants' statement that Tang "used fundraising for personal purposes including for legal fees" is not only false but misleading, insofar as the Foundation Defendants' Websites each assert that the entities "will also provide support with respect to legal services" and "[t]he donations will be used to pay the expenses associated with the vision and mission of Society [and Foundation] including . . .legal fees."

175.    On February 17, 2019, Kwok posted yet another video on the GUO MEDIA™ YouTube channel, with the words "GUO.MEDIA" superimposed over the video, (accessible on the Internet at https://www.youtube.com/watch?v=4RgMnSsJ_pw ), falsely accusing Tang and Jing of using monies donated for Mr. Tang's activism causes for personal gain (the "February 17th Video").

176.    Upon information and belief, the February 17th Video was also livestreamed to hundreds of thousands of viewers, and is still accessible at https://livestream.com/accounts/27235681/events/8197481/videos/187500314 and guo.media/broadcasts.

177.    Specifically in the February 17th Video, Kwok stated (translated from Chinese to English) "There is the Tang, Baiqiao. For decades, you used the fund raising for your wife [Jing]'s cancer and for your divorce and you called it revelation. My comrades, it's horrifying!

Can you imagine what kind of face does he [Tang] have. Therefore I tell you about the Rule of Law Foundation that anyone who spend a penny of the fund that's not related to rule of law, anyone, you would be my enemy of death."

178.    The above statements are knowingly and materially false, and were made to defame Plaintiffs and Jing and to mislead the public about Plaintiff Tang's services—while promoting Defendants' own.

179.    By publishing the above Videos and Tweets, Kwok acted with constitutional malice because he knew he was lying when he made these allegations about Mr. Tang. At a minimum, Kwok published those videos with reckless disregard as to whether the statements therein concerning Mr. Tang and Jing were true or false.

180.    When Kwok published the Videos above to his hundreds of thousands of Twitter followers, he knew and/or reasonably anticipated that republication of the defamatory and disparaging statements contained therein by his Twitter followers, news outlets and other media was the natural and probable consequence.

181.    Indeed, Kwok actively seeks such attention in order to promote his personal and professional brands, and to garner attention for and ultimately drive consumers to his competing online entertainment and media business he advertises under the Kwok Marks.

182.    The Videos, along with the above mentioned Tweets, have had their intended effect: on information and belief, hundreds of thousands of viewers and readers have been misled about Mr. Tang and Jing.

183.    Plaintiffs have received numerous inquiries about the truthfulness of the statements on the Videos and Tweets.  Many of these inquirers have expressed anger, frustration, confusion or dismay to Plaintiffs based on the content of those Videos and Tweets.

184.    Upon information and belief, Defendants published the Videos and posted the
Tweets for the sole purpose of harming Plaintiffs' reputations and causing them to lose revenue
as the statements within bear directly on Plaintiffs' services, professional capabilities, and
business practices—all key aspects of Plaintiffs' business and factors that any person considers
before donating to a person or cause or choosing to frequent a website focused on a particular
topic— and with the goal of promoting their competing online media outlet "Guo Media" a/k/a
"Everything Is Just Beginning" and advertising his profit-driven businesses, Rule of Law Fund.
As set forth above, Kwok's video advertisements were intended to promote his Media
Defendants (which compete with Tang in the online media market) and his Foundation
Defendants (which compete with Tang for donations in the advocacy and activism space), by
soliciting funds while obfuscating the true nature of their use and disparaging their main
competitors: Conscience Media and Tang.

185.    In particular, the statement that Mr. Tang "swindles for donations" is and has
been devastating to his reputation and business interests. No one wants to donate to a person who
"swindles" and defrauds.

186.    Defendants posted the Videos and Tweets (and videos contained therein) on their
high-profile YouTube, Twitter and Guo Media accounts precisely because they knew that
persons interested in the topics of political dissidence against China, like Plaintiff Tang's own
conference attendees and visitors to Mr. Tang's Conscience Media network of websites, review
Defendants' YouTube, Twitter and Guo Media accounts regularly—upon information and belief,
only because Tang previously endorsed Kwok in an article written on the Conscience Media
website in April 2017.

187.    Plaintiff Tang continues to have contractual relationships with his donors,

conference attendees, and contributors.

188.     Defendants scripted and caused to be disseminated the above statements as part of an intentional, malicious and systematic campaign to interfere with Plaintiff Tang's contractual relationships with their donors, conference attendees and contributors, and upon information and belief, to wreak havoc on those Plaintiff's business by inducing those Plaintiff's donors, conference attendees, contributors, and prospective donors and conference attendees to cease doing business with Plaintiff Tang, withdraw their attendance from various conferences, and not to visit Mr. Tang's Conscience Media network of websites.

189.     As a direct and desired consequence of Defendants' statements above, Defendants were and have been enriched in the form of, *inter alia*, donations and contributions to their Rule of Law Fund.

190.     As a direct and proximate result of Defendants' misleading and defamatory conduct described herein, a number of Plaintiffs Tang's donors and contributors have been confused, refused to start and/or continue business with Mr. Tang—including but not limited to withdrawing their conference attendance fees and planned contributions.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE LANHAM ACT**
**UNDER 15 U.S.C. § 1125(a)(1)(B)**
**(against all Defendants)**

191.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 190 as though fully set forth here.

192.     Defendants' publication of false and misleading statements about themselves and their services, constitutes false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

193.     Defendants' publication of false and misleading statements about themselves and their services, is likely to deceive people and consumers as to the nature and quality of

Defendants' services. As set forth above, Defendants' video advertisements were intended to promote the Media Defendants (which compete with Tang in the online media market) and the Foundation Defendants (which compete with Tang for donations in the advocacy and activism space), by soliciting funds while obfuscating the true nature of their use and disparaging their main competitors: Conscience Media and Tang.

194.    Defendants' publication and direct endorsement of false and misleading statements about Plaintiffs Tang and his services, constitutes false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

195.    Defendants' publication and direct endorsement of false and misleading statements about Plaintiff Tang and his services, is likely to deceive people and consumers as to the nature and quality of Tang's services by falsely accusing him and his entities of lying and donation fraud.

196.    As a direct and proximate result of Defendants' unlawful acts, Plaintiff Tang has suffered irreparable damage to his reputations and will continue to suffer significant and irreparable reputational injury to his online media businesses, in addition to significant monetary damages in amounts to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**SLANDER, LIBEL *PER SE*, AND COMMERCIAL DISPARAGEMENT**
**(as to all Plaintiffs against Defendant Kwok)**

197.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 190 as though fully set forth here.

198.    Defendant Kwok has intentionally made knowingly false statements of fact about Plaintiffs and Tang's services in the Videos and Tweets.

199.    Additionally, and/or alternatively, Defendant Kwok has espoused and/or

concurred in the charges made by others to launch an unwarranted personal attack of his own against Plaintiffs and upon Plaintiffs' honor, dignity and standing in the community.

200.     These statements were made maliciously and willfully, and were intended to cause harm to Plaintiffs' business integrity and personal reputations.

201.     The aforementioned statements were false when made and Defendant Kwok knew or should have known that the statements were false when made.

202.     The statements were made with reckless disregard for their truth or falsity or with knowledge of their falsity and with wanton and willful disregard of the reputation and rights of Plaintiffs.

203.     The aforementioned statements where made of and concerning Plaintiffs, and were so understood by those who read Defendant Kwok's publication of them.

204.     Among other statements, on Kwok's YouTube account, published to hundreds of thousands of people online, via email and social media, and accessible across the Internet, Kwok accused Plaintiffs Tang of being donation "swindle[r]," defrauding legitimate donations for personal gain, and committing "sexual assault".  Similarly, Kwok published statements that Plaintiffs Mr. Tang and Jing were "special agents," spies and fraudsters.

205.     These statements were false, and were published to third parties in this district and across the Internet.

206.     Defendant Kwok has no privilege to assert the false and disparaging statements.

207.     Defendant Kwok asserted the above statements with actual malice, in that through Kwok's personal and professional relationship with Mr. Tang as stated above, he knew that the above statements were false. Alternatively, Kwok's statements were published with reckless disregard for the truth or falsity of same, and were made to solely to injure Plaintiffs.

208.     As a result of Defendant Kwok's acts, Plaintiffs have suffered irreparable damage to their reputations and further damages in an amount to be determined at trial.

209.     As a result of the willful and malicious nature of the defamation, Plaintiffs are entitled to punitive damages.

### THIRD CLAIM FOR RELIEF
### <u>UNFAIR COMPETITION – FALSE DESCRIPTION</u>
#### (as to Mr. Tang against all Defendants)

210.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 190 as though fully set forth here.

211.     Defendants authored and/or are using the Videos , Tweets and Posts to divert users searching for Plaintiff Mr. Tang to Defendants' competing business and services.

212.     As set forth above, Defendants posted and widely-disseminated false, misleading and defamatory statements and represents about Plaintiff Tang online concerning the nature, characteristics or quality of Plaintiff Tang's services.

213.     The false and misleading representations set forth above were made in the scope of commerce and in the context of promoting Defendants' competing online media business and pro-Chinese-democracy foundations.

214.     Upon information and belief, Defendants knew that Google displays search results to users searching for the people and companies named in those titles and addresses, which results are highly ranked, and that such a false statement would harm Plaintiff Tang's reputation and business in this district and elsewhere.

215.     Upon information and belief, by posting the misleading Videos, disparaging Tweets, and salacious Posts with the statements "Liar Tang," "Swindler Tang" and "Tang Baiqiao" therein, Defendants intended to use these defamatory and false statements as a means to

generate business by turning donors and interest away from Plaintiff Tang and his Conscience Media network of websites, and redirecting them to Defendants' competing Guo Media Website and Rule of Law Fund.

216.    Moreover, Defendants actions did harm Plaintiff Tang and made Plaintiff Tang believe that he would be damaged by Defendants' misrepresentations.

217.    Considering Defendants knew that their statements concerning Tang were false and/or, at best, misleading, Defendants had no justification to assert the misrepresentations other than to harm Plaintiff Tang's business by exploiting the earned reputation of Tang and coopting Tang's story as an image of resistance to corruption in the Chinese government, as Kwok's own.

218.    These acts and others stated above constitute a pattern of common law unfair competition by, *inter alia*, false description, entitling Plaintiff Tang to recovery of compensatory and punitive damages, in an amount to be proved at trial, including compensation for Plaintiff Tang's time, effort and attorney's fees.

**FOURTH CLAIM FOR RELIEF**
**HARASSMENT IN VIOLATION OF N.Y. PENAL CODE § 240.26**
**(as to all Plaintiffs against Defendant Kwok)**

219.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 190 as though fully set forth here.

220.    As set forth above, Defendant Kwok engaged in a course of conduct and/or repeated committed acts which alarm and/or seriously annoy Plaintiffs and which served no legitimate purpose.

221.    Defendant Kwok committed said acts with the specific intent to harass, annoy and/or alarm Plaintiffs.

222.    As a direct and proximate result of Defendant Kwok's past and continued wrongful acts, Plaintiffs have been materially and substantially damaged in an amount to be proved at trial, including compensation for Plaintiffs' time, effort and attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants awarding Plaintiffs:

1.    Enter a judgment declaring that all Defendants' conduct violates 15 U.S.C. §1125(a);

2.    Enter a judgment declaring that Defendant Kwok's conduct constitutes slander, libel and/or commercial disparagement;

3.    Enter a judgment declaring that all Defendants' conduct constitutes unfair competition;

4.    Award Plaintiffs compensatory damages according to proof at trial but in an amount not less than $20,000,000.00;

5.    Award Plaintiffs punitive damages pursuant to the Lanham Act and the common law, due to Defendants' willful and wanton behavior;

6.    Enter a temporary and permanent order, enjoining Defendants from publishing the false advertising statements identified above, in relation to themselves or Plaintiffs, or any false statements similar thereto, and directing Defendants and their respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, to remove, delete, or otherwise disable such videos, tweets, links and posts;

7.      Enter a temporary and permanent order, enjoining Defendants from publishing the

statements constituting libel and/or commercial disparagement identified above in

relation to Plaintiffs, or any false statements similar thereto, and directing

Defendants and their respective agents, servants, employees, successors and

assigns, and all other persons acting in concert with or in conspiracy with or

affiliated with Defendants, to remove, delete, or otherwise disable such videos,

tweets, links and posts;

8.      Award Plaintiffs reasonable attorney's fees, costs and disbursements in this civil

action; and

9.      Enter such other and further relief to which Plaintiffs may be entitled as a matter

of law or equity, or which the Court determines to be just and proper.


Dated:   Brooklyn, New York
         November 21, 2019

                              LEWIS & LIN, LLC

                              By:  _/s/ David D. Lin_
                                   David D. Lin, Esq. (DL-3666)
                                   Justin Mercer, Esq. (JM-1954)
                              81 Prospect Street, Suite 8001
                              Brooklyn, NY 11201
                              Tel: (718) 243-9323
                              Fax: (718) 243-9326
                              Email: david@iLawco.com
                                     justin@iLawco.com

                              *Counsel for Plaintiffs*

**EXHIBIT LIST**

**<u>Exhibit A</u> – September 10th Video (Chinese Transcription and English Translation)**

**<u>Exhibit B</u> – October 10th Tweet (English Translation)**

**<u>Exhibit C</u> – October 12th Tweet (English Translation)**

**<u>Exhibit D</u> – October 11th Video (Chinese Transcription and English Translation)**

**<u>Exhibit E</u> – October 23rd Video (Chinese Transcription and English Translation)**

**<u>Exhibit F</u> – Screenshot of Kwok's Guo Media Profile dated March 6, 2019**